1              UNITED STATES BANKRUPTCY COURT

2          CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                        --oOo--

4   In Re:                    ) Case No. 2:20-bk-17433-VZ
                              )
5   JONG UK BYUN,             ) Chapter 11
                              )
6   Debtor,                   ) Los Angeles, California
                              ) Tuesday, 10:00 A.M.
7   ----------------------------X October 20, 2020

8

9                              MOTION FOR RELIEF FROM STAY

10

11          TRANSCRIPT OF TELEPHONIC PROCEEDINGS
         BEFORE THE HONORABLE VINCENT ZURZOLO
12            UNITED STATES BANKRUPTCY JUDGE

13  APPEARANCES:

14  For Hyundai Steel        EVAN JONES, ESQ.
    Company:                 RICHARD HOLM, ESQ.
15                           O'Melveny & Myers, LLP
                             400 Hope Street
16                           Los Angeles, California  90071

17  For the Debtor:          GIOVANNI ORANTES, ESQ.
                             The Orantes Law Firm
18                           3435 Wilshire Boulevard
                             Suite #2920
19                           Los Angeles, California  90010

20  Court Recorder:          Shemainee Carranza
                             U.S. Bankruptcy Court
21                           Central District of California
                             Edward R. Roybal Federal Building
22                             and Courthouse
                             255 East Temple Street, Room #1639
23                           Los Angeles, California  90012
                             (855) 460-9641
24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.

P 888.272.0022 F 818.343.7119    BENHYATT  www.benhyatt.com
                                 Certified Deposition Reporters

1   Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
                               Ben Hyatt Certified Deposition
2                               Reporters
                               17835 Ventura Boulevard
3                              Suite #310
                               Encino, California  91316

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page                                                                          3

1         LOS ANGELES, CALIFORNIA, TUESDAY, OCTOBER 20, 2020

2                            10:17 A.M.

3                            --oOo--

4         THE COURT:  Okay.  Now we come to #3.00, *Hyundai*

5  *Steel Company v. Jong Uk Byun*.  May I please have an

6  appearance on behalf of the moving party first?

7         MR. JONES:  I also have with me on the phone

8  Mr. Holm from our office.

9         THE COURT:  I'm sorry.  I didn't hear the first

10 part.  Could you please repeat the appearances on behalf of

11 the moving party?

12        MR. JONES:  I apologize, Your Honor.  This is

13 Evan Jones of O'Melveny & Myers on behalf of the moving

14 party, Hyundai Steel.  I also have with me on the phone

15 Richard Holm of my firm.

16        THE COURT:  Okay.  Thank you very much.  Good

17 morning.

18        And do I have an appearance, please, on behalf of

19 the respondent?

20        MR. ORANTES:  Yes, good morning, Your Honor.

21 This is Giovanni Orantes on the Orantes Law Firm for the

22 debtor and debtor in possession.

23        THE COURT:  Good morning.

24        MR. ORANTES:  Who's present with me.  Good

25 morning.

Page                                                                    4

1          THE COURT:  Good morning.  And do we have another

2    appearance on behalf of the Chapter 7 Trustee in Prime

3    Metals?

4          MR. GOE:  Yes, Your Honor.  Robert Goe, G-O-E, of

5    Goe Forsythe & Hodges on behalf of Richard Marshack,

6    Chapter 7 Trustee of Pine Metals.  I'm just monitoring the

7    hearing.

8          THE COURT:  Okay.  Good morning.

9          Okay.  All right.  Mr. Jones, anything you would

10   like to add in support of your motion?

11         MR. JONES:  Thank you, Your Honor.  I will try to

12   be brief.  The papers are obviously voluminous.  I'm sure

13   the Court has reviewed them, but I would summarize.

14         The Court should grant Hyundai relief because

15   this case, the debtor is third in succession.  To address

16   the same debt and the same collateral is not filed in good

17   faith.  It's undisputed that the law requires that when a

18   case is not filed in good faith that relief from the stay

19   is an appropriate remedy.  The Ninth Circuit, as every

20   recorded case says, that that determination is based on all

21   of the circumstances.  No single fact is controlling but it

22   may be decisive.

23         In March the Court indicated that the question

24   was -- or the test was whether the debtor was attempting to

25   unreasonably deter and harass creditors or attempting to

Page                                                                    5

1  affect a speedy, efficient reorganization on a feasible

2  basis.  Your Honor, we believe our papers demonstrate that

3  the record is littered with facts showing and compelling

4  the conclusion that this is not a good faith case.

5           Again, I'm not going to go through all of them,

6  but I'll hit the main points.  The first one is the

7  multiple filings.  This is the third case addressing the

8  exact same debts, the exact same creditors, it's now become

9  an annual event for this debtor that each year we will have

10  a new case to address these same debts and same creditors.

11           Second factor -- and by the way, Your Honor, as

12  we pointed out in our papers, the case law is clear that

13  none of these are by themselves dispositive.  The debtor

14  says, well, there's no *per se* rule against multiple

15  filings.  That is absolutely true.  But as we noted in

16  specific cases, the Court may find that any factor alone is

17  sufficient to refute good faith and the factors are just

18  overwhelming.

19           The second factor is the filing to avoid a

20  foreclosure.  Each of the three bankruptcies the debtor has

21  filed have been on the eve of foreclosure and each of them

22  involves an acknowledgement by the debtor that the case was

23  filed to avoid that foreclosure.  Again, the *Wherfit*

24  (phonetic) case from this district indicates that that

25  alone be sufficient and yet there's more.

Page                                                                6

1          Perhaps the most important one here, Your Honor,

2     is the complete failure of an effort to reorganize.   In

3     bankruptcy two, the second bankruptcy, the case languished

4     for over a year until the court determined that it had had

5     enough and granted relief to Hyundai to proceed with the

6     foreclosure.

7          Your Honor, I'll quote from the court's findings

8     there:  (1) the debtor had a very long time to try to sell

9     the property and hasn't been able to sell the property; (2)

10    the debtor had a very long time to get to the bottom of the

11    environmental issues that are affecting the property, the

12    valuation of the property and the ability of the debtor to

13    sell the property and has failed to do so; (3) the debtor

14    has not been able to timely come up with a disclosure

15    statement that could be approved by the court.   That's a

16    quote from this court.

17         Your Honor, the court went on to observe that the

18    time schedule was not constrained.   It was the time

19    requested by the debtor and it was an extended time period.

20    Despite continuing promises that property was in escrow

21    that the debtor has made to this court, the debtor has made

22    to state court, the debtor has made to Hyundai, the debtor

23    made those promises before the second bankruptcy, during

24    the second bankruptcy, after the second bankruptcy and,

25    Your Honor, even during this bankruptcy nothing has been

Page                                                                              7

1  done.

2          Furthermore, to this date nothing has been done

3  to resolve the environmental contamination of this

4  property. The debtor has never commissioned an

5  environmental assessment of the property.  He just sits

6  back hoping the EPA will give him a clean bill of health

7  and in the meantime he takes all of the rental value from

8  these properties and diverts it to himself.

9          Until a few months ago, he did so by getting his

10  wholly owned subsidiary free rental usage of the property,

11  thus denying to the estate and his creditors the income

12  that should come from the property.  He says now, well, he

13  finally signed short-term leases with other tenants, but

14  he's not using that income for the benefit of the -- of the

15  creditors.  And the failure to utilize the assets, to

16  realize the value of the property of the estate for the

17  benefit of creditors is yet another indication of lack of

18  good faith found by the cases.

19          Your Honor, we've also talked about the abuse of

20  the judicial system.  Both this Court and other courts have

21  repeatedly found this debtor to come to them, to say that

22  he's on the verge of selling property, he needs just a

23  little longer and then nothing happens.  This court and

24  other courts have been misrepresented by this debtor --

25  have been misrepresented to by this debtor.  The system is

Page                                                                        8

1  simply not being used in good faith by the debtor but is

2  being used to delay and hinder creditors.

3          Your Honor, the last point we raise is that this

4  is fundamentally a two-party dispute.  Again, the case law

5  says that that's not by itself dispositive, but it is an

6  important factor in deciding whether this debtor is

7  entitled to yet another do-over to try and reorganize his

8  obligations that he has failed to reasonably address for a

9  decade.

10          Now, Your Honor, the debtor raises three basic

11 arguments in response.  The first argument he raises is he

12 cites the *Blendam* (phonetic) case and he says fundamentally

13 that that reduces this court from a judicial role to a

14 clerical role applying a rote list of four factors in a

15 wholly mechanical manner.

16          Your Honor, we do not believe that's a correct

17 reading of *Blendam, Blendam* like every other case says that

18 the court must consider all of the facts and circumstances.

19 And, Your Honor, the quote there is the court must review

20 the totality of the circumstances.  The court in *Blendam*

21 also says that the court is to determine good faith on a

22 "case-by-case basis" based upon the facts before it.

23          But, Your Honor, as we show in our papers, even

24 if you reduced the four specific points that the *Blendam*

25 court indicates the lower court properly consider in that

Page                                                                  9

1   case, they're all present in this case.  Those four factors

2   we went through in our papers.  They are present.  The only

3   one that one might argue is not present is if you take

4   *Blendam* in a hyper literal meaning where one of the factors

5   the Court raises is an effort to avert and avoid

6   litigation.

7            Of course, Your Honor, in the *Blendam* case there

8   was litigation, so it's appropriate for the Ninth Circuit

9   to point out that the Bankruptcy Court correctly considered

10  that factor, but I don't think we can read *Blendam* to say

11  that all cases must turn on whether the filing was to avoid

12  litigation.  We've cited numerous cases where a filing to

13  avoid foreclosure was found to be evidence of a lack of

14  good faith.  *Blendam* is not intended to reverse or overrule

15  any of those decisions and it doesn't indicate it should.

16           In fact, Your Honor, if we took *Blendam* as

17  literally as the debtor suggests, the case literally says

18  that you have to determine whether the Chapter 13 was filed

19  to avoid litigation.  I don't think even the debtor would

20  suggest that the good faith requirement doesn't apply in a

21  Chapter 11.  We have numerous cases holding that it does.

22  But, Your Honor, we think that the debtor's approach to

23  *Blendam* is mistaken and even if one were to apply *Blendam*

24  as a literal chivalrous (phonetic), the fact is that

25  *Blendam* mentioned there do apply.

Page                                                                        10

1          Your Honor, the next argument that the debtor

2    makes is that there are changed circumstances and the

3    debtor offers appraisals designed to show that there is

4    equity in the property.  Your Honor, as we point out in our

5    papers, the case law says that whether there's equity or

6    not is not a determinative issue.  But we don't even get to

7    that because those declarations are so far from admissible

8    that offering them to this court is frankly evidence of

9    lack of good faith.

10         As the Court certainly knows, any expert opinion

11   must comply with the applicable rules of the profession in

12   which the expert is engaged.  And these appraisals invoke

13   the USPAP standards and say that they are consistent with

14   those standards.  Now, Your Honor, there's no question.

15   The USPAP standards are an appropriate standard to invoke.

16   The appraisals indicated that they are restricted

17   appraisals under the USPAP standards.  And if one goes to

18   the USPAP standards, one sees that a restricted appraisal

19   is defined as one of the -- as affronting minimal

20   investigation, then it may only be relied upon by the

21   recipient to whom it is addressed.  It may not be relied on

22   by anyone else.  These appraisals each indicate that they

23   are directed the recipient is the debtor.  They reiterate

24   that they are to be used by the debtor only for his

25   internal purposes.

1         so, Your Honor, as we note in our papers, these

2   appraisals fundamentally should have a legend across the

3   top may not be relied upon by the Court, may not be relied

4   upon by the creditors and yet we have a debtor who tries to

5   slip these by the Court, to suggest he has new appraisal

6   that prove that there's value in the property beyond the

7   debt.

8         Your Honor, this effort is not merely

9   inadmissible.  It's outrageous.  By itself it is a

10  demonstration of a lack of good faith.  It is yet another

11  attempt by this debtor to mislead this court, to misuse

12  appraisal and to continue to delay and stall his creditors

13  while misleading this court.

14        Your Honor, the reason why these appraisals are

15  restricted is pretty apparent on the face although, as we

16  note in our papers, this Court doesn't even need to go

17  there.  But the appraisals say that they are based on the

18  assumption that there is no environmental contamination of

19  the property.  We all know that is not true.

20        And that brings us to the next issue of supposed

21  new evidence that the debtor has come up with.  The debtor

22  says, well, we have this -- we have a transmission email

23  from the EPA of an interim report and they quote part of a

24  sentence that they would ask this Court to believe means

25  that the EPA has determined that the property is free of

Page                                                                      12

1   contamination.

2          First of all, Your Honor, as we noted in our

3   objection, that is obviously complete hearsay, but if one

4   were to allow that sentence and then look at the actual

5   interim report conveyed by the EPA, what one sees is as the

6   main suggests it is a preliminary report.  It says by its

7   terms it is not definitive.

8          It further says that additional testing is

9   required to see if this property is a super fund site.  It

10  notes that there are numerous violations of other

11  environmental statutes.  It notes that there is -- that

12  there are piles of scrap and bins of scrap on the property

13  that clearly are in violation of environmental statutes.

14  It says that further testing of the neighborhood is

15  necessary to determine whether this contamination has

16  migrated into the neighborhood such that the property would

17  be put on the super fund site.  And it says that it

18  won't -- that the EPA doesn't intend to complete its

19  investigation until spring of 2021.

20         So for the debtor to come before this court and

21  pluck part of a sentence in a transmittal email from the

22  EPA on an interim report and say, oh, we've resolved our

23  environmental problems is absurd.  It is again an

24  indication of absence of good faith.

25         And, Your Honor, this brings us to the last

Page                                                                    13

1  alleged new element that the debtor relies upon.  He says,

2  well, I finally have cash flow from my property.  As we

3  point out, Your Honor, the reason why he's never had cash

4  flow is he's been giving the property away to his wholly

5  owned CMI subsidiary.  So he takes the value of this

6  property.  He secrets it in a non-debtor entity and he

7  takes that value away from his creditors.  And now he shows

8  up and says, Your Honor, in the last few months we've

9  changed that.  I now have some short-term tenants.  They

10  are paying me rent and that rent is somehow going to be the

11  source of a -- of a reasonable and prompt and efficient

12  reorganization as required by Marsh.

13         But, Your Honor, what the debtor is doing with

14  that money, if anything, again just proves the absence of

15  good faith.  The debtor has not offered a penny of that

16  money to his creditors.  He's not taken a cent of that

17  money and used it to obtain a proper assessment of the

18  environmental status of his property so that it can be

19  sold.

20         And, Your Honor, the third thing he hasn't done,

21  he hasn't taken a cent of that money and spent it to

22  mediate what the EPA has told him is a clear violation of

23  the environmental statutes, these piles and bins full of

24  contaminants that may result in the EPA concluding next

25  spring that this property indeed does belong on the super

Page                                                                    14

1   fund list.

2          So again, to call that assessment -- or to call

3   that interim report a clean bill of health is not true.

4   And to suggest that the debtor is using his assets to get

5   to the bottom of the environmental problems here, which the

6   Court noted a year ago he had failed to do, is simply

7   untrue.  This debtor sticks his head in the sand.  He

8   delays.  He takes the assets of the estate to support his

9   own quite comfortable lifestyle.  And of course, Your

10  Honor, the motion to use cash collateral and budget is on

11  at 11:00 today, but I think the Court can take notice of

12  what the debtor says he's going to do with the property --

13  or with the assets that he's now changed the sluice gate to

14  put back into the estate by paying rent on the property or

15  having rent paid by third parties.

16         Your Honor, again, and we go in great detail in

17  the pleadings, this is a debtor who has continuously told

18  this court, has told this state court, has told his

19  creditors he is in escrow.  He's about to sell property.

20  He only needs a little more time and he simply doesn't do

21  anything.

22         This case, Your Honor, is patently not in good

23  faith.  Relief is appropriate and because it is manifestly

24  part of a scheme to delay, hinder and defraud creditors,

25  the relief should be *in rem* under Section 362(d)(4).

Page                                                                    15

1           Your Honor, I have nothing else.  I'm happy to

2    answer any questions.

3           THE COURT:  Okay.  Thank you very much, Mr.

4    Jones.

5           Mr. Orantes, anything you want to add in support

6    of your opposition?

7           MR. ORANTES:  Yes, Your Honor.  Thank you very

8    much.

9           Your Honor, we have obviously filed voluminous

10   sufficient papers just like the motion was.  The creditor

11   here to get relief from stay has to overcome -- has to meet

12   its burden for us to meet the burden about equity.  And

13   ultimately he has to put forth a *prima facie* case, so bad

14   faith.  The only evidence that the motion alludes to with

15   respect to equity are the debtor's schedules.  Based on the

16   debtor's schedules even if we assume that the debtor --

17   debt owed to Hyundai is valid and is for almost 27 million

18   dollars, the property still has over 12 million dollars in

19   equity based on the valuation that the creditor itself is

20   relying on.

21          With respect to where this debtor stands at this

22   point, over the last almost a year the debtor has paid down

23   some debts by selling his property for more than two

24   million dollars.  He has made several offers to settle

25   to -- for, you know, over 20 million dollars to Hyundai.

Page                                                                          16

1   He has put the property up for sale and has received

2   offers.  Even if you were to discount the appraised value,

3   it's the only appraisal on the record but, in any event,

4   the value that debtor relies on is Mr. Byun's valuation

5   over two million dollars for these properties.

6          If you -- the offer that the broker, Kirk

7   Arvidian (phonetic) mentions, is for 26 million dollars

8   just for one of the properties, the 8201 Santa Fe Avenue

9   property.  And the other three properties have over ten

10  million dollars in value, but he also indicates that he

11  could have -- that it's likely to go for more than that.

12         So that -- the bottom line here is that the only

13  evidence on the record is that this property does have

14  evidence -- does have equity, rather.  With respect to bad

15  faith, Mr. Byun has attempted to avoid having to invoke the

16  Court's -- the Bankruptcy Court's jurisdiction.  As I

17  indicated before by making settlement offers by selling

18  property, by paying down debt and they had to have that

19  work.  Obviously COVID-19 has thrown a monkey wrench into

20  whatever he could do for the last seven months, but even

21  despite that he has -- he has tried to resolve this

22  situation with, again as I said, the previous offer that he

23  made.

24         And as much as Hyundai is trying to discount the

25  status of the report of the APA issues at this time by

Page                                                                    17

1  relying on almost two-year-old documents talking about

2  scrap metal tiles, the fact of the matter is that the EPA

3  has said that -- the EPA found little chemical

4  contamination on your facility and however to maybe

5  contamination on neighboring facilities.  It does attach to

6  the declaration of Marvin Thatchery (phonetic), whom Mr.

7  Byun did in fact contract to work with the EPA to resolve

8  this, the Environmental Protection Agency issues which

9  seems to be at a point that it's sufficiently advanced so

10  there's at least one standing offer for six million dollars

11  for the 201 Santa Fe Avenue property.

12          When Mr. Evans [*sic*] talks about multiple

13  filings, we're talking about a bankruptcy that was filed

14  almost eight years ago and another one that was filed over

15  a year ago at this point.  And Hyundai has been told both

16  sides of the equation here.  Hyundai has been told the

17  supply side, meaning he has cut off business from the

18  debtor, a debtor whom Hyundai made build up his

19  infrastructure -- infrastructure so that he could service

20  Hyundai so it has on the one hand disabled ability of the

21  debtor to service the debt to Hyundai and on the other side

22  trying to collect a debt that -- the notes that -- as Mr.

23  Goe indicates in his complaints against Hyundai, notes that

24  don't even belong to Hyundai or should be subject to

25  avoidance.

Page                                                                    18

1          But -- so at the end of the day, Mr. Byun's --

2    some of the acts they have engaged in to try to resolve

3    this  situation with offers with moving to rent the

4    property, something he did not have in his previous

5    bankruptcy, he has moved -- he has obtained the rents --

6    monthly rents that would support step-up plans.  You know,

7    he went from a negative $50,000 a month to a positive of

8    over $173,000 which is set to increase to 195,000 and even

9    further to $262,806 (phonetic) in the near future.

10         The spreadsheets that we attached that Mr. Byun

11   put forth indicate that we have a viable plan of

12   reorganization that is possible within a reasonable time

13   and I understand that the Court will set the hearing date

14   on the disclosure statement on Thursday.  And at this point

15   we're on track to file a disclosure statement and plan well

16   ahead of the Court's deadline because most of the work is

17   already done as the opposition indicates and most of those

18   documents go into a disclosure statement.

19         The bottom line is Mr. Byun has engaged only in

20   good faith when filing this motion.  His circumstances have

21   changed drastically.  Hyundai cannot carries its burden to

22   say that they have not.  He does have rents that he has

23   been depositing in the bank accounts there at this point.

24   And Mr. Byun is willing to pay the $35,000 a month as he

25   did in the previous case and adequate protection payments

Page                                                            19

1    to Hyundai, but obviously the money that has accumulated is

2    something that can be used for the plan for the benefit of

3    many creditors, not just one.  Instead of wiping them all

4    out, they could all get paid in full, Your Honor.  I

5    believe the motion should be denied.

6            THE COURT:  Okay.  Thank you very much.

7            And Mr. Goe, you were just observing, correct?

8            MR. GOE:  Yes, Your Honor.  We're just -- we have

9    a litigation before Judge Smith regarding these notes and

10   deeds of trust, but I'm just listening in today.

11           THE COURT:  Okay.  Thank you very much.

12           All right.  Would you like to make a reply,

13   Mr. Jones?

14           MR. JONES:  -- and a brief --

15           THE COURT:  Mr. Jones?

16           MR. JONES:  Can you hear me?

17           THE COURT:  I just heard that question.  I didn't

18   hear anything before that.  Would you like to make a reply?

19           MR. JONES:  Your Honor, is this better?

20           THE COURT:  Yes.

21           MR. JONES:  Okay.  I'm sorry, Your Honor.  My

22   headset has apparently given up.  Your Honor, the first

23   point as the Court is aware, we're not moving under Section

24   362(d)(2) where equity in the property is an element of the

25   motion.  As Your Honor will recall, we tried that in

Page                                                                     20

1   bankruptcy two and the Court ruled that we couldn't prove

2   that there was no equity.  The simple reason for that is no

3   one knows what the value of these properties are because

4   Mr. Byun has not gotten and continues to refuse to get to

5   the bottom of the environmental status.

6           I can't bring an appraiser in to tell us what the

7   value of this property is because they will all say we

8   don't know what the environmental status is.  And the

9   suggestion that Mr. Saxy (phonetic) has been retained to

10  get to the bottom is just not correct.  He's been retained

11  to coordinate with EPA.

12          We all know that there are many experts out there

13  who will actually go out and determine the environmental

14  status of property.  They do phase one and phase two

15  environmental assessments.  I don't know if Mr. Saxy does

16  those.  I don't know if he's competent to do it, but this

17  debtor has made no effort to figure out what's going on in

18  his property.

19          As we've pointed out now that he's allowed the

20  rental value of the property to come into the estate, he's

21  not using it to resolve the status of the property.  The

22  case law makes clear that it is not an element of -- or

23  that fact that there may be equity or the fact that a plan

24  might be conceivable do not prove that the debtor is acting

25  in good faith.  Here it is clear this debtor is delaying.

Page                                                                          21

1    He's continually promising that he has escrows open, but he

2    doesn't deliver on them.

3           Your Honor, those promises continued the day

4    after the debtor has filed this case.  We attached

5    correspondence from his counsel saying that they'd opened

6    escrow and so the suggestion that we have offers that have

7    historically all been abandoned by this debtor to sell

8    these properties is just not true.

9           Your Honor, the debtor says or Mr. Orantes says

10   that the debtor has been trying to work this out with

11   Hyundai.  What you see, the correspondence is in the

12   record, the debtor shows up and says, if you will take less

13   than what you are owed, I will sell the property.  Hyundai

14   is not required to agree to that and, Your Honor, the

15   record makes clear the history here.  Even if Hyundai had

16   agreed to accept a short sale, this debtor hasn't been

17   following through on anything he has promised.  The debtor

18   showed up in the state court this summer, assured the judge

19   he had an escrow to pay Hyundai in full.  Nothing happened.

20   It's the same run-around we've gotten since the last

21   bankruptcy.  It's time for it to stop.  Thank you, Your

22   Honor.

23          THE COURT:  You're welcome.

24          Okay.  This is a motion for relief from stay that

25   was brought in the Chapter 11 bankruptcy case of Jong Uk

1   Byun.   Evidentiary objections have been interposed by both

2   parties, both the moving party and the respondent.

3           I will rule on them first because obviously

4   knowing what the evidentiary record is, is important in

5   making appropriate findings of fact and conclusions of law

6   as to the substantive requests for relief that have been

7   made.

8           First of all, the debtor objected to the

9   declaration of Jin Ho -- Jin Oh (phonetic) on the basis

10  that it failed to establish the basis of personal

11  knowledge, the foundation necessary to testify to the facts

12  set forth in Mr. Oh's declaration.  That would be true

13  except for the fact that in its reply the moving party was

14  able to rehabilitate Mr. Oh's testimony and satisfy what --

15  establish what the scope of his personal knowledge was and

16  establish an adequate foundation for his testimony.  So,

17  therefore, that even though the evidentiary objection was

18  appropriate, as I noted, the deficiency has been cured.

19          Next, there were declarations submitted by

20  Mr. O'Connor.  I don't know that evidentiary objections

21  were separately interposed to them, but I want to know for

22  the record that I am not making any findings of fact or

23  conclusions of law on the basis of Mr. O'Connor's

24  declarations because his foundation of personal knowledge

25  is that he's counsel and he's testifying to facts -- not

Page                                                                           23

1    always but often that apparently are outside the scope of

2    his personal knowledge and may have been gleaned through

3    conversations, communications with his client.  That's not

4    an adequate basis of foundation -- or foundation for a

5    personal knowledge and I give it the credibility it's

6    entitled to, which is little or none, except for those

7    matters which he was representing his client in court and

8    is testifying to matters -- events that took place in

9    court.

10           Next, there were evidentiary objections

11   interposed by Hyundai to the Fitzgerald declarations.  This

12   has to do with valuation.  As noted by the moving party,

13   relief is not sought under 362(d)(2), so frankly the value

14   of the properties is a tangential issue.  I do note that

15   his appraisal report is indeed limited based upon his own

16   statement as to what its purpose is.  It's not to be used

17   outside of internal use of -- by the debtor so that -- that

18   really undercuts the credibility of his testimony as an

19   expert because one would -- I would presume that when an

20   expert is employed to testify to value for the purpose of a

21   court, that's very different than the kind of undertaking

22   the expert which would undertake in order to determine what

23   the value would be for the purposes of his client's

24   internal uses.

25           So even if not -- even if admissible again his

Page                                                          24

1  expert testimony is not helpful to me as a finder of fact

2  and that is the starting premise for all expert testimony.

3        Next, we have evidentiary objections to Mr.

4  Saxy's declarations other than paragraph 5.  I sustain all

5  of those for the base -- for the reasons set forth in the

6  evidentiary objections.

7        Okay.  So what we have here is fundamentally a

8  request for termination of the stay on the basis that there

9  is cause under Section 362(d)(1) and also because there's

10  been a showing made under 362(d)(4) with regards to why the

11  debtor has filed this bankruptcy case.  The term "bad

12  faith" gets bandied about much too loosely and it is such

13  and elastic term it almost doesn't mean anything anymore.

14        I think the important thing to look at under

15  Section 362(d)(4) -- obviously we start with the plain

16  language of the statute and also look to see is this debtor

17  filing the bankruptcy case to obtain the benefit of the

18  automatic stay and to stop creditor action without a

19  reasonable opportunity to reorganize his financial affairs.

20        So the specific objective factors multiplicity of

21  bankruptcy case filings, whether there has been litigation

22  pending when the bankruptcy case is filed, was there a

23  pending foreclosure sale, what actions if any have been

24  taken by the debtor both in prior bankruptcy cases and

25  outside of bankruptcy cases in terms of attempting to deal

1  with claims of creditors, these are the kinds of objective

2  factors which inform an analysis under 362(d)(4) and

3  362(d)(1) for that matter when one is asking for relief

4  from stay based upon cause and this -- this sub-variety of

5  cause which the moving party asserts.

6          This debtor has been attempting to reorganize his

7  financial affairs for a very long time.  There have indeed

8  been multiple bankruptcy cases.  He has confirmed a plan in

9  one but then was unable to carry out the plan.  He was

10  unable to get to that stage in his second bankruptcy case

11  and now we have his third bankruptcy case.  The third

12  bankruptcy case comes on the heels of litigation in state

13  court in different matters with different foci as to what

14  the litigation was about.  But being able to generate

15  income either through a sale or some other form of

16  reorganization with the subject real properties was always

17  the task in front of Mr. Byun and he can't complete that

18  task.

19          So does that rise to cause determining the

20  automatic stay?  You know, that's a case-by-case

21  determination.  I would say this is -- you know, at one end

22  of the spectrum of relief under (d)(1) and (d)(4) are

23  debtors who take percentage -- you know, fractional

24  interests of title in real property and file a bankruptcy

25  case or transfer fractional interest in property to other

Page                                                                          26

1    parties in order to hinder, delay and defraud creditors.

2           The interesting thing is, hinder and delay are

3    two predicates, which mean very different things or carry

4    much different weights in terms of moral impropriety than

5    defraud.  Hinder and delay as, I would imagine, many

6    creditors would argue is at the very heart of any

7    bankruptcy case, at least under United States insolvency

8    law.  But that's not enough obviously.  You need to shows

9    that there's been a repeated effort to stop creditors'

10   actions without -- and this is why I think the second part

11   is so important -- without there being a reasonable

12   opportunity to reorganize financial affairs.

13          So when -- especially when you have a Chapter 11

14   bankruptcy case in its early months, so this bankruptcy

15   case was commenced in August.  We're now in October so

16   we're barely two months into the case.  But again, there

17   have been repeated efforts and, indeed, a successful

18   confirmation of plan of reorganization which could not be

19   consummated, carried out.

20          So this is a very close case.  I think there is,

21   indeed, cause to terminate the stay under Section

22   362(d)(1).  With regard to hindering and delaying creditors

23   this does tip slightly over into the (d)(4) category of

24   relief that's appropriate.

25          So this is what I'm going to order.  I'm going to

Page                                                                    27

1  order that there is cause under (d)(1) and I find that

2  there has been a showing made under -- an adequate showing

3  made under 362(d)(4).  I am going to order that that relief

4  is effective and Hyundai can take any and all steps

5  necessary so that its foreclosure sales can take place --

6  let's see -- by -- on March 12, 2021.  So any and all

7  actions can be taken before that leading up to a

8  foreclosure -- foreclosure sales as of that date.

9          With regards to the other forms of extraordinary

10 relief that were sought by the moving party, I make that

11 relief effective in all bankruptcy case pending or

12 impending no matter whom the debtor is.  That's essentially

13 a form of *ex parte* relief which is contemplated in FRBP

14 4001.  There was a request to grant relief from stay for

15 180 days.  I never grant that formulation of extraordinary

16 relief from stay, so that formulation is denied.

17         My findings of fact and conclusions of law are on

18 the record.  Please prepare an appropriate form of order,

19 Mr. Jones.  Please share it with respondent's counsel

20 simultaneously before submitting it to the Court.  Thank

21 you all very much.

22         Now, with regard to the 11:00 matters it is now

23 10:57.  I am happy to move directly to those if the parties

24 are prepared.  If you'd like a brief recess we can do that

25 as well.

Page                                                                28

1          First I'm going to ask Mr. Orantes since he'll be

2    the moving party in those matters, do you want a brief

3    recess or go straight to them?

4          MR. ORANTES:  Go straight to them, Your Honor.

5          THE COURT:  I'm sorry, I can't hear you.

6          MR. ORANTES:  We could go -- yeah, we could go

7    straight to them, Your Honor.

8          THE COURT:  Straight to them.  Okay.

9          Mr. Jones, do you want a brief recess or are you

10   prepared to go forward?

11         MR. JONES:  Your Honor, I'm prepared to go

12   forward.  I apologize.  I'm not entirely clear on the

13   Court's ruling.  The Court ruled that there is cause for

14   relief but I'm confused about the dates Your Honor

15   mentioned.  Is the ruling that there's cause for relief,

16   but we're to be stayed for another six months?

17         THE COURT:  No, I'm saying the stay terminates

18   completely as of March 12, 2021.

19         MR. JONES:  I apologize.  That's six months from

20   today or maybe --

21         THE COURT:  Okay.

22         MR. JONES:  -- five and a half months.

23         THE COURT:  Thank you for your calculation.  Are

24   you prepared --

25         MR. JONES:  Okay.  I just wanted --



Page                                                                    29

1        THE COURT:  -- to go forward on --

2        MR. JONES:  Your Honor, I just wanted to make

3   sure I understood the Court's ruling.

4        THE COURT:  Okay.  You do.  Are you prepared to

5   go forward with the 11:00 matters?

6        MR. JONES:  Yes, Your Honor, I am.

7        THE COURT:  Okay.  Let's turn to 11:00.

8   (End at 10:58 a.m.)

9                         *  *  *  *  *  *

10       I certify that the foregoing is a correct

11  transcript from the electronic sound recording of the

12  proceedings in the above-entitled matter.

13

14

15  _____     Date:  10/19/2020

16  RUTH ANN HAGER, C.E.T.**D-641

17

18

19

20

21

22

23

24

25

P 888.272.0022  F 818.343.7119

www.benhyatt.com