DANIEL E. PARK, State Bar No. 174524
dpark@parklawcorp.com
**DANIEL E. PARK LAW CORPORATION**
201 N. Brand Blvd., Unit 200
Glendale, CA 91203
Telephone: (213) 616-7438
Facsimile: (818) 479-9958

Attorneys for Creditors Daniel Park,
Joan Park, and Jourdain DeWerd

# UNITED STATES BANRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JONG UK BYUN,<br><br>   Debtor. | CASE NO.: 2:20-bk-17433-VZ<br><br>Chapter 11<br><br>MOTION TO CONVERT CHAPTER 11 CASE TO ONE UNDER CHAPTER 7 UNDER 11 U.S.C. § 1112(B)<br><br>Date: May 6, 2021<br>Time: 11:00 a.m.<br>Place: Courtroom 1368<br>255 E |

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

   DANIEL E. PARK, ("Park") a Creditor and Counsel for Creditors, Daniel E. Park, Joan Park, and Jourdan DeWard ("Creditors") of the instant bankruptcy filed by Jong Uk Byun ("Debtor"), files this Motion to Convert Chapter 11 Case to One Under Chapter 7  ("Motion"). In support of this Motion, Park respectfully represents as follows:

## I. Summary of Argument

A bankruptcy court shall convert a Chapter 11 case to Chapter 7 upon a showing of cause. Under 11 U.S.C. § 1112(b)(4), "cause" is enumerated including among other things:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(E) failure to comply with an order of the court; and

(M) inability to effectuate substantial consummation of a confirmed plan.

In this case, Debtor has used the bankruptcy system as a means to continue to delay any repayment to the Creditors. Park, as well as other creditors, have been waiting for Debtor to pay back various debts for the last three years. Debtor now proposes, in his Chapter 11 plan, to pay creditors out over 30 years. Although some solace, 30 years is too long and converting Debtor's Chapter 11 case to Chapter 7 ensures that Debtor's assets can be administered and all claims against this Debtor can be paid out in a much quicker timeframe than what is proposed in Debtor's Chapter 11 plan.

## II. Factual Background

On August 14, 2020, as Dk. No 1, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Debtor is unable to confirm his Chapter 11 Plan and the instant bankruptcy is part of Debtor's latest scheme to delay and frustrate his creditors. *See* Request for Judicial Notice ("RJN"), ¶ 2, filed concurrently with this Motion, Debtor's prior bankruptcy filings: *In re: Jong Uk Byun* bearing case number 2:18-bk-19004-VZ; *In re: Central Metal, Inc.* bearing case number 2:10-bk-10642-VZ; *In re: Jong Uk Byun and Bok Soon Byun* bearing case number 2:10-bk-11241-VZ.

In the instant bankruptcy, after Debtor was unable to obtain this Court's approval of his Disclosure Statement and Plan of Reorganization filed on December 21, 2020, as Dk. No 124, Debtor filed his First Amended Disclosure Statement and Plan of Reorganization. See Request For Judicial Notice ("RJN"), ¶ 1 Debtor's First Amended Disclosure Statement and Plan, Exhibit "B", page 30 of 991 on February 2, 2021, Dk. No 197. Even if Debtor's Plan filed on February 2 is

approved, the timeframe in which the Debtor intends to pay back the creditors in is excruciatingly long. Furthermore, even if the Plan is to be approved and payments to creditors may begin, creditors will never be fully confident that they will be paid periodically for the next 30 years.

### a. Toni Ko

On or about August 26, 2015, Toni Ko ("Ko") signed a Promissory note and related loan documents agreeing to loan $900,000 to Debtor. In July 2016, Debtor stopped making the agreed upon interest payments on the note prompting Ko to seek legal action based on the loan agreements signed. On or about December 8, 2016, Ko filed a lawsuit for breach of contract against Debtor and entered judgment pursuant to a stipulation against Debtor on February 9, 2017. Debtor made two $50,000 payments to Ko in April 2017 and has since stopped making payments, despite having the means to pay. Debtor has provided no excuse for non-payment.

### b. Jourdain DeWerd

On February 6, 2015, Debtor, by way of his loan to company Central Metal which Debtor personally guaranteed, executed and delivered to Jourdain Dewerd ("DeWerd") a promissory note under which Debtor promised to pay DeWerd the principal sum of $100,000. Based on the promissory note, Debtor pleaded with DeWerd and DeWerd agreed that the note shall be payable in installments of $1,250 per month of interest payments, commencing on March 6, 2015 and continuing the 6th day of every calendar month thereafter for a total of twelve months. At the end of the twelfth month, the entire sum of the principal was to become due and payable. By the end of the twelfth month, Debtor was unable to pay the entire sum and accordingly DeWerd extended the interest payment period beyond the original twelve-month period. On or around late 2017, Debtor stopped making payments to DeWerd. Debtor is in default under the note and owes Dewerd $50,000 in principal plus interest. Debtor agreed in the promissory note that if the note was not paid in full when it became due, he would pay all collection costs incurred.

### c. Joan Park

On August 13, 2015, Debtor, by way of his loan to company Central Metal which Debtor personally guaranteed, executed and delivered to Joan Park ("Mrs. Park") a promissory note under which Debtor promised to pay Mrs. Park the principal sum of $10,000. Based on the promissory

note, Debtor pleaded with Mrs. Park and Mrs. Park agreed that the note would be payable in installments of $125 per month of interest payments, commencing on September 13, 2015 and continuing the 13th day of every calendar month thereafter for a total of twelve months. At the end of the twelfth month, the entire sum of the principal was to become due and payable. Debtor and Mrs. Park also entered into a consulting agreement, pursuant to which Debtor agreed to pay Mrs. Park $10,000. Debtor never made payments to Mrs. Park and owes her $20,000 in principal from the promissory note and consulting agreement plus interest.

### d. Daniel Park

On February 6, 2015, Debtor, by way of his loan to company Central Metal which Debtor personally guaranteed, executed and delivered to Daniel Park ("Mr. Park") a promissory note under which Debtor promised to pay Mr. Park the principal sum of $100,000. Based on the promissory note, Debtor pleaded with Mr. Park, and Mr. Park agreed that the note shall be payable in installments of $1,250 per month of interest payments, commencing on March 6, 2015 and continuing the 6th day of every calendar month thereafter for a total of twelve months. At the end of the twelfth month, the entire sum of the principal was to become due and payable. By the end of the twelfth month, Debtor was unable to pay the entire sum and accordingly Mr. Park extended the interest payment period beyond the original twelve-month period. On or around late 2017, Debtor stopped making payments to Mr. Park. Debtor is in default under the note and owes Mr. Park $50,000 in principal plus interest. Debtor agreed in the promissory note that if the note was not paid in full when it became due, he would pay all collection costs incurred.

### e. Hyundai

Debtor pleaded with Hyundai for many years for Hyundai to engage in business with his company. Eventually, Hyundai agreed to buy scrap metals from Debtor's company, Central Metal. Shortly thereafter, Debtor filed for bankruptcy due to his inability to make payments to two Korean banks. During the bankruptcy, Debtor pleaded with Hyundai to purchase his Korean bank notes. Again, Hyundai bailed Debtor out and purchased the bank notes for $17 million in exchange for a repayment plan with Debtor.

In order to avoid repayment to Hyundai, Debtor sued Hyundai for anti-trust violations.

Debtor has since ceased all payments to Hyundai of the $17 million bank notes.

### f. Allen Park

Allen Park ("Allen") loaned Debtor funds to prevent trustee sales of all of Debtor's properties during Debtor's divorce from then wife. Allen successfully prevented the sale of those properties. Additionally, Allen lent Debtor money for cash flow of Debtor's business. In order to stop paying on the loans, Debtor alleged that Allen committed fraud against him. Since creating the allegation, Debtor has ceased all payments to Allen.

### g. Christine Chong

Christine Chong ("Miss. Chong") represented Debtor in his divorce against his ex-wife, thus she assisted in getting listing and understanding all of his properties and assets. Many of such properties were likely going to be sold in a family court action. In order to extract concessions from Miss. Chong, Debtor threatened to report her to the California State Bar. Additionally, Debtor convinced Miss. Chong to convince her father to loan monies to him.

### h. Kap Chan Chong

Kap Chan Chong ("Mr. Chong") is the father of Miss Chong. Mr. Chong loaned approximately $100,000 to Debtor in 2016. As of late 2017, Debtor stopped making payments to Mr. Chong. Debtor is in default under the note and owes Mr. Chong approximately $50,000 in principal.

### III.   Legal Argument

### a. Cause Exists to Convert the Bankruptcy Case to one Under Chapter 7.

Section 1112(b)2 prescribes the general procedure for the conversion or dismissal of a chapter 11 case upon the motion of any part in interest. Relief under Section 1112(b) is predicated on a showing of "cause." If a movant establishes "cause," after notice and a hearing, the Court shall dismiss or convert a case from Chapter 11 to Chapter 7 depending on what's in the **best interests of creditors**. 11 U.S.C. § 1112(b)(2).

Section 1112(b)(4) enumerates 16 non-exclusive examples of "cause" including, among other things:

(A) substantial or continuing loss to or diminution of the estate and the absence of a

1 | reasonable likelihood of rehabilitation

2 |     (E) failure to comply with an order of the court; and

3 |     (M) inability to effectuate substantial consummation of a confirmed plan.

The statutory factors set forth in § 1112(b)(4) are non-exclusive, and Courts have broad discretion in determining what constitutes "cause" under the statute. *In re Sullivan,* 522 B.R. 604, 614 (9th Cir. BAP 2014). Any **one** of the 16 grounds may be sufficient to justify the conversion or dismissal of a case. *See,* 11 U.S.C. § 1112(b)(4); *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999); *In re Koerner*, 800 F.2d 1358 (5th Cir. 1986); But the decision to convert or dismiss remains within the discretion of the court. *See, In re Lumber Exchange Building Ltd. Partnership,* 968 F.2d 647 (8th Cir. 1992); *In re Albany Partners*, 749 F.2d 670 (11th Cir. 1984).

    1. <u>Cause exists to convert to Chapter 7 under 11 U.S.C. § 1112(b)(4)(A) because Debtor is unsure of the future real property value of his estate</u>

Section 1112(b)(4)(A) provides that "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" is "cause" for forced conversion or dismissal of a Chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)A).

Where the debtor lacked the income that would indicate a reasonable likelihood of rehabilitation and creditors were not likely to be satisfied if the case remained in Chapter 11, "cause" existed to convert the case to Chapter 7. *In re Johnston* (9th Cir. BAP 1992) 149 BR 158, 162.

The Debtor is unable to predict the Debtor's future income from the real estate due to the COVID-19 pandemic and admits that this may affect Debtor's income. ("RJN, Exhibit A.) Income is "anticipated" to "increase" in the future but there is no guarantee or reasonable likelihood of rehabilitation. *See* RJN, Exhibit A, Page 12. Furthermore, Debtor proposes to pay some creditors over 30 years if the instant Chapter 11 Plan is confirmed which poses an unreasonable and substantial risk to creditors as 30 years is an extremely long period for creditors to wait for full payment given Debtor's history of nonpayment and deceptive tactics to frustrate his creditors. *See* RJN, Exhibit A, Exhibit "B". Presently, although the Debtor has obfuscated the real property's value, the Debtor has offers for the property that exceed the liabilities amount. (*See* Declaration of

Daniel Park, ["Park Declaration"], ¶12.) If the motion to Chapter 7 is granted, Debtor's real property can be liquidated and creditors can obtain instant relief whereas future value of the property remain unknown and uncertain.

Therefore, under 11 U.S.C. § 1112(b)(4)(A) since there is doubt as to the future value of the real property, doubt as to generation of income due to the COVID-19 pandemic, and doubt as to Debtor's guarantee of payment for the next 30 years, there is cause to convert Debtor's Chapter 11 case to Chapter 7.

2. <u>Cause exists to convert to Chapter 7 under 11 U.S.C. § 1112(b)(4)(E) because Debtor has failed to comply with an order of the court.</u>

Section 1112(b)(4)(E) provides cause to convert a case includes:

"(E) failure to comply with and order of the court"

11 U.S.C. § 1112(b)(4)(E).

"[F]ailure to comply with a court order need not be willful, in bad faith or fraudulent, because a debtor takes on the responsibilities required by Code in availing himself of its protections." *YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC),* 505 B.R. 289, 303 (S.D. Cal. 2014). Essentially, failure to comply with a court order is cause for conversion.

Here, Debtor has multiple court judgments against him that he has not complied with. (RJN, Exhibit A.) Creditor Toni Ko received a judgment against Debtor in 2017 pursuant to a stipulated judgment. Debtor made two payments on the judgment and has since stopped making payments, despite having the means to pay. Debtor has provided no excuse for non-payment. Debtor has other bankruptcy proceedings that he has not adhered to court judgments in. (RJN, Exhibit B.) Therefore, since Debtor has failed to comply with an order of the court on various occasions, cause to convert to Chapter 7 exists.

3. <u>Cause exists to convert to Chapter 7 under 11 U.S.C. § 1112(b)(4)(M) because of the Debtor's inability to effectuate substantial consummation of a confirmed plan</u>.

Section 1112(b)(4)(M) provides cause to convert a case includes:

"(M) inability to effectuate substantial consummation of a confirmed plan"

7

**MOTION TO CONVERT CHAPTER 11 CASE TO ONE UNDER CHAPTER 7 UNDER 11 U.S.C. § 1112(B)**

11 U.S.C. § 1112(b)(4)(M).

"Substantial consummation" of a confirmed plan is defined by the Bankruptcy Code to mean: (1) the transfer of all or substantially all of the property proposed by the plan to be transferred; (2) the assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (3) the commencement of distribution under the plan. 11 U.S.C.. § 1101(2)."[I]t seems that commencement should mean not just the beginning of payments to a single creditor, but the commencement of distribution to all or substantially all creditors." *In re Dean Hardwoods*, Inc., 431 B.R. 387, 392 (Bankr. E.D.N.C. 2010).

Debtor has made no proposed plan of reorganization to pay **most** of the creditors over time, such as Daniel Park or Joan Park. (RJN, Exhibit A.) There has not been any proposal for negotiation of the terms to repay these creditors. Instead, Debtor simply uses the bankruptcy system as a means to continue to delay the payment of his creditors as indicated by the instant chapter 11 plan which proposes a thirty (30) year repayment period, which is simply too long for creditors to shoulder this kind of risk. (RJN, Exhibit A, Exhibit "B".) Therefore, since Debtor's plan of reorganization does not address most of the creditors, there exists sufficient cause to convert the Chapter 11 motion to Chapter 7.

### a. Cause exists to convert to Chapter 7 under 11 U.S.C. § 1112(b)(4) because of the bad faith of the Debtor

"[B]ankruptcy courts, as courts of equity, may always consider the presence of bad faith on the part of one of the parties when fashioning relief." *In re Albany Partners*, 749 F.2d 670 (11th Cir. 1984).

Debtor has acted in bad faith. Despite signing legally binding agreements in exchange for large amounts of monies in loans from multiple creditors, and multiple court judgments, Debtor has refused to repay. Debtor has used the bankruptcy courts and the Chapter 11 process to delay, hinder and obstruct the creditors and avoid repayment. This court can put a stop to the Debtor's actions by converting to Chapter 7 and going through the liquidation process so that the creditors can be paid.

### b. Conversion, Rather Than Dismissal, is in the Best Interests of the Creditors

and the Estate

Section 1112(b)(1) provides, in relevant part, that "…the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, *whichever is in the best interests of creditors and the estate*, for cause…" 11 U.S.C. § 1112(b)(1). Emphasis added. If cause is established, the decision whether to convert or dismiss the case falls within the sound discretion of the court. *In re Sullivan,* 522 B.R. 604, 614 (9th Cir. BAP 2014) (citing *Mitan v. Duval (in re Mitan),* 573 F.3d 237, 247 (6th Cir.2009)). Thus, "[t]he standard of choosing conversion of dismissal based on 'the best interest of creditors and the estate' implies a balancing test to be applied through case-by-case analysis" *In re Staff Inv. Co.,* 1146 B.R. at 260.

The Ninth Circuit has held that, "when deciding between dismissal and conversion under 11 U.S.C. § 1112(b), the court must consider the interests of all of the creditors." *See, In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009) (internal quotation omitted) (emphasis in original). "The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy...As [a chapter 7] trustee's powers to recover property are generally greater than would be available outside of bankruptcy, *this factor tends to favor conversion where there is not continuing revenue-generating activity." In re Staff Inv. Co., 146 B.R. at 261*. Emphasis added.

In this case, conversion would be in the best interests of the creditors. If this case were dismissed there is little doubt that the Debtor would evade his duty to payment of the creditors, ignore the judgments of the courts, and never pay these claims. Thus far, the Debtor has continuously used the bankruptcy system as a means to delay his payments to the creditors and a conversion to Chapter 7 will end that.

In order to protect creditors with allowed claims, the best interests of creditors are served by converting the case to chapter 7 so that the assets of the Debtor can be administered to pay the claims of the creditors in a shorter timeframe and close the case. The properties owned by Debtor are worth more than the money owed to Creditors, thus Debtor is more than capable of repaying Creditors if his assets are liquidated through the Chapter 7 process.

4. Conclusion

For the foregoing reasons, the Creditors believe that sufficient cause exists to convert this case from a Chapter 11 Case to Chapter 7.

**Dated:** April 15, 2021                        **DANIEL E. PARK LAW CORPORATION**

                                                  By: *Daniel Park*

                                                     Daniel E. Park, Esq.
                                                     Attorney for Daniel Park, Joan Park,
                                                     and Jourdain DeWerd