DANIEL E. PARK, State Bar No. 174524
dpark@parklawcorp.com
**DANIEL E. PARK LAW CORPORATION**
201 N. Brand Blvd., Unit 200
Glendale, CA 91203
Telephone: (213) 616-7438
Facsimile: (818) 479-9958

Attorneys for Creditors Daniel Park,
Joan Park, and Jourdain DeWerd

## UNITED STATES BANRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

In re

JONG UK BYUN,

        Debtor.

CASE NO.: 2:20-bk-17433-VZ

Chapter 11

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DANIEL E. PARK'S MOTION TO CONVERT CHAPTER CASE TO ONE UNDER CHAPTER 7 UNDER 11 U.S.C. § 1112(B)

Date: May 6, 2021
Time: 11:00 a.m.
Place: Courtroom 1368
255 E

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

PARTIES:

        Pursuant to Rule 201 of the Federal Rules of Evidence, made applicable to bankruptcy

proceedings by Federal Rule of Bankruptcy Procedure 9017, Daniel E. Park, attorney for creditors

and movants, Daniel Park, Joan Park and Jourdain DeWard, hereby requests that this Court take

judicial notice of the following documents.

        1. Attached hereto as Exhibit "A" is a true and correct copy of the First Amended Disclosure

Statement and Plan of Reorganization filed by Jong Uk Byun, the debtor (the "Debtor"), filed on

February 2, 2021, as Document Number ("Dk. No") 197.

2.  Attached hereto as Exhibit "B" is a true and correct copy of the search results obtained on April 14, 2021 from CM/ECF for the U.S. Bankruptcy Court Central District for California showing prior bankruptcy filings by the Debtor and Debtor's company, "Central Metal, Inc." as follows:

- Case No.: 2:10-bk-10642-VZ filed by Central Metal, Inc. under Chapter 11 bankruptcy filed on 1/8/2010 and closed on 7/12/2011

- Case No.: 2:10-bk-11241-VZ filed by Jong Uk Byun and Bok Soon Byun. under Chapter 11 bankruptcy filed on 1/12/2010 and closed on 1/25/2013.

- Case No.: 2:18-bk-19004-VZ filed by Jong Uk Byun under Chapter 11 bankruptcy filed on 8/3/2018 and closed on 2/4/2020

- Case No.: 2:20-bk-17433-VZ filed by Central Metal, Inc. as a Chapter 11 bankruptcy filed on 8/14/2020

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: April 15, 2021                    By: _____
                                              Daniel E. Park

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO CONVERT CHAPTER CASE TO
ONE UNDER CHAPTER 7 UNDER 11 U.S.C. § 1112(B)**

# EXHIBIT A

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| GIOVANNI ORANTES – State Bar No. 190060<br>**THE ORANTES LAW FIRM, P.C.**<br>3435 Wilshire Blvd., Suite 2920<br>Los Angeles, CA 90010<br>Telephone: (213) 389-4362<br>Facsimile: (877) 789-5776<br>go@gobklaw.com<br><br><br>☒ *Attorney for: Debtor and Debtor-In-Possession* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| In re:<br>JONG UK BYUN | CASE NO.: 2:20-bk-17433-VZ<br><br>CHAPTER: 11 |
|---|---|
| | **FIRST AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION**<br><br>[11 U.S.C. §§ 1123, 1125] |
| Debtor(s). | ☐ Initial Disclosure Statement and Plan<br>☒ 1st Amended Disclosure Statement and Plan<br>☐<br><br>For information on court hearings,<br>see the separately filed notice(s) of hearing. |

On (*specify the "petition date"*) **August 14, 2020**, the Debtor filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code"). This form Disclosure Statement and Plan of Reorganization ("**DS and Plan**") is both the Disclosure Statement ("**DS**") and the Plan of Reorganization ("**Plan**").

**PROPONENT**: The party who filed the DS and Plan ("Proponent") is: ☒ Debtor, or ☐ .

**PLAN**: The terms of the Plan, located at Sections **VIII – X**, comply with the requirements of 11 U.S.C. § 1123, including the proposed treatment of claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners. **The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone**; however, if the Plan is confirmed, the terms will bind the Debtor and any holders of claims or interests treated by the plan.

**DISCLOSURE STATEMENT**: Sections **I – VII** and **XI** constitute the DS and describe the assumptions that underlie the Plan and how the Plan will be executed. The Proponent believes the DS meets the standard for adequate information set forth in 11 U.S.C. § 1125(a). **The information disclosed is for explanatory purposes only and is as accurate as possible.**

Any interested party desiring further information should contact the attorney for Proponent identified above in the box at top left of this page, using the contact information provided.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                  Page 1                                  **VZ CH11.DISCLSR.PLAN**

<table>
<tr><td colspan="2"><b>NOTE ABOUT CITATIONS</b></td></tr>
</table>

| **NOTE ABOUT CITATIONS** |
| --- |
| **"Chapter, section and §" references** are to 11 U.S.C. §§ 101-1532 of the Bankruptcy Code.<br>**"FRBP" references** are to the Federal Rules of Bankruptcy Procedure.<br>**"LBR" references** are to the Local Bankruptcy Rules for the Central District of California. |

## TABLE OF CONTENTS

| | **DISCLOSURE STATEMENT** | **Page** |
| --- | --- | --- |
| **I.** | General Disclaimer | **3** |
| **II.** | Type of Plan of Reorganization; Important Dates | **3** |
| **III.** | Description of Debtor's Past and Future Business and Events Precipitating Bankruptcy Filing | **3** |
| **IV.** | Definitions and Preliminary Information | **5** |
| **V.** | Source of Money to Pay Claims and Interest-Holders | **7** |
| **VI.** | Assets and Liabilities of the Estate | **10** |
| **VII** | Treatment of Nonconsenting Members of a Consenting Class | **10** |
| | **PLAN OF REORGANIZATION** | |
| **VIII.** | Plan Provisions: Treatment of Claims | **11** |
| | **A.** Assumption and Rejection of Executory Contracts and Unexpired Leases | **11** |
| | **B.** Unsecured Claims: Administrative Expenses, Taxes | **12** |
| | **C.** CLASS # 1: Priority Unsecured Claims | **13** |
| | **D** CLASS # 2: Unsecured Claims: Nominal and General | **13** |
| | **E.** CLASS # 3, # 4 and #5: Secured Claims | **14** |
| | **F.** Shareholder or Partner Interests | **17** |
| | Additional Claims (if any) Not Identified in Sections VIII.A - VIII.F    **EXH H, I, etc.** | |
| **IX.** | Unclaimed or Undeliverable Plan Distributions | **18** |
| **X.** | Effect of Confirmation | **18** |
| **XI.** | **LIST OF EXHIBITS AND DECLARATIONS** | **18** |
| | **Mandatory Exhibits** | |
| | Declaration in Support of Disclosure Statement and Plan | **EXH A** |
| | List of all Claims | **EXH B** |
| | List of all Property and Valuation of Property as of Confirmation Date | **EXH C** |
| | Projected Income, Expenses and Payments by Month/Quarter | **EXH D** |
| | Financial Records | **EXH E** |
| | **Optional Exhibits** | |
| | Additional Declarations | **EXH F** |
| | Additional Exhibits | **EXH G** |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                    Page 2                                    **VZ CH11.DISCLSR.PLAN**

## I.  GENERAL DISCLAIMER

PLEASE READ THIS DOCUMENT CAREFUULY, INCLUDING THE ATTACHED EXHIBITS.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, AND WHO IS ENTITLED TO FILE AN OBJECTION TO CONFIRMATION OF THE PLAN.  IT ALSO IDENTIFIES THE TREATMENT THAT CLAIMANTS (CREDITORS) AND ANY INTEREST HOLDERS (SHAREHOLDERS OR PARTNERS) CAN EXPECT TO RECEIVE UNDER THE PLAN, IF THE PLAN IS CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED ON TO FORMULATE THIS DOCUMENT ARE IN **EXHIBIT A**, A DECLARATION.  ALL REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH INFORMATION CONTAINED IN THIS DS AND PLAN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

AFTER CAREFULLY REVIEWING THIS DOCUMENT AND THE ATTACHED DECLARATIONS AND EXHIBITS, PLEASE REFER TO THE SEPARATELY FILED NOTICE OF DATES RELATED TO A HEARING ON MOTION TO APPROVE ADEQUACY OF THE DISCLOSURE STATEMENT, OR HEARING ON MOTION TO CONFIRM THE PLAN.  EACH NOTICE WILL IDENTIFY DATES AND DEADLINES TO FILE A RESPONSE OR OTHER OBJECTION, OR TO SUBMIT A BALLOT IF YOU ARE ENTITLED TO VOTE ON THE PLAN.

## II.  TYPE OF PLAN OF REORGANIZATION;  IMPORTANT DATES

Payments and treatments under the Plan have a starting date ("**Effective Date**"), a period of time after the Effective Date to continue payments ("**Plan Term**"), and a final payment date ("**Final Payment**").

| Plan Type | Effective Date | Plan Term | Final Payment Date |
|---|---|---|---|
| ☐ Liquidating: *See Section V.A.2 below for anticipated sale(s)* <br> ☒ Operating: *See Section III below* | ☐ 14 days after order confirming Plan <br> ☒ Other date:  **The effective date of this Plan is the first day of the month that is a business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.** | ☐ 5 years; or <br> ☒ 360 months | *March 2026 (estimates an Effective Date of May 2021)* |

## III.  DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

**A.  PAST AND FUTURE BUSINESS OPERATIONS**: The Debtor is organized as a sole proprietorship.  The Debtor conducted over 90 percent of its business activity in *Los Angeles California* since 1993.  Before this case was commenced on (specify the "petition date") August 14, 2020, the Debtor,

☐ provided the following services for pay:

☐ manufactured or sold the following products:

☒ was in the business of renting real estate.  (See Exhibit G for a detailed description of Debtor's property or properties including locations, square footage, occupancy rates, etc.)

☐ was in the business of developing real estate.  (See Exhibit _____ for a detailed description of Debtor's property or properties including locations, size of lot(s), stage of development, etc.)

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                   Page 3                          **VZ CH11.DISCLSR.PLAN**

☐ other:

The Debtor ☒ will ☐ will not continue this course of conduct.

The Debtor:  ☒ is not a small business debtor within the meaning of 11 U.S.C.§101(51)(d)).
☐ is a small business debtor within the meaning of 11 U.S.C.§101(51)(d)), please see Exhibit
for information pertaining to 11 U.S.C. §1116 compliance.

## B.  FACTORS THAT LED TO FILING THIS BANKRUPTCY CASE (*Describe briefly*):

The Debtor is an individual, 67 years of age.  The Debtor owns real property as listed in Exhibit C to this Disclosure Statement, which is fairly valued in the range of $43,150,000.  He does not own a home.  He also owns 100% of Central Metal, Inc. ("CMI"), which he formed in 1993, but does not currently conduct business activities other than sub-renting its locations.  He operated CMI ever since 1993 until recently.

Although the California Superior Court dismissed the Debtor's claims, finding that there was no commitment on the part of Hyundai Steel Company, Ltd. ("Hyundai"), the Debtor's position is that his troubles commenced when Hyundai, CMI's largest customer, breached its commitment with CMI.  From 2007 through mid-2016, CMI sold Hyundai more than $180 million in recycled materials pursuant to a Memorandum of Understanding.  Despite promises to the contrary, which caused CMI to purchase additional material handling equipment and expanding its business, Hyundai stopped buying products from CMI in 2016 without any formal notice. In breach of its promises to purchase 1.12 million tons of scrap metal since 2008, Hyundai barely purchased approximately 334,400 tons of scrap metal.  As a result of Hyundai Steel's breach of its promises, CMI was never able to recover financially. CMI and, by extension, the Debtor have lost approximately $32 Million from Hyundai's failure to purchase 140,000 tons of scrap metal annually. One important detail here is that Hyundai discontinued performing on its obligations to CMI when it made an equivalent promise to Prime Metals U.S.A., Inc. ("Prime Metals) in exchange for the purchase by Prime Metals of certain mortgages against the Debtor's real properties. Hyundai had previously agreed to purchase these mortgages (and be flexible regarding collection) as compensation for Hyundai's breach of purchase agreements with CMI in 2008 (the "Notes").  Again, unfortunately, the Superior Court of California already ruled against the Debtor on the foregoing.

Such Notes are the basis for Hyundai's attempt to foreclose on the Debtor's real properties on August 17, 2020.  In short, Hyundai breached agreements with CMI, which caused CMI to incur losses of tens of millions of dollars in depreciating scrap metal and investments in equipment and expansion of operations.

Hyundai then purchased the Notes; however, since Hyundai then continued breaching its promises to buy scrap metal, both CMI and the Debtor were unable to perform under the Notes. To add insult to injury, Hyundai now is attempting to foreclose on the Debtor's real properties even though the Notes are the subject of an action to recover them by Richard Marshack, as Chapter 7 Trustee for Prime Metals.  This is another piece in Hyundai's game of deceit and bad faith.

The Debtor prosecuted litigation against Hyundai unsuccessfully prior to commencing this bankruptcy proceeding and, as mentioned above, the California Superior Court dismissed the Debtor's claims.  The Debtor filed this personal chapter 11 case to stop a foreclosure sale of his real property by Hyundai so that he could attempt to propose a Chapter 11 Plan that pays not only Hyundai but also several other substantial creditors owed millions of dollars who would otherwise receive nothing from a foreclosure sale.  The foreclosure sale was set for August 17, 2020. The Debtor had previously listed his Los Angeles properties for sale and secured three potential buyers to purchase all four properties for $34.8 Million, which is less than what the Debtor believes he would get now that the U.S. Environmental Protection Agency ("EPA") has found little contamination in his property commonly known as 8201 Santa Fe Ave., Huntington Park, CA 90255 ("Santa Fe Property") if given sufficient time for marketing and due diligence by potential purchasers as well as to account for the impact of substantial capital gains taxes associated with a sale. However, not even those sales could close before August 17, 2020. Hyundai refused to provide the Debtor any further extension even though the total sales price exceeds Hyundai's claims of approximately $24 Million by roughly $10 Million. When the Debtor was unable to convince Hyundai or the Superior Court for the County of Los Angeles to continue the sale, he was forced to file the bankruptcy petition.

The foregoing notwithstanding, the Debtor has recently retained The Environmental Law Group, LLP's S. Wayne Rosenbaum, Esq., who specializes in environmental law. Based on the communications with the EPA by the Debtor through his agents and counsel, it would appear that the EPA has concluded that the Debtor's real estate Santa Fe Property is not environmentally impaired, but the EPA has yet to finalize its evaluation of any contamination caused by the Santa Fe Property on surrounding residential properties. Therefore, should the EPA and/or the California Department of Toxic Substance Control determine that the Debtor is liable as a generator of pollution on the surrounding properties, the Debtor is unable at this time to quantify the estimated cleanup costs or the duration of cleanup efforts. However, environmental counsel believes that it may be

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                      Page 5                                      **VZ CH11.DISCLSR.PLAN**

possible to quantify the potential financial exposure in consultation with the EPA. If the Debtor is unable to pay the cleanup costs himself, it is likely that the EPA or DTSC could use their statutory authority to carry out the remediation and place a lien on the Santa Fe Property to recover their costs of clean up senior in priority to all other liens, which would run with the land. This potential liability does impact the marketability of the Santa Fe Property. Nevertheless, since , the Santa Fe Property does not appear to be environmentally impaired, this potential exposure may not impact the stability of rental income derived from the Santa Fe Property but may increase the likelihood of default under the Chapter 11 Plan depending on the costs of cleanup. In light of the foregoing, the Debtor is reasonably confident that he can propose a feasible plan of reorganization at this time as his circumstances have changed for the better and this document represents such plan; unfortunately, Hyundai obtained relief from stay by order entered on October 29, 2020 and may foreclose commencing on March 12, 2021. In light of such impending foreclosure sale, the Debtor shifted his focus to obtaining refinancing offers. While the Debtor did obtain at least one offer to borrow an amount that would be only somewhat short of Hyundai's current balance, the lender will not close on such transaction as it relates to the Santa Fe property (which is the largest property), until the EPA has completed its phase 3 or third required off site investigation and testing and provides a No Further Action letter and releases the current owner and site(s) from further testing and remediation. The EPA, on its part, has not commenced such phase 3 or third required off-site investigation largely because it has paused or slowed down its investigations because of the current COVID-19 pandemic and the danger of infection with such virus by its personnel or third parties while conducting investigations. This unfortunate turn of events is thwarting the Debtor's ability to refinance or sell the property and leaves a conventional Chapter 11 reorganization as the only option at this point barring a change in the EPA's ability to conduct such investigations now that vaccines against the COVID-19 virus have been approved. The foregoing notwithstanding, the Debtor has continued to approach parties who may finance a loan to pay off Hyundai to keep Hyundai from foreclosing on this Los Angeles properties and may request that a confirmation order reflect satisfaction of Hyundai's claim thusly. The Debtor has obtained at least one offer for a loan despite the EPA issues; however, as the interest rate is 12%, the Debtor continues to explore other lenders at lower interest rates while also clearing up warehouse space to rent to enhance his income.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                  Page 6                                  **VZ CH11.DISCLSR.PLAN**

**C.** <u>**FUTURE FINANCIAL OUTLOOK:**</u> Proponent believes that the Debtor's economic health has, or will, improve from its prebankruptcy state for the following reasons. (*Describe briefly*)

Historically, the Debtor technically leased his properties to his corporation, CMI, which then serviced the debt secured by his properties in lieu of or as rent. Since CMI's recycling operations have ceased, the Debtor has been able to lease the majority of his properties as his financial projections reveal and now has sufficient income to service his debt over terms and an interest rate set under Bankruptcy Law. Interest rates are historically low at this time and such circumstance favors the Debtor.

**D.** <u>**PROPOSED MANAGEMENT OF THE DEBTOR**</u>:

1. Names of persons who will manage the Debtor's business affairs: The Debtor will continue to manage his business affairs.

2. Proposed compensation to persons listed above: The Debtor will fund his ongoing modest living expenses after satisfying his obligations under this Plan from rental income.

3. Qualifications of persons listed above: The Proponent has operated businesses for about 27 years and his business failed only because of Hyundai's unexpected halt to its orders for metal as explained above, which left the Debtor with the debt secured by his properties which had been incurred largely to increase CMI's capacity to be able to service Hyundai's demand. Without the large orders from Hyundai, the cost of operating CMI's recycling business are too high to be offset by income from operations. Therefore, since the operations now consist of renting out his properties, the Debtor is eminently qualified for such straightforward business model.

4. Affiliation of persons listed above to Debtor: Jong Uk Byun is the Debtor.

5. Job description: Manager and Operator

**E.** <u>**PROPOSED** ☒ **DISBURSING AGENT** ☐ **MULTI-PURPOSE POST-CONFIRMATION AGENT**</u>
will pay all amounts due under the Plan from a fund hereby authorized to be opened. This fund shall be maintained in a segregated, interest-bearing account in a depository approved by the United States trustee for the Central District of California for deposits of funds by trustees.

1. Name of person responsible for collecting money intended for distribution to claimants and transmitting it to claimants: Jong Uk Byun*

2. Disbursing agent's address: 8201 Santa Fe Ave., Huntington Park, CA 90255

3. Disbursing agent's phone number: May Be Provided by Request to Debtor's Attorney.

4. Proposed compensation for person listed above: $0

5. Qualifications of person listed above: Plan Proponent will serve as the Disbursing Agent. As explained above, in light of the Debtor's history operating businesses, he is eminently qualified to manage the rental of his properties and payment of his obligations under his Chapter 11 Plan.

6. Affiliation of person listed above to Debtor: The Debtor, the Plan Proponent, is also the Disbursing Agent.

7. Job description: Manager and Operator

    ***The Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall not receive compensation or reimbursement for services and expenses rendered and incurred in connection with making distributions under the Plan.***

## IV. **DEFINITIONS AND PRELIMINARY INFORMATION**

### A.  **CLAIMS AND INTERESTS**

A claim refers to all obligations of the Debtor or against property of the Debtor.  Claims treated under the Plan are included whether the claim arose before or after the bankruptcy case was filed, and whether or not an obligation involves a cash payment.  A claimant refers to holder of a claim treated under the Plan, even if the party did not file a proof of claim.  An interest represents an ownership stake in the Debtor.  An interest holder refers to holder of an interest treated under the Plan, even if the party did not file a proof of interest.

A claim or interest is allowed if it is (a) timely and properly scheduled or filed, and not objected to; (b) objected to, and was resolved by settlement of the parties or a court order, or (c) deemed allowed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  An interest is deemed allowed if it is included on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.  **Allowed claims and interests are provided for in the Plan in the relevant category or class.**

A claim or interest is disallowed if it was timely objected to by a party in interest and the court ordered that the claim or interest be disallowed in part or entirely.  **Disallowed claims and interests are not treated under the Plan.**

A claim or interest is disputed if a ruling on allowance has not been made, and (a) a proof of claim or interest has been filed or deemed filed and a party in interest has filed an objection; or (b) a proof of claim or interest has not been filed and the Debtor scheduled such claim or interest as disputed, contingent, unliquidated or unknown.

In this case, the deadline by which to file a proof of claim or interest is <u>December 22, 2020</u> ("Bar Date") and the deadline by which to have an objection to claim or interest heard is <u>January 29, 2021</u>.  The status of the claims and interest objection process is that ☐ all objections to have been resolved, and no other objections are anticipated; or ☒ the objection process is pending, or will shortly begin, for the claims or interests identified in Exhibit B as having an objection pending and Proponent has filed the Motion for Order Approving Disclosure Statement with objections still pending because the Bar Date had not expired by the time this disclosure statement had to be filed and because counsel anticipates rulings on or negotiating resolutions of such objections on time to obtain approval of a disclosure statement.

If the holder of a claim or interest wants to vote, but holds a claim or interest that has either (a) been objected to, or (b) has been scheduled by the Debtor as contingent, disputed, unliquidated, or unknown, and the holder has not filed a proof of claim or interest, the holder must file a motion to have its claim or interest allowed for voting purposes in time for that motion to be heard before the hearing on confirmation of the Plan.

No distribution will be made on the disputed portion of a claim or interest unless allowed by a final non-appealable order.  FRBP 9019 authorizes the Debtor to settle disputed claims with court approval; but court approval is not required if a proposed settlement does not exceed $<u>2,500.00</u>.  The Debtor is required to reserve funds to pay the amount claimants would receive if the claim is allowed in full (unless the court approves a different amount).  To the extent a disputed claim is disallowed, (a) the funds that had been reserved for such claims will be distributed as provided in the Plan to other creditors of the same class (or as ordered by the court); or (b) if this box is checked ☒ then such funds will be distributed to the Debtor.

### B.  **POTENTIAL § 1111(b) ELECTIONS**.  § 1111(b) allows a partially secured claim to be treated as fully secured under certain conditions, notwithstanding § 506(a).  Claimants should consult their attorney to evaluate if a § 1111(b) election is available and is in their best interest, and to identify the deadline for making an election.

### C.  **VOTING AND OBJECTIONS TO CONFIRMATION OF PLAN**.

"Voting" to accept or reject the Plan is different from "objecting" to confirmation of the Plan.  Voting by ballot means a claimant entitled to vote completes the ballot enclosed with this DS and Plan and returns it to

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                    Page 8                                    **VZ CH11.DISCLSR.PLAN**

Proponent.  Objecting to confirmation means a party in interest files and serves either a Preliminary Objection to Confirmation of Plan, or an Opposition to Motion to Confirm Plan.

1. **Who may object to confirmation of the Plan**.  Any party in interest may object to confirmation of the Plan; but, as explained below, not all claimants and interest holders are entitled to vote to accept or reject the Plan.

2. **Who may vote (§ 1124)**.  It requires both an allowed and impaired claim, or allowed and impaired interest in order to vote either to accept or reject the Plan.

   Impaired claimants include those whose legal, equitable, and contractual rights are altered by the Plan even if the alteration is beneficial to the claimant.  Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

   Claims and interests are placed into classes consistent with § 1122.  Members of unimpaired classes do not vote, though they may file an objection to confirmation of the plan.

   Many claimants are treated by the Bankruptcy Code as having accepted or rejected the Plan without a vote.  Some types of claims are required to be treated a certain way by the Bankruptcy Code and for that reason they are considered unimpaired.  Holders of such claims cannot vote.  In addition, the Bankruptcy Code treats some claimants as having rejected the Plan without a vote if (a) the claimant is to receive no distribution under the Plan; (b) an objection has been filed to that claimants' claim and the objection has not been resolved prior to filing the Plan; or (c) Debtor scheduled a claim as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim.

| Classes Entitled to Vote Because the Class is Impaired: | Classes Not Entitled to Vote Because the Class is Unimpaired: |
|---|---|
| **Except for Classes 1 and 2a and priority claims under § 507(a)(8) and § 1129(a)(9)(C) , ALL Classes Are Impaired and Entitled to Vote.** | None. |

   A party that disputes the Proponent's characterization of its claim or interest as unimpaired and wants to vote, may request a finding of impairment from the Court in order to obtain the right to vote.

3. **Votes necessary to confirm the Plan.**. The court may confirm the Plan if at least one non-insider impaired class of claims has accepted, and certain statutory requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes.  A class of claim has accepted the Plan when more than one half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan.  A class of interest has accepted when more than one half in number and at least two-thirds in amount of the allowed interests of such class actually voting have accepted it.  It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

(A) **How to vote**. The Debtor will file and serve 2 notices: (1) Notice of Hearing on Adequacy of Disclosure Statement ("**Notice of DS Hearing**"); and Notice of Dates Related to Confirmation of Plan and Deadlines to: Submit Ballot; (B) File Preliminary Objection to Confirmation of Plan; and (C) File Response to Motion to Confirm Plan ("**Notice of Deadlines Related to Confirmation**").

   A ballot will accompany the Notice of Deadlines Related to Confirmation.  A voting claimant must follow the instructions set forth in the Notice of Deadlines Related to Confirmation.  A claimant whose claim is allowed as partly secured and partly unsecured is entitled to vote in each capacity by delivering one ballot for the secured part of the claim and another ballot for the unsecured portion of the claim.

# V.  SOURCE OF MONEY TO SATISFY CLAIMS AND INTERESTS

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled payments to claimants discussed in sections VIII below.

**A.** **NON-INCOME SOURCES TO FUND PLAN.**  See Exhibit(s) D for income that will fund the Plan.  If additional funding sources (non-income) are needed, see below:

1. Loan or Line of Credit: ☐ None    ☒ Loans or Lines of Credit are as follows:

| | NAME OF LENDER | CONTRIBUTION TYPE | TERM | INT RATE | PROCEEDS |
|---|---|---|---|---|---|
| (a) | **The Debtor continues to seek financing and may amend this Disclosure Statement to reflect relevant information.** | ☐ Loan ☐ Credit Line | | % | $ |
| (b) | | ☐ Loan ☐ Credit Line | | % | $ |

2. Sales of Property:

☒ None  - Because of the significant ordinary and/or capital gain tax consequences of a sale and the limitations imposed by not having a final clearance from the EPA, the Debtor does not currently have a purchase transaction in place, but reserves the right to sell some or all of his real property in the future to pay claims sooner.

☐ All or substantially all of Debtor's assets will be sold. The terms of the proposed sale and evidence of the financial solvency of the proposed buyer is attached in Exhibit           .

☐ The specified property of Debtor is planned to be sold as follows:

| PROPERTY DESCRIPTION: | PROPOSED SALE DATE | PROPOSED SALE PRICE | PROCEEDS TO FUND THE PLAN |
|---|---|---|---|
| (a) ☐ Property in CLASS #3, #4 or #5: **Check only ONE**:<br>☐ 3a ☐ 3b ☐ 3c ☐ 3d ☐ 3e<br>☐ 4a ☐ 4b ☐ 4c ☐ 4d ☐ 4e<br>☐ 5a ☐ 5b ☐ 5c ☐ 5d ☐ 5e | | $ | $ |
| (b) ☐ Property in CLASS #3 or #4: **Check only ONE**:<br>☐ 3a ☐ 3b ☐ 3c ☐ 3d ☐ 3e<br>☐ 4a ☐ 4b ☐ 4c ☐ 4d ☐ 4e<br>☐ 5a ☐ 5b ☐ 5c ☐ 5d ☐ 5e | | $ | $ |

☐ **See Exhibit** _____ for additional anticipated sales of specific property.

3. **Adversary Proceedings**: ☒ None    ☐ Adversary proceedings are as follows:

| ADVERSARY PROCEEDING DESCRIPTION: FRBP 7001 and LBR 7004-1 require a summons/complaint. | DATE FILED OR TO BE FILED | ADV. PROC. NUMBER | ANTICIPATED RECOVERY |
|---|---|---|---|
| (a) | | | $ |
| (b) | | | $ |

B. **PAYMENTS ON THE EFFECTIVE DATE**.  This section demonstrates the Plan is feasible on the Effective Date.

| (1) CLAIMS AND EXPENSES TO BE PAID ON THE EFFECTIVE DATE | AMOUNT |
|---|---|
| Cure Payments: Executory Contracts, Unexpired Leases:  Section VIII.B.2. | $0 |
| Administrative claims + Statutory Costs/Charges:  Section VIII.C.1. +court costs (estimated) | $141,875 |
| Nominal Unsecured Claims:  Section VIII.E.1. | $0 |
| First Payments:  General Unsecured Claims:  Section VIII.E.2 (Payments totaling $3,613.87 per month – See Exhibit B – are currently anticipated to commence on January 5, 2022 by which time the Debtor's rental income is set to increase substantially as explained in Exhibit D). | $0 |
| Arrearages + First Payments:  Secured Claims:  Sections VIII.F. – VIII.G. (The claim of Hyundai will commence on the Effective Date while the payments to other holders of secured claims totaling $51,934.93 per month – See Exhibit B – are currently anticipated to commence on January 5, 2022 by which time the Debtor's rental income is set to increase substantially as explained in Exhibit D). | $129,188.71 |
| TOTAL TO BE PAID ON THE EFFECTIVE DATE: | $271,063.71 |
| **(2) SOURCE OF FUNDS ON THE EFFECTIVE DATE** | |
| Cash on Hand (estimated based on all cash on hand plus contractual amounts to be received up to the Effective Date less expenditures): | $2,008,049.28 |
| New Value: ☒ Contributor Name (*identify*): Ex Wife or Chidlren, if needed. | $0 |
| Loan or Line of Credit:  Described above in: ☐ V.A.(1a)    ☐ V.A.(1b) | $0 |
| Sale of Property: Described above in: ☐ V.A.(2a)    ☐ V.A.(2b) | $0 |
| Adversary Proceeding Recovery: Described above in: ☐ V.A.(3a)    ☐ V.A.(3b) | $0 |
| Other Sources: ☐ (*identify*): | $0 |
| TOTAL FUNDS AVAILABLE ON THE EFFECTIVE DATE: | $2,008,049.28 |
| **(3) CASH AVAILABLE AFTER PAYMENTS MADE ON THE EFFECTIVE DATE:** | $1,736,985.57 |

C. **PAYMENTS DURING THE PLAN TERM**.  Please see **Exhibit D**. for cash flow projections for the duration of the Plan, to help determine that the plan is feasible during the plan term.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  **Exhibit D** also contains details of the assumptions that underlie the projections.

D. **FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE**
Please see Exhibit **E** for three types of financial documents related to past activities.  The two time periods of activities are: (1) the most recent twelve-month calendar year; and (2) all months subsequent thereto.  *Since the Debtor has only recently commenced renting to entities other than CMI, the available historical documents are limited, but are provided herein.*  The financial documents include: balance sheets, cash flow statements and income and expense statements.

E. **EXPLANATION OF RISK FACTORS AND POTENTIAL FLUCTUATIONS WHEN IMPLEMENTING THE PLAN**.

| RISK FACTOR | EXPLANATION OF RISK AND FLUCTUATIONS |
|---|---|
| ☒ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | It is difficult to speculate on all circumstances that may exist which may prevent the successful consummation of the proposed plan. However, completion of the Plan depends on the Debtor's continued business operations and the income generated from renting his real estate assets. Furthermore, as previously mentioned, the Debtor has recently retained The Environmental Law Group, LLP's S. Wayne Rosenbaum, Esq., who specializes in environmental law. Based on the communications with the EPA by the Debtor through his agents and counsel, it would appear that the EPA has concluded that the Debtor's real estate Santa Fe Property is not environmentally impaired, but the EPA has yet to finalize its evaluation of any contamination caused by the Santa Fe Property on surrounding residential properties. Therefore, should the EPA and/or the California Department of Toxic Substance Control determine that the Debtor is liable as a generator of pollution on the surrounding properties, the Debtor is unable at this time to quantify the estimated cleanup costs or the duration of cleanup efforts. However, environmental counsel believes that it may be possible to quantify the potential financial exposure in consultation with the EPA.  If the Debtor is unable to pay the cleanup costs himself, it is likely that the EPA or DTSC could use their statutory authority to carry out the remediation and place a lien on the Santa Fe Property to recover their costs of clean up senior in priority to all other liens, which would run with the land. This potential liability does impact the marketability of the Santa Fe Property. Nevertheless, since , the Santa Fe Property does not appear to be environmentally impaired, this potential exposure may not impact the stability of rental income derived from the Santa Fe Property but may increase the likelihood of default under the Chapter 11 Plan depending on the costs of cleanup. |
| ☐ Business/Economic<br>☐ Sale of Property<br>☒ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | The Debtor may make balloon payments to holders of claims secured by his real estate assets as he continues to be engaged in seeking refinancing proposals for the existing debt. |
| ☒ Business/Economic<br>☐ Sale of Property<br>☐ Balloon Payment<br>☐ Int. Rate Adjustment<br>☐ Other | It is difficult to predict how the currently ongoing COVID-19 pandemic may affect the Debtor's income; however, the projections are based on rents being received in the middle of the pandemic while Los Angeles is still in a "WIDESPREAD" status according to the official website from the State of California regarding COVID-19 issues:  https://covid19.ca.gov/safer-economy/. Therefore, the Debtor anticipates that his income is likely to increase in the future, not decrease. |

**F.  TAX CONSEQUENCES OF THE PLAN.**

1.  **To the Debtor:**  Tax consequences to the Debtor are:
The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax liability:  In general, absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness. The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness

satisfied, over (b) the sum of (x) the amount of Cash paid, and (y) the fair market value of any new consideration (including stock of the debtor) given in satisfaction of such indebtedness at the time of the exchange.

A debtor will not, however, be required to include any amount of COD Income in gross income if the debtor is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that proceeding. Instead, as a consequence of such exclusion, a debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income under section 108 of the Internal Revenue Code. In general, tax attributes will be reduced in the following order: (a) NOLs; (b) most tax credits and capital loss carryovers; (c) tax basis in assets; and (d) foreign tax credits. A debtor with COD Income may elect first to reduce the basis of its depreciable assets under section 108(b)(5) of the Internal Revenue Code.

2.  <u>To Claimants</u>:  Claimants should consult their advisors regarding potential tax effects of the Plan; nevertheless:

☐ The Debtor believes tax consequences to claimants are:

☒ The Debtor is not certain of tax consequences, because: Tax consequences may vary from claimant to claimant. Creditors and parties in interest concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.  The Debtor CANNOT and DOES NOT represent that the tax consequences contained above are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.  Additionally, the Debtor is not apprised of all possible claimants' tax situations.

## VI.    ASSETS AND LIABILITIES OF THE ESTATE

**A.  <u>ASSETS</u>**   The identity and fair market value of the estate's assets are listed in **Exhibit C** so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  Any proposed sale of these assets is discussed in Section **V.A.2** above.

**B.  <u>LIABILITIES</u>**   Exhibit **B** shows the allowed claims against the estate, claims whose treatment is explained in detail in Sections VIII below.

**C.  <u>SUMMARY</u>**   The fair market value of all assets equals $44,450,645.53.  Total liabilities equal $35,555,773.15, but the amount of the administrative claims may continue to increase. Note that these amounts may change as additional proofs of claim are filed and professional appraisals are completed. In addition, the amount of liabilities would increase in case the Los Angeles real properties are sold as capital gains of approximately $13,330,030.00 would be incurred.

## VII.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.  In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.  Unsecured claims generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured claims get paid before other unsecured claims do.  Unsecured claims with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A claimant would recover from the assets of the bankruptcy estate less under chapter 7 than under chapter 11 for a number of reasons including: **(1) the liquidation value of Debtor's assets is less than its fair market value because virtually all of the Debtor's assets have not been cleared by the EPA as explained above in Section III.B., which would likely eliminate the potential for sale transactions in the foreseeable near future; (2) in a sale transaction, a chapter 7 trustee would have to pay capital gains taxes to the Internal Revenue Service and the State of California; (3) in a chapter 7 case, a trustee is appointed and is entitled to compensation from the bankruptcy estate as reflected in the chart below; and (4) an individual debtor is permitted to exempt a certain amount of the sales proceeds before unsecured claims are paid anything.**

| CALCULATION OF ESTIMATED PERCENT RECOVERY | CHAPTER 7 | CHAPTER 11 |
|---|---|---|

| | | | |
|---|---|---|---|
| **(a)** | <u>Total value of the Debtor's assets (Estimate)</u>:<br>See Exhibits <u>A</u> and <u>C</u> for a list of all property of the bankruptcy estate, valuations, and valuation methods.  In addition, the value of the Los Angeles real properties should be reduced in case of a sale as capital gains of approximately $13,330,030.00 would be incurred. **A Chapter 7 Trustee may abandon the Debtor's real estate assets due to the aforementioned EPA issues in the foreseeable near future, which would lead to a zero recovery by unsecured claimholders. Note that the Debtor may pursue avoidance actions against Central Metal, Inc. and other parties, if any, and will dedicate net proceeds of such litigation to satisfy claims sooner. However, the potential recovery from Central Metal, Inc. may not exceed the costs of pursuing such litigation and, therefore, may not be pursued.** | $31,120,615.53 | $44,450,645.53 |
| **(b)** | <u>Administrative Expense Claims (Estimate)</u> – Chapter 7 administrative expense claims would include both Chapter 11 claims and Chapter 7 claims: | <$341,875> | <$141,875> |
| **(c)** | <u>Tax Claims (Estimate)</u>: | <$263,982.52> | <$263,982.52> |
| **(d)** | *<u>Secured Claims to be Paid Before General Unsecured Claims</u>*: | <$34,477,378.90> | <$34,477,378.90> |
| **(e)** | <u>Trustee's Fees</u>:  Assuming the chapter 7 trustee disburses the net liquidation value of assets to claimants, § 326 indicates the chapter 7 trustee is entitled to fees of:<br><br>  * 25% on the first $5,000 of all moneys disbursed = $1,250,<br>  * 10% on any amount over $5,000 but less than $50,000 = $4,500,<br>  * 5% on any amount over $50,000 but not in excess of $1 million = $47,500,<br>  * 3% on all amounts over $1 million) = $1,333,519.34,<br><br>**TOTAL TRUSTEE'S FEES =** | <$1,386,769.37> | **N/A** |
| **(f)** | <u>New Value (the Debtor currently plans to pay 100% of its claims with interest at the federal post-judgment interest rate, but reserves the right to accept a new value contribution, if necessary)</u> | **N/A** | $N/A |
| **(g)** | <u>Dollar Amount Available for General Unsecured Claims</u>:  (a) plus (f) minus (b), (c), (d) and (e) = | $0 | $8,576,392.46 |
| **(h)** | <u>Dollar Amount of General Unsecured Claims</u>: = | $1,274,556.02 | $1,274,556.02 |
| **(i)** | **% recovery on general unsecured claims:** [(g) divided by (h)] x 100% **=** | 0% | 100.09% |

## VIII. PLAN PROVISIONS: TREATMENT OF CLAIMS

Below is a summary of who gets paid what and when and from what source.  The Proponent is usually not required by law to pay the holder of an unsecured claim or interest everything it would otherwise be entitled to, had a bankruptcy case not commenced.

### A. ASSUMPTION AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. [§ 365]

1. ☐  There are no executory contracts or unexpired leases.

2. ☒  **Assumption**. The post-confirmation debtor will perform all related obligations whether arising before or after confirmation of the Plan.  Any arrearages arising before confirmation of the Plan will be paid by the first day of the month following the Effective Date unless the parties agree otherwise or the court finds

that a longer payment schedule still provides the creditor with timely cure and adequate assurance of future performance.  Obligations that arise after confirmation of the Plan will be paid as they come due.

☐ **Previously Assumed**:

| | DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | DATE OF ORDER TO ASSUME | CURE AMOUNT: Must be paid on Effective Date |
|---|---|---|---|
| (a) | | | $ |
| (b) | | | $ |

☒ **To be Assumed on the Effective Date**.

| | DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | CURE AMOUNT: Must be paid on Effective Date |
|---|---|---|
| (a) | See List of Leases Attached as part of Exhibit G | $0 |

3.  ☐ <u>**Rejection**</u>. Claims arising from the rejection of an executory contract or unexpired lease are treated as general unsecured claims in CLASS #2, except to the extent the court orders otherwise.  A claim arising from the rejection must be filed no later than 30 days after the date of the order confirming the Plan.

| DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | | |
|---|---|---|
| (a) | None | ☐ Rejected: ☐ Order Entered on:<br>☐ Deemed Rejected on:<br>☐ To be Rejected on the Effective Date |
| (b) | | ☐ Rejected: ☐ Order Entered on:<br>☐ Deemed Rejected on:<br>☐ To be Rejected on the Effective Date |

☒ **See Exhibit <u>G</u>** for additional executory contracts and unexpired leases to be assumed or rejected.

B. <u>**UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(A) and § 1129(a)(9)(C), UNLESS A CLAIMANT CONSENTS TO A DIFFERENT TREATMENT.**</u>  §§ 1129(a)(9)(A) and (C) require that certain claims be treated one at a time, rather than as a class.  Even if another claimant votes to accept a lesser treatment, the claims listed below are not altered.  The debtor must prove to the court that claims are either being treated as 1129(a)(9) requires, or that the claimant agreed to some other treatment.

1.  <u>**Administrative Expense Claims**</u> - § 507(a)(2) and § 1129(a)(9)(A). These include: (1) court-approved claims of attorneys and other professionals; and (2) United States trustee fees under 28 U.S.C. chapter 123.

   ☐   The deadline to file administrative expensive claims is (*date*) _____.

   ☐   There are no administrative expense claims.

   ☒   All administrative expense claims ☐ have been filed and/or ☒ are anticipated to be filed, and the claims and amounts indicated below are the amounts requested or anticipated to be requested:

| Claimant: U.S. Trustee* | | | | | | |
|---|---|---|---|---|---|---|
| Claim Amount (less paid to date) ☐ Actual | Interest Rate (if any) | Amount Paid on Effective | Amount Paid After Effective Date | | | |
| | | | Frequency | Each Payment | Balloon Pymts | Term of Payments |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                    Page 15                    **VZ CH11.DISCLSR.PLAN**

| ☒ Estimated | | Date | | | | |
|---|---|---|---|---|---|---|
| $4,875.00 | N/A | Unknown | ☐ Monthly ☒ Quarterly | Unknown | None | N/A |

* U.S. trustee quarterly fees shall be paid until a final decree is entered or the case is dismissed or converted.  Fees of the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

| **Claimant:** The Orantes Law Firm, P.C. | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ 120,000 | N/A | To Be Negotiated | ☒ Monthly ☐ Quarterly | Debtor and Counsel will negotiate payment terms for fees. | | |

| **Claimant:** Appraiser – Braun International Real Estate | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ 12,000 | N/A | 0 | ☐ Monthly ☐ Quarterly | To be paid as approved by Court or by Debtor's relatives. | | |

| **Claimant:** Environmental Consultant | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ 5,000 | N/A | To Be Negotiated | ☐ Monthly ☐ Quarterly | To be paid as approved by Court or by Debtor's relatives. | | |

2. **Tax Claims -** § 507(a)(8) and § 1129(a)(9)(C). Must be paid in full within 5 years after the Petition Date.

☐ There are no tax claims    ☒ All tax claims have been filed or scheduled, and are indicated below:

| **Claimant:** San Bernardino County Tax Collector | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☒ Actual ☐ Estimated | **Interest Rate** (§511) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ 56,635.33 | 18 % | $1,091.00 | ☒ Monthly ☐ Quarterly | $1,091.00 | N/A | 51 Months after Effective Date |

| **Claimant:** Employment Development Department | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount** (less paid to date) ☐ Actual ☒ Estimated | **Interest Rate** (§511) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ 0 | 5 % | Unknown | ☐ Monthly ☐ Quarterly | For Notice purposes only | | |

☒ **See Exhibit H** for additional unsecured claims (not listed in VII.C) on which voting is not allowed.

☐ **§ 507(a)(2)** – Administrative Expense Claims

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                     Page 16                     **VZ CH11.DISCLSR.PLAN**

☒ **§ 507(a)(8)** – Tax Claims

☐ **§ 507(a)(3)** – Involuntary Gap Claims Allowed Under § 502(f)

**C.** **UNSECURED CLAIMS THAT MUST BE TREATED AS REQUIRED BY § 1129(a)(9)(B) – CLASS #1.**
§ 1129(a)(9)(B) requires certain unsecured claims to be treated with priority over general unsecured claims, and pay them in full on the Effective Date or as soon as practicable after unless claimants vote as a class to accept deferred payments.  If so, claims are impaired and claimants are entitled to vote to accept or reject the Plan.

☒ There are no claims in CLASS #1.

☐ **CLASS #1a**: § 507(a)(1) - Wage and Commission Claims

| Claimant: | | | | | | |
|---|---|---|---|---|---|---|
| **Claim Amount**<br>(less paid to date)<br>☐ Actual<br>☐ Estimated | **Interest Rate**<br>(if any) | **Amount Paid on Effective Date** | **Amount Paid After Effective Date** | | | |
| | | | **Frequency** | **Each Payment** | **Balloon Pymts** | **Term of Payments** |
| $ | % | $ | ☐ Monthly<br>☐ Quarterly | $ | $ | months |

☐ **See Exhibit** for additional unsecured claims (not listed above) in Class #1:

☐ **CLASS #1(a)**: § 507(a)(4) **-** Wage and Commission Claims
☐ **CLASS #1(b)**: § 507(a)(5) – Employee Benefit Plan Contribution Claims
☐ **CLASS #1(c)**: § 507(a)(6) – Grain Producer and Fisherman Claims
☐ **CLASS #1(d)**: § 507(a)(7) – Consumer Deposit Claims

**D.** **OTHER UNSECURED CLAIMS – CLASS #2.**

☐ There are no claims in **CLASS #2**.

☒ See Exhibit B for a list of all **CLASS #2** claimants and amount owed to each.

1. ☒ **CLASS #2a:  Nominal Unsecured Claims.**  These include "nominal" claims of $500 or less, and any larger unsecured claims whose claimant agreed to reduce its claim to this amount.  Claimants are **not entitled to vote** to accept or reject the Plan.

   Claimants will be paid the nominal amount on the Effective Date, or as soon as practicable thereafter.  Estimated total payments are Not known at this time as there are no small claims and claimants may nevertheless elect to receive $500 in conjunction with voting.

2. ☒ **CLASS #2b:  General unsecured claims.**  These are unsecured claims not included in **CLASS #2a**, and will be paid as follows.  Claimants are **entitled to vote** to reject or accept the Plan.

   ☒ Percent Plan.  Each claimant in CLASS #2b will be paid 100.09% of its claim beginning on January 5, 2022:

   a.  Over 30 years in equal ☐ monthly ☒ quarterly installments, due on the first day of each calendar quarter – the Debtor may refinance the loans secured by his properties or sell some or all of them in the future and pay the claims early without additional interest or penalty;

   b.  ☒ with interest at the rate of 0.09 % Federal Post-Judgment Interest Rate per annum, or ☐ without interest; and.

   c.  The amount each claimant receives depends on the total amount of allowed claims in this class.

   ☐ Pot Plan.  Each member of CLASS #2b will be paid a pro rata share of a fund totaling $_____, created by the Debtor's payment:

   a.  Pro rata means the entire fund amount divided by the total of all allowed claims in this class.

b.  Payment amount is $_____ per ☐ month ☐ quarter for a period of _____ months/quarters,

c.  Payments will begin on (*date*): _____

☐ Other: **See Exhibit ____**

**E.  SECURED CLAIMS – CLASS #3, CLASS #4 and Class #5.**

**CLASS #3 - Unimpaired Non-Insider Claims**. Claimants **are not entitled** to vote to accept or reject the Plan.  Until claims are fully paid, claimants retain their interest in the property securing the claim.  Treatment is:

☒ There are no claims in CLASS #3.

| ☐ CLASS #3a | Claimant:<br><br>Basis for secured status:<br><br>Priority of lien: |
|---|---|

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3a: | | |
|---|---|---|
| Value:<br>$ | Valuation Method | ☐ Order on motion or stipulation   ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #3a:

| ☐ CLASS #3b | Claimant:<br><br>Basis for secured status:<br><br>Priority of lien: |
|---|---|

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3b: | | |
|---|---|---|
| Value:<br>$ | Valuation Method | ☐ Order on motion or stipulation   ☐ Declaration: Certified appraiser<br>☐ Other: |

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                      Page 18                                      **VZ CH11.DISCLSR.PLAN**

☐ Additional Comments relating to Class #3b:

| ☐ **CLASS #3c** | **Claimant:** |
| --- | --- |
| | **Basis for secured status:** |
| | **Priority of lien:** |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 3c: | |
| --- | --- |
| **Value:** $ | **Valuation Method** ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser ☐ Other: |

☐ Additional Comments relating to Class #3c:

☐ **See Exhibit** ____ for more unimpaired secured claims. Label as Class #3d, #3e, etc.

**CLASS #4 - Impaired Non-Insider Claims**. Claimants **are entitled** to vote to accept or reject the Plan. Until claims are fully paid, claimants retain their interest in the property securing the claim. Treatment is:

☐ There are no claims in CLASS #4.

| ☒ **CLASS #4a** | **Claimant:** Allen Park |
| --- | --- |
| | **Basis for secured status:** Deeds of Trust |
| | **Priority of lien:** 9th |
| | ☐ Lien is not modified in any way. |
| | ☒ Lien is modified as follows: The interest rate of the Claim has been decreased from 20% to 4.25%, and will be paid over 360 months as set forth below. Claimant will have its claim increased by an amount equal to interest at 4.25% from the Effective Date until payments commence, which is currently estimated to occur on January 5, 2022. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| $144,777.78 | $255,494.20 | 4.25% | Jan. 5, 2022 | $709.71 | Monthly | $8,516.47 | 359 months after effective date |

| Address or Other Description of Collateral Securing Claim 4a: 8201 Santa Fe Ave., Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 |
| --- |

| S. Alameda Street, CA 90058 | | |
|---|---|---|
| **Value:**<br>$42,750,000.00 | **Valuation Method** | ☐ Order on motion or stipulation   ☐ Declaration: Certified appraiser<br>☒ Other: Debtor as Owner. |

☒ Additional Comments relating to Class #4a:

   **Debtor may satisfy the Allowed Secured Amount by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its lien in conjunction with such transaction without further order of this Court.**

   **If Debtor materially defaults post-petition under the terms herein, the holder of the claim in this class shall have the right to pursue its rights under State law after serving a Notice of Default under this Plan and under State law.  Please see Section VIII for definition of Material Default.**

| | ☒ **CLASS #4b** | **Claimant:** Bae Family Trust |
|---|---|---|
| | | **Basis for secured status:** Deeds of Trust |
| | | **Priority of lien:** 12th |
| | | ☐ Lien is not modified in any way. |
| | | ☒ Lien is modified as follows: The interest rate of the Claim has been decreased from 20% to 4.25%, and will be paid over 360 months as set forth below.  Claimant will have its claim increased by an amount equal to interest at 4.25% from the Effective Date until payments commence, which is currently estimated to occur on January 5, 2022. |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $1,517,633.33 | $2,678,218.39 | 4.25% | Jan. 5, 2022 | $7,439.50 | Monthly | $89,273.95 | 359 months after effective date |

| **Address or Other Description of Collateral Securing Claim 4b:** 8201 Santa Fe Ave., Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058 |
|---|

| **Value:** $42,750,000.00 | **Valuation Method** | ☐ Order on motion or stipulation   ☐ Declaration: Certified appraiser  ☒ Other: Debtor as Owner. |
|---|---|---|

☒ Additional Comments relating to Class #4b**:**
    Debtor may satisfy the Allowed Secured Amount by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its lien in conjunction with such transaction without further order of this Court.
    If Debtor materially defaults post-petition under the terms herein, the holder of the claim in this class shall have the right to pursue its rights under State law after serving a Notice of Default under this Plan and under State law.  Please see Section VIII for definition of Material Default.

| | ☒ **CLASS #4c** | **Claimant:** Bank of America, N.A. |
|---|---|---|
| | | **Basis for secured status:** NA |
| | | **Priority of lien:** NA |
| | | ☒ Lien is not modified in any way.  Debtor does not owe any claims to this Creditor. |
| | | ☐ Lien is modified as follows: |

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $0 | $0 | 0% | N/A | $0 | N/A | $0 | N/A |

---

| Address or Other Description of Collateral Securing Claim 4c: NA | | |
|---|---|---|
| Value:<br>$ | Valuation<br>Method | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #4c:

☒ **See Exhibit I** for more impaired secured claims. Label as Class #4d, #4e, etc.

**CLASS #5 - Insider Claims**. These are claims of persons defined in 11 U.S.C. §101(31). Essentially, an insider is a person with a close relationship with the Debtor other than a creditor-debtor relationship. Treatment is:

☒ There are no claims in CLASS #5.

| ☐ **CLASS #5a** | Claimant:<br>**Basis for secured status:**<br>**Priority of lien:**<br>☐ Lien is not modified in any way.<br>☐ Lien is modified as follows: |
|---|---|

| Total Amount of Allowed Claim | Total Amount of Payments Over Time to Satisfy Secured Claim | Interest Rate | First Payment Date | Amount of Each Installment | Frequency of Payments | Total Yearly payments | Final Payment date |
|---|---|---|---|---|---|---|---|
| $ | $ | % | | $ | | $ | |

| Address or Other Description of Collateral Securing Claim 5a: | | |
|---|---|---|
| Value:<br>$ | Valuation<br>Method | ☐ Order on motion or stipulation ☐ Declaration: Certified appraiser<br>☐ Other: |

☐ Additional Comments relating to Class #5a:

☐ **See Exhibit ____** for more insider secured claims. Label as Class #5b, #5c, etc.

F. **SHAREHOLDER OR PARTNER INTERESTS**

☒ Under the Plan, Shareholders simply retain their shares of stock.

☐ Shareholders redeem their shares of stock and receive the following consideration: .

☐ Partner's interest(s) in partnership Debtor:

1. Each partner's interest in the debtor shall remain as it is now. The identity of the general partners are:
   . There ☐ are no limited partners                          .
   
   ☐ are limited partners and their identities are as follows:                          .

2. The interest of ☐ some or ☐ all of the partners changes under the Plan as follows:                          .

☐ The ☐ Articles of Incorporation or ☐ Bylaws have been changed to include a provision prohibiting the issuance of nonvoting equity securities as required by 11 U.S.C. §1123(a)(6).

## IX.  UNCLAIMED OR UNDELIVERABLE PLAN DISTRIBUTIONS. Payments or other distributions made under the Plan that are unclaimed or undeliverable for six (6) months after the attempted distribution will revest in the post-confirmation debtor free of restrictions. Any entitlement to distribution will be barred.

## X.  EFFECT OF CONFIRMATION.

### A.  General Comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any claimant, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate. However, the stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until the date the Debtor receives a discharge, if any. If the Debtor does not seek a discharge, the discharge is deemed denied and the stay as to the Debtor and the Debtor's property terminates on entry of the order confirming the Plan.

### B.  Discharge of Liability for Payment of Debts; Termination of Rights and Interests of Equity Security Holders and General Partners Provided for by the Plan

☒ Debtor will seek an order of discharge pursuant to 11 U.S.C. § 1141(d)(5)(C).

☐ Debtor is not eligible for a discharge pursuant to 11 U.S.C. § 1141(d)(3) because:

   ☐ the Plan provides for the liquidation of all, or substantially all, of the property of the estate.

   ☐ the Debtor will not engage in business after consummation of the Plan.

   ☐ the Debtor would be denied a discharge under 11 U.S.C. § 727(a) if the case were a case under chapter 7.

☐ Debtor is a corporate debtor thus pursuant to 11 U.S.C. §1141(d)(5)-(6), "[t]he confirmation of the plan does not discharge the Debtor from any debt of a kind specified in 11 U.S.C. §523(a)(2)(A)-(B) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of Chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or to defeat such tax or such customs duty."

### C.  Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C. § 1127.

### D.  Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent. The effect of the final decree is to close the bankruptcy case. After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                      Page 23                                      **VZ CH11.DISCLSR.PLAN**

E. **Material Default**

If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default. The Debtors are in Material Default under the Plan if the Debtor fails within 21 days of the service of such notice of default either: (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

## XI. LIST OF EXHIBITS AND DECLARATIONS.

A. **MANDATORY**

**Exhibit A:**    Declaration of **Jong Uk Byun** to support all assertions in this Disclosure Statement, and all information provided in all other Exhibits.

**Exhibit B**:    List of all claims (*next to each claim, indicate whether or not the claim is disputed and scheduled or unscheduled, and include the class number*).

**Exhibit C**:    List of all property of the estate (including cash on hand) and going concern and liquidation valuations of all listed property as of the date of plan confirmation. Include appendices to describe valuation methods such as order entered determining value, declaration of appraiser with approach used, qualifications as expert, etc. For rental property include average monthly cash flow, deducting for debt service and ordinary, necessary operating expenses for the past three months and the past two years. Estimates of collections and likelihood of collections of accounts receivable and lawsuits should also be provided. See Exhibit F for appraisals.

**Exhibit D**:    Projected income, expenses, and plan payments prepared on (*date*) December 21, 2020, to support that the plan is feasible during the plan term, as referred to in section V.C. Details include proposed plan payments to be made on the Effective Date and for each month and/or quarter of the Plan Term. Sources and uses of funds and any expense fluctuations are explained.

**Exhibit E**:    Financial records:

☒    Balance sheets, income and expense statements, cash flow statements for the period including the most recent twelve-month calendar year and all months subsequent thereto. Sources and uses of funds and any expense fluctuations are explained.

☒    Evidence of funds constituting the source of funds on the effective date (i.e., *MOR Summary*)

B. **OPTIONAL**

☒ **Exhibit F**:    Declarations:    ☒ Certified Appraisers
☐ Contributor of New Value (regarding ability to provide funding)
☒ Other: Declarations of Accountant regarding Capital Gains Taxes and Declaration regarding interest rate

☒ **Exhibit G**:    Other Exhibits:  List of Leases with lease amounts and explanation of anticipated changes and Copy Site Inspection Interim Sampling Report regarding that property commonly known as 8201 Santa Fe Avenue, Huntington Park, Los Angeles County, California (full copy of this interim report may be omitted if Court permits it and a copy be available from the docket of the case or upon request from Debtor's counsel).

C. **ADDITIONAL CLAIMS THAT ARE UNABLE TO BE IDENTIFIED IN SECTIONS VIII.A – VIII.F.**

☒ **Exhibit H**: Additional Claim(s), Sec. ☐ VIII.A    ☒ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F
☒ **Exhibit I**: Additional Claim(s), Sec.    ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☒ VIII.E    ☐ VIII.F
☐ **Exhibit J**: Additional Claim(s), Sec.    ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F
☐ **Exhibit K**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                   Page 24                                   **VZ CH11.DISCLSR.PLAN**

☐ **Exhibit L**: Additional Claim(s), Sec. ☐ VIII.A    ☐ VIII.B    ☐ VIII.C    ☐ VIII.D    ☐ VIII.E    ☐ VIII.F

Date: <u>2/02/21</u>                                        /s/ Giovanni Orantes
                                                           _____
                                                           Signature of attorney for proponent


                                                           Giovanni Orantes
                                                           _____
                                                           Printed name of attorney for proponent

This form has been approved for use in chapter 11 cases assigned to Judge Vincent P. Zurzolo.

*February 2019*                                    Page 25                                    **VZ CH11.DISCLSR.PLAN**

Exhibit "B"

All Claims (Proposed Effective Date of Jong Uk Byun | 2:20-bk-17433-VZ

| Name | Class # | Acct # | Claim # | Scheduled Claim Amount | C/U /D | Filed Claim Amount | Value of Collateral | Allowed Claim Amount* | Objection/Comment to Filed Proofs of Claims | Monthly Payment | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ADMINISTRATIVE EXPENSES | | | | | | | | $0.00 | Time Share | $0.00 | 0 |
| Chin Lee Law Firm | | | | | | | | | To be determined during bankruptcy case | $0.00 | $0.00 |
| Office of the United States Trustee | | | | | | | | | Usually paid in full in ordinary course of business | $0.00 | $0.00 |
| TOTAL | | | | | | | | | | $0.00 | |
| Schedule D - Secured Claims | | | | | | | | | | | |
| Adv. Fin./Grand Pacific | | 560SH | | unknown | | | | | | | |
| Allen Park | 4a | | 17 | $100,000.00 | C/U/D | $144,777.78 | $43,150,000.00 | $144,777.78 | 8201 Santa Fe Ave, Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058. Debtor will object to claim. | $709.71 | $255,494.20 |
| State Family Trust | 4b | | 15 | $940,000.00 | U/D | $1,517,633.33 | $43,150,000.00 | $1,517,633.33 | 8201 Santa Fe Ave, Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058. Debtor will object to claim. | $7,439.50 | $2,678,218.39 |
| Bank of America | 4c | 1392 | | $0.00 | C/U | $0.00 | $0.00 | $0.00 | Only UCC-1 for judgment filed with Secretary of State, not in County records. | $0.00 | $0.00 |
| BMW West, Inc. | 4d | 919 | | $0.00 | C/U | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| Complete Business Solutions Group | 4e | | | $346,534.96 | | $0.00 | $346,534.96 | $346,534.96 | 8201 Santa Fe Ave, Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, Ca 90058 | $1,698.73 | $611,541.86 |
| | | | | | | $597,773.38 | $43,150,000.00 | $1,166,173.85 | 8201 Santa Fe Ave, Huntington Park, CA 90255; 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058 - Debtor objected to the status as secured on personal property of the Debtor and to the attorney's fees and costs. The Court denied the motion but may disallow $2,010,439.61 in attorney's fees and costs after 2/23/21. Debtor will pay entire amount of allowed claim, but may continue contesting it via either adversary proceeding or motion and request that an order amend the amount the Plan pays the claimant if successful. | $17,315.50 | $6,235,581.07 |
| Hyundai Steel Company | 4f | | 18 | $17,500,000.00 | C/U/D | | $43,150,000.00 | $26,293,842.34 | 8201 Santa Fe Ave, Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058; 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058 | $128,893.40 | $46,401,624.69 |
| Da Chan Chong | 4g | | 18 | $48,114.20 | U | $97,773.38 | $0.00 | $97,773.38 | 1736 East 24th Street, Los Angeles, CA 90255; APN 5167-015-067; 2203 S. Alameda Street, Los Angeles, CA 90058 3 parcels; APN's 5167-015-063, 5167-015-064 and 5167-015-065 - the Debtor may pay this claim early to avoid incurring more interest. Debtor may object to claim. | $479.29 | $172,543.96 |
| M&A Equities, LLC | 4i | | 14 | $0.00 | D | $646,612.10 | $43,150,000.00 | $0.00 | Debtor's objection to this claim was sustained. | $0.00 | $0.00 |
| Los Angeles County Tax Collector | 4j | | 2 | $0.00 | | $1,235,887.32 | $0.00 | $0.00 | Proof of claim was withdrawn after claim was moved for disallowance. | $0.00 | $0.00 |
| Los Angeles County Tax Collector | 4k | | 1 | $0.00 | | $1,373,521.04 | $0.00 | $0.00 | | $0.00 | $0.00 |
| Mohamed Sarfaz | 4k | | 16 | $0.00 | | $465,488.43 | $465,488.43 | $465,488.43 | Amount, if any, still owed is unclear. Collateral was only 8201 Santa Fe Ave, Huntington Park, CA 90255 | $2,281.84 | $821,463.03 |
| Packo Investments | 4l | | 13 | $1,450,000.00 | | $2,712,136.53 | $27,750,000.00 | $2,712,136.53 | Amount, if any, still owed is unclear. Collateral was only 8201 Santa Fe Ave, Huntington Park, CA 90255 | $13,295.00 | $4,786,198.22 |
| Select Portfolio Servicing, Inc | 4m | 3116 | | $0.00 | | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| Seo Yeong Kim | 4n | 1916 | | $0.00 | U | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| Southern Counties Oil Co. | 4o | | 4 | $0.00 | U | $14,213.24 | | $14,213.24 | Judgment for Goods Sold - 8201 Santa Fe Ave, Huntington Park, CA 90255, 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. Alameda Street, CA 90058 | $69.67 | $25,082.58 |

| Name | Class | Acct # | Claim # | Scheduled Claim Amount | C/U /D | Filed Claim Amount | Value of Collateral | Allowed Claim Amount* | Objection/Comment to Filed Proofs of Claims | Monthly Payment | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | | | | $21,643,594.66 | | $9,166,707.92 | | $34,017,238.61 | | | |
| **Schedule E - Unsecured Priority Claims** | | | | | | | | | | | |
| Toni Ko | 4p | 7471 | 12 | $943,313.50 | U | $943,313.50 | $43,150,000.00 | $943,313.50 | 8201 Santa Fe Ave, Huntington Park, CA 90255, 1736 East 24th Street, Los Angeles, CA 90058, 2203 S. Alameda Street, Los Angeles Ca 90058; 2445 S. | $4,624.16 | $1,664,696.94 |
| Employment Development Department | 4q | 6339 | | $0.00 | | $0.00 | | $0.00 | Secured credit card | $0.00 | $0.00 |
| Franchise Tax Board | 4r | 6821 | 3 | $15,682.00 | | $15,951.27 | | $15,351.27 | 2017 Honda Ridgeline | $295.31 | $17,718.79 |
| Internal Revenue Service | | | 7 | $0.00 | | $0.00 | | $0.00 | Paid over 51 months | $0.00 | $0.00 |
| Wilshire State Bank/Bank of Hope | 4s | 1067 | | $300,000.00 | | $300,000.00 | $400,000.00 | $300,000.00 | 24399 Old Highway 58 Hinkley, CA 92347 | $1,470.61 | $529,420.05 |
| Yeon Shim Song | 4t | | | $0.00 | U/D | | | $0.00 | If, and only if, a party files an objection that affects the amounts the Debtor must pay out to which creditor under Bankruptcy Law, the Debtor's plan may propose for this monthly payment amount to be lower for a number of months while the Debtor's rental income from 8201 Santa Fe increases by about $67,740.42 approximately after August 2021, as anticipated. The present value of the payout will remain the same and the amount will be certain and contained in an amended combined plan and disclosure statement and/or order confirming a Chapter 11 plan. | $0.00 | $0.00 |
| TOTAL | | | | | | | | $34,017,238.61 | | | |

| Name | Class | Acct # | Claim # | Scheduled Claim Amount | C/U /D | Filed Claim Amount | Value of Collateral | Allowed Claim Amount* | Objection/Comment to Filed Proofs of Claims | Monthly Payment | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Los Angeles County Tax Collector | 4h | 1 | | unknown | S | $1,373,521.04 | | $207,347.19 | Priority portion (507(a)(8)(B)) paid over 54 months; 1736 East 24th Street, Los Angeles, CA 90058, APN 5167-015-067; 2203 S. Alameda Street, Los Angeles, CA 90058; 3 parcels: APN's 5167-015-063, 5167-015-064 and 5167-015-065; the Debtor may pay this claim early to avoid incurring more interest. Debtor may object to this claim. | $5,739.69 | $2,073,489.87 |
| San Bernardino County Tax Collector | | | | unknown | S | $56,635.33 | | $56,635.33 | Paid over 51 months - 24399 Old Highway 58 Hinkley, CA 92347 | $3,152.62 | $62,241.37 |
| State Board of Equalization | | | | $0.00 | | $0.00 | | $0.00 | For Notice Purpose Only | $0.00 | $0.00 |
| U.S. Small Business Administration | | | | $0.00 | | $0.00 | | $0.00 | For Notice Purpose Only | $0.00 | $0.00 |
| TOTAL | | | | $0.00 | | $0.00 | | $263,982.52 | | $6,912.31 | $2,135,731.24 |
| **Schedule F - General Unsecured Nonpriority Claims** | | | | $0.00 | | $0.00 | | | Payments commence on January 5, 2022 | Payable 5 years from 8/14/20 | |
| | | | | | | | | | | Paid over 360 months with Federal Post-Judgment Interest | |
| American Express | 28 | 95544 | | | | $0.00 | | $0.00 | If, and only if, a party files an objection that affects the amounts the Debtor must pay out to which creditor under Bankruptcy Law, the Debtor's plan may propose for this monthly payment amount to be lower for a number of months while the Debtor's rental income from 8201 Santa Fe increases by about $67,740.42 approximately after August 2021, as anticipated. The present value of the payout will remain the same and the amount will be certain and contained in an amended combined plan and disclosure statement and/or order confirming a Chapter 11 plan. | $0.00 | $0.00 |
| Bank of America | 28 | 95544 | | | | $0.00 | | $0.00 | | $0.00 | $0.00 |
| Bank of Hope | 28 | 1067 | 11 | $300,000.00 | | $460,140.29 | $0.00 | $460,140.29 | Secured by Personal Property only with recordation with Cal Secy of State 24399 Old Highway 58 Hinkley, CA 92347 - Governed by CCP Section 697.530, but Debtor has no personal property subject to enforcement. Debtor objected to secured status and claimant agreed by stipulation, Docket No.157. | $1,412.04 | $508,335.03 |
| Bejac | 28 | 955 | | unknown | | unknown | | unknown | Secured by Personal Property only with recordation with Cal Secy of State Old Highway 58 Hinkley, CA 92347 - Governed by CCP Section 697.530, but Debtor has no personal property subject to enforcement. Debtor objected to secured status and claimant agreed by stipulation, Docket No.157. | $0.00 | $0.00 |
| BMW Bank of North America | 28 | | | unknown | | unknown | | unknown | | $0.00 | $0.00 |
| Bok Sook Byun | 28 | | | unknown | | unknown | | unknown | | $0.00 | $0.00 |
| California Dept. of Tax and Fee Administration | 28 | | | unknown | | unknown | | unknown | | $0.00 | $0.00 |
| Capital One | 28 | 308 | | unknown | | $0.00 | | $0.00 | | $0.00 | $0.00 |

| Name | Class | Acct # | Claim # | Scheduled Claim Amount | C/U/D | Filed Claim Amount | Value of Collateral | Allowed Claim Amount* | Objection/Comment to Filed Proofs of Claims | Monthly Payment | Total Payment |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital One | 28 | 5259 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 28 | 1250 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 28 | 4786 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Capital One | 28 | 7794 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Capital One/Saks F | 28 | 4862 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Cemex Construction Materials | 28 | | | $0.00 | | | unknown | $0.00 | | $0.00 | $0.00 |
| City of Los Angeles | 28 | | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Coleman & Horowitt, LLP | 28 | 5895 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| CP Construction | 28 | | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Creditors adjustment | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Daniel Park | 28 | | | unknown | | | | unknown | | $19.84 | $7,142.14 |
| Deutsche Bank National Trust Co. | 28 | 3895 | | $221,246.63 | | | | $221,246.63 | | $678.94 | $244,419.83 |
| DL Assets Bravo, LLC/DL Global, Ltd | 28 | 6185 | 10 | $160,025.74 | | $229,612.92 | | $229,612.92 | | $704.62 | $253,662.40 |
| DTSC- Site Clean Up Program | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Eisner Jaffe | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| First Premier Bank | 28 | 5207 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| First Progress | 28 | 6301 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| First Savings Bank/Blaze | 28 | 810 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Genesis FS Card Services/Quantum3Group LLC | 28 | 6465 | 8 | $0.00 | | $6,465.00 | | $6,465.00 | | $19.84 | $7,142.14 |
| Jose-Man | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Jonah Oh | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Loan Park | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Magurdin DeWard | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Municipal Services Bureau | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Nowen Loan Servicing | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Car Funding | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Pyma Financial | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| Resnik, Hayes, Moradi, LLP | 28 | 1067 | 9 | $85,000.00 | | $74,859.50 | | $74,859.50 | The Debtor's plan proposes to pay over 360 months. However, if and only if, a party files an objection that affects the amounts the Debtor must pay out to which creditor under Bankruptcy Law, the Debtor's plan may propose for this monthly payment amount to be lower for a number of months while the Debtor's rental income from 8201 Santa Fe increases by about $67,740.42 approximately after August 2021, as anticipated. The present value of the payout will remain the same and the amount will be certain and contained in an amended combined plan and disclosure statement and/or order confirming a Chapter 11 plan. | $229.72 | $82,700.23 |
| Sequoia Financial Services | 28 | | | $596.25 | | | | $596.25 | | $1.83 | $658.70 |
| Small Business Administration | 28 | 1418 | 14 | $0.00 | | | | $96,904.91 | | $297.37 | $17,842.44 |
| State Compensation Insurance Fund | 28 | | 6 | $0.00 | | $184,726.52 | | $184,726.52 | | $566.87 | $204,074.63 |
| Stephen M. Cook | 28 | 9116 | | unknown | | | | unknown | | $0.00 | $0.00 |
| Synchrony Bank/Amazon | 28 | 3356 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Synchrony Bank/Chevron | 28 | 6465 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| The Bank of Missouri/Milestone | 28 | 8969 | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| US Bank/RMS CC | 28 | | | $0.00 | | | | $0.00 | | $0.00 | $0.00 |
| Zamucen & Curren, LLP | 28 | | | unknown | | | | unknown | | $0.00 | $0.00 |
| TOTAL | | | | $766,868.62 | | $955,804.23 | | $1,274,552.02 | 0 | $3,911.24 | $1,318,835.41 |
| Leases | | | | | | | | | | | |
| Name | | | | | | | | | | | |
| GRAND TOTAL | | | | $0.00 | | $0.00 | | $0.00 | | $189,396.26 | $1,318,835.41 |

# EXHIBIT B

## Select a Case

**There were 5 matching persons.**

**There were 8 matching cases.**

| Name | Case No. | Case Title | Chapter / Lead BK case | Date Filed | Party Role | Date Closed |
|------|----------|------------|------------------------|-----------|-----------|-------------|
| Byun, Jong Hoon (pty) (1 case) | 8:14-bk-16850-TA | Jong Hoon Byun | 7 | 11/20/14 | Debtor | 03/10/15 |
| Byun, Jong Suk (pty) (1 case) | 2:09-bk-40876-BR | Jong Suk Byun and Susie Sungsook Byun | 7 | 11/05/09 | Debtor | 06/16/10 |
| Byun, Jong Uk (pty) (4 cases) | 2:10-bk-10642-VZ | Central Metal, Inc. | 11 | 01/08/10 | Interested Party | 07/12/11 |
| | 2:10-bk-11241-VZ | Jong Uk Byun and Bok Soon Byun | 11 | 01/12/10 | Debtor | 01/25/13 |
| | 2:20-bk-17433-VZ | Jong Uk Byun | 11 | 08/14/20 | Debtor | N / A |
| | 8:17-bk-14535-ES | Prime Metals U.S.A., Inc. | 7 | 11/17/17 | Creditor | N / A |
| Byun, Jong Uk (pty) (1 case) | 8:17-ap-01244-ES | Hyundai Steel Co. v. Central Metal, Inc. et al | *Lead BK:* 8:17-bk-14535-ES Prime Metals U.S.A., Inc. | 12/14/17 | Cross-Claimant | 03/16/18 |
| Byun, Jong Uk (pty) (1 case) | 2:18-bk-19004-VZ | Jong Uk Byun | 11 | 08/03/18 | Debtor | 02/04/20 |

| PACER Service Center | | |
|------|------|------|
| **Transaction Receipt** | | |
| 04/14/2021 15:10:20 | | |
| **PACER Login:** | mikah_yi1:3630541:0 | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | LName: Byun FName: Jong |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |