David W. Meadows (CA Bar No. 137052)
**LAW OFFICES OF DAVID W. MEADOWS**
1801 Century Park East, Suite 1201
Los Angeles, California  90067
Telephone: 310-557-8490
david@davidwmeadowslaw.com

Counsel to Secured Creditors Packo Investments, Inc., Allen
Park, Mohamed Sanfaz, and The BAE Family Trust

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case Number 2:20-bk-17433-VZ |
| JONG UK BYUN, | Chapter 11 |
| Debtor and Debtor in Possession | OPPOSITION OF CERTAIN SECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER (1) APPROVING THE SALE OF THE REAL PROPERTY COMMONLY KNOWN AS 8201 SANTA FE AVENUE, HUNTINGTON PARK, CA 90255, SUBJECT TO OVERBIDDING PROCEDURES PURSUANT TO 11 U.S.C. § 363; (2) AUTHORIZING THAT SUCH SALE BE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES OF ANY NATURE WHATSOEVER PURSUANT TO 11 U.S.C. § 363; (3) EXTINGUISHING EXISTING LEASE; (4) REJECTING ALL OTHER EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (5) AUTHORIZING PAYMENT DIRECTLY OUT OF ESCROW OF THE CLAIM OF HYUNDAI STEEL COMPANY, ESCROW COSTS, BROKERS' FEE AND LIENS SENIOR TO THE LIENS OF HYUNDAI STEEL COMPANY; (6) FINDING THAT BUYER IS A GOOD FAITH BUYER ENTITLED TO THE PROTECTIONS OF SECTION 363(M) OF THE BANKRUPTCY CODE; (7) WAIVING THE FOURTEEN-DAY STAY PROVISION OF |

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

BANKRUPTCY RULE 6004; (8) APPROVING COMPROMISE OF CONTROVERSY WITH HYUNDAI STEEL COMPANY AND AUTHORIZING GENERAL MUTUAL RELEASES; AND, (9) GRANTING OTHER RELIEF IT DEEMS JUST AND APPROPRIATE **[Doc. 379]**; DECLARATION OF DAVID W. MEADOWS

Date:  December 9, 2021
Time:  11:00 a.m.
Place:  Courtroom 1368
          255 E. Temple Street
          Los Angeles, CA 90012

TO THE HONORABLE VINCENT P. ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTOR AND DEBTOR IN POSSESSION, AND PARTIES IN INTEREST:

Secured creditors Packo Investments, Inc. ("Packo"), Allen Park, Mohamad Sanfaz, and The BAE Family Trust (collectively "Secured Creditors") submit the following opposition to "Debtor's Motion For Order (1) Approving The Sale Of The Real Property Commonly Known As 8201 Santa Fe Avenue, Huntington Park, Ca 90255, Subject To Overbidding Procedures Pursuant To 11 U.S.C. § 363; (2) Authorizing That Such Sale Be Free And Clear Of Liens, Claims, Interests, And Encumbrances Of Any Nature Whatsoever Pursuant To 11 U.S.C. § 363; (3) Extinguishing Existing Lease; (4) Rejecting All Other Executory Contracts And Unexpired Leases; (5) Authorizing Payment Directly Out Of Escrow Of The Claim Of Hyundai Steel Company, Escrow Costs, Brokers' Fee And Liens Senior To The Liens Of Hyundai Steel Company; (6) Finding That Buyer Is A Good Faith Buyer Entitled To The Protections Of Section 363(m) Of The Bankruptcy Code; (7) Waiving The Fourteen-Day Stay Provision Of Bankruptcy Rule 6004; (8) Approving Compromise Of Controversy With Hyundai Steel Company And Authorizing General Mutual Releases; And, (9) Granting Other Relief It Deems Just And

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

Appropriate" (the "Motion") filed by the above-referenced debtor and debtor in possession (the "Debtor").

## I.

## INTRODUCTION AND SUMMARY OF POSITION

The Secured Creditors prefer foreclosure by Hyundai.   They do not consent to the sale proposed by the Motion.

## II.

## MEMORANDUM OF POINTS AND AUTHORITIES

A.    **The Claims of the Secured Creditors:**

The Motion identifies the claims of the various creditors having claims secured by the Property[1], but they are not set out in the correct sequence of priority.   The correct sequence is as follows:

| Priority: | Name | Claim Amount: |
|---|---|---|
| 1st | Los Angeles County Tax | $ 1,373,521.04 |
| 2nd | Hyundai | $ 27,459,107.61 |
| 3rd | Tony Ko | $ 943,313.50 |
| 4th | **Packo Investments** | $ 2,712,136.53 |
| 5th | Southern Countries Oil | $ 14,213.24 |
| 6th | Kap Chan Chong | $ 97,773.38 |
| 7th | **Allen Park** | $ 144,777.78 |
| 8th | **Mohamad Sanfaz** | $ 65,488.43 |
| 9th | **Bae Family Trust** | $ 1,517,633.33 |
|  |  | $ 34,727,964.84 |

The claims of the Secured Creditors objecting to the Motion are shown in **bold**.

---

[1]    Defined terms are as defined by the Debtor in the Sale Motion.

**B.**    **Section 363(f)(5) Does Not Authorize the Proposed Sale over the Objection of the Secured Creditors.**

The Motion relies on Bankruptcy Code Section 363(f)(5) as a basis to authorize the Sale over the objection of the Secured Creditors.    Section 363(f) authorizes a sale of property "free and clear of any interest in such property of an entity other than the estate, only if . . . (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."    The two most relevant cases that address this section of the Bankruptcy Code are In re PW, LLC, 391 B.R. 25, 41 B.A.P. 9th Cir. 2008 (known as the "Clear Channel" opinion); and the opinion of the District Court for the Central District of California in, In re Hassen Imps. P'ship (In re Hassen Imports Pasrtnership), 502 B.R. 851 (D. C.D. Cal. 2013) ("Hassen").

The Hassen district court decision was published after the Clear Channel decision and discusses specifically Clear Channel's analysis of Section 363(f)(5) at considerable length.    The Debtor's Motion neither discusses nor cites Hassen.    The Hassen decision actually is the more productive of the two cases to review.    It is much more thorough in its analysis of Section 363(f)(5) than the Clear Channel decision and it discusses the Clear Channel decision and holding[2].

In Hassen, the district court reversed a bankruptcy court sale order which had authorized a sale of real property free and clear of certain (complicated) covenants and contractual interests held by the

---

[2]    The Secured Creditors do not argue in this Opposition an issue of whether either the BAP decision in Clear Channel or the District Court for the Central District of California decision in Hassen is binding on the bankruptcy court.    Discussion of these issues may be found in In re Gaylor, 123 B.R. 236 (Bankr. E.D. Mich. 1991) and Life Ins. Co. v. Barakat (In re Barakat), 173 B.R. 672 (Bankr. C.D. Cal. 1994).    The Secured Creditors believe both Clear Channel and Hassen are persuasive on the basis of the analysis set forth in their decisions and as discussed in this Opposition, and note the footnote in Hassen, "Although it must be conceded that BAP decisions cannot bind the district courts themselves, the Court 'treat[s] the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit.'"    Hassen, 502 B.R. at 858, fn. 3

Law Offices of David W. Meadows
Los Angeles, California

City of West Covina (the "<u>City</u>") relating to the property that was the subject of the sale.  The sale order

was approved at the bankruptcy court on the theory that the objecting lien holder could be compelled to

have its lien or interest extinguished at a foreclosure.    The essence of the District Court's opinion in

<u>Hassen</u> is, being wiped out by a foreclosure is a far cry from "money satisfaction," the words of Section

363(f)(5).    The City argued that a foreclosure would not give the City anything of value.  It would not

"compel[] the City "to accept a money satisfaction of" the Operating Covenant, and thus does not

qualify under §363(f)(5)."    <u>In re Hassen</u>, 502 B.R. at 860.  "The Court agrees."    <u>Id.</u>

The <u>Hassen</u> court discussed at length about how the statute's phrase, "satisfaction of [an]

interest" had to be understood.    It "connotes giving something of value in exchange for terminating an

outstanding obligation.    <u>Black's Law Dictionary</u>, for example, defines satisfaction as the "giving of

something with the intention, express or implied, that it is to extinguish existing legal or moral

obligation." <u>Black's Law Dictionary</u> 1560 (9th ed. 2009)."    <u>Id.</u>  The <u>Hassen</u> court discussed other

provisions of the Bankruptcy Code where "satisfaction" refers to giving something of value in exchange

for extinguishing an obligation, citing for example Section 550(d), limiting a trustee to "only a single

satisfaction under subsection (a) of this section."    Conversely, the Code does not use the word

"satisfaction" when referring to the straightforward termination of an interest, as in Section 363(f)(1),

where "applicable nonbankruptcy law permits sale free and clear of an interest where "applicable

nonbankruptcy law permits sale of such property free and clear of such interest."    That is not the way

subsection (f)(5) was written; if it had been, then subsection (f)(5) would be redundant of subsection

(f)(1).  <u>Id.</u>[3]

---

[3]    There is a difference between the <u>Hassen</u> and the <u>Clear Channel</u> analysis of subsection (f)(5)
with respect to interpreting (f)(5) in a manner that does not overlap or interfere with other subsections of
(f).  <u>Hassen</u> addressed an overlap with subsection (f)(1), whereas <u>Clear Channel</u> focused more on the
relationship between (f)(5) and (f)(3).  *See*, e.g., <u>Clear Channel</u> at 42 (if full payment were required, §
363(f)(5) would merely mirror § 363(f)(3) and render it superfluous).

Section 363(f)(5) modifies "satisfaction" with the word "money."    The <u>Hassen</u> court reasoned that taking the words together, the phrase "money satisfaction" refers to the giving of money with the intention that it extinguish an existing obligation, meaning the holder of the lien could be compelled to accept a payment.    Under the facts of the <u>Hassen</u> case, in the event of foreclosure by a senior lien, the City would not receive money in exchange for extinguishing its lien.    Instead, the foreclosure sale "wipes out" all interests that [are] junior in priority, citing Miller & Starr, 5 <u>Cal . Real Est</u>. § 111:100 (3d ed.).    "As such, the foreclosure would not compel the City to accept a "money satisfaction" of the Operating Covenant, and thus does not constitute a "legal or equitable proceeding" pursuant to § 363(f)(5)."    <u>Id</u>., 861.    Applying the principles to the Secured Creditors, referencing the table set forth above[4], only one of the Secured Creditors, Packo Investments, would hypothetically receive anything. All remaining secured creditors junior to Packo would receive nothing, including Allen Park. Mr. Mohamad Sanfaz and the Bae Family Trust.    Receiving nothing would not be receiving a "money satisfaction."

In addition to addressing the <u>Clear Channel</u> decision, the district court in <u>Hassen</u> (again, not cited or discussed by the Debtor in its Motion), cited and discussed, distinguished and disagreed with <u>In re Jolan, Inc.</u>, 403 B.R. 866 (Bankr. W.D. Wash. 2009) ("<u>Jolan</u>").    The <u>Jolan</u> opinion is the principal authority cited by the Debtor in its Motion.    (*See*, Motion 379, page 29 of 189 at line 9).    In <u>Jolan</u>, a bankruptcy court decision in the western district of Washington, the bankruptcy court held that <u>Clear Channel</u> did not preclude approval of a sale under Section 363(f)(5) where the sale would be free and

---

[4]    The dollar amounts shown are based on allowed amounts as of the Petition Date.    Under a proposed sale price of $31 million, the first three creditors would be entitled to post-petition interest being over-secured.    This would diminish the amount of each junior creditor's claim.    Possibly, there would be zero payable to Packo Investments after accrued interest on the Hyundai and Toni Ko secured claims.

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

Law Offices of David W. Meadows
Los Angeles, California

clear of liens of objecting parties whose secured claims were not being paid in full.   With all due respect

to the bankruptcy court in Jolan, it missed the point as made by the Hassen court.

The Jolan approach is simply to ask if there is a proceeding outside of the bankruptcy court

where junior liens can be wiped out.   There are easy examples: 1)   under Article 9 of the California

Commercial Code, such as the sale of inventory; 2) under real property foreclosure law, as cited above

by Miller & Starr, or by a receiver pursuant to California receivership provisions.   Wiped out by

foreclosure is hardly the same as being forced to accept a "monetary satisfaction."   One of the Secured

Creditors, Packo, might possibly receive something from the proposed Sale.   None of the objecting

Secured Creditors junior to Packo will receive anything.   If Section 363(f)(5) only requires that a legal

or equitable proceeding can wipe out someone's lien – in exchange for nothing – then subsection (f)(5)

is pointless; it will always be satisfied.   In what is a reconciliation of the Jolan court's reasoning by the

Hassen court, Hassen states that Jolan turns on the notion that junior lien holders would have their liens

attach to proceeds in satisfaction of their claim – actually receiving money.     In the Hassen case, the

City would receive nothing – it would only have the satisfaction of having its interest in property wiped

out, in exchange for nothing.   This is not a legal or equitable proceeding where the interest holder will

be compelled to accept a money satisfaction, as required by subsection (f)(5).   See In re Jolan, 403

B.R. at 869; and Hassen, 502 B.R. at 862.

The remaining authorities cited in the Sale Motion are In re Taco Del Mar Franchising Corp.,

2010 Bankr. LEXIS 4794; 2010 WL 5239225 ("Taco Del Mar") and In re DVS Shoe Co., Inc ("DVS).

The entirety of the Taco Del Mar case is simply an order approving a sale.   The order is in the form

used by some practitioners and permitted by some courts where the order sets forth detailed findings of

fact and conclusions of law.   Paragraph "P" is text stating that the "Debtors may sell the Acquired

Assets free and clear . . . [s]pecifically, subsection 363(f)(5) . . . because Washington law authorizes a

general receiver to sell property free and clear of liens 'whether or not the sale will generate proceeds

sufficient to fully satisfy all claims secured by the property." <u>Taco Del Mar</u>, 2010 Bankr. LEXIS at pg. 3

of 82).  The sale order contains no analysis at all.  The mere recitation of subsection (f)(5) is rejected by

<u>Hassen</u> and <u>Clear Channel</u> in that it ignores the "money satisfaction" requirement.    Since the statement

in the <u>Taco Del Mar</u> case is made merely in the context of a sale order, nothing in the opinion (sale

order) explains anything about how being wiped out at foreclosure satisfies the requirement that the

creditor being could be compelled in a legal or equitable proceeding to "accept a monetary satisfaction."

The final authority cited in the Sale Motion, the <u>DVS</u> case, appears to be no support at all for the

Debtor.  In fact, it appears to have been cited possibly by oversight or some inadvertence.    Like the

<u>Taco Del Mar</u> case, the DVS citation is to a sale order.  It was entered by the bankruptcy court in a

Central District of California bankruptcy case, <u>In e DVS Shoe Co., Inc.</u>, Case Number 8:12-bk-16209-

CB, at Docket Number 249.    Oddly, the language quoted in the Motion as being supportive of the

proposed Sale under Section 363(f)(5) <u>was stricken</u> by Judge Catherine Bauer (Ret.) in the final order.[5]

A true and correct copy of the document the Secured Creditors *believe* to be the document being cited by

the Debtor is attached to the Meadows Declaration, at **Exhibit 1.**    (Please see the Declaration.)

Unless the correct persuasive analysis is to equate subsection (f)(5) with subsection (f)(1)

("applicable nonbankruptcy law permits sale of such property free and clear of such interest") or (f)(3)

(such interest is a lien and the price at which such property is to be sold is greater than the aggregate

value of all liens on such property"), the "accept a monetary satisfaction" of such interest in subsection

---

[5]    A true and correct copy of the DVS Sale Order, believed to be the document cited by the Debtor
in its Sale Motion, is attached as **Exhibit 1** to the Declaration of David W. Meadows (the "<u>Meadows
Decl.</u>").    The text cited by the Debtor appears at the top of Page 6 of 19, in red, strike-through font.

(f)(5) has to mean something other than what is required under subsection (f)(1) or (f)(3).   The <u>Hassen</u>

court held that it means what it says – a legal or equitable proceeding that would compel the creditor to

accept a money satisfaction.   *See also* <u>In re Hamilton Rd. Realty, LLC</u>, 2021 Bankr. LEXIS 1114

(Bankr. E.D. N.Y. 2021) at page 8 of 10) (citing and following <u>Hassen</u>).    The words of the subsection

do not mean, "just being wiped out," as if the words "money satisfaction" have no meaning at all.    This

means that in the absence of consent of each of the objecting Secured Creditors, the Sale Motion cannot

be granted under Section 363(f)(5), as sought by the Sale Motion.

## C.   <u>The Proposed Sale Will Create an Administrative Priority Capital Gain Tax Liability with No Source of Payment.</u>

The Sale Motion suggests that some of the proceeds might at a later date be used (despite the

secured creditor claims) to pay some of the capital gain tax liability[6].   (*See* Motion at pg. 13 of 189,

lines 13 – 14).    The only way known to the Secured Creditors for the bankruptcy estate to avoid the

administrative priority liability of the capital gain tax, whether at the level of chapter 11 or chapter 7, is

for the Debtor or a chapter 7 trustee to formally abandon the property prior to a foreclosure. [7]   In that

---

[6]      The amount of the capital gain liability is unknown.    At various times during the Debtor's cases
when sales have been proposed, the Secured Creditors believed the capital gain liability would be in the
millions.  The Debtor has represented it to be "substantial."   *See* the Debtor's Second Amended
Disclosure Statement and Plan of Reorganization filed on April 4, 2021, Document Number 245, page 5
of 27, midway down the first full paragraph.   The Local Bankruptcy Rules provide that the notice of a
sale include "[a] description of the estimated or possible tax consequences to the estate, if known, and
how any tax liability generated by the sale of the property will be paid."   LBR 6007-1(c)(I).    The
Debtor's prior chapter 11 case was filed on August 3, 2018.   By now, the Debtor should have a decent
estimate of the capital gain liability that will arise as consequence of a sale of the Property.

[7]      The United States Trustee Handbook provides as follows with respect to sales, capital gain, and
abandonment of property to prevent liability to the estate:

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

event, the Secured Creditors believe the liability will not be attributed to the bankruptcy estate.    This means that should avoidance actions ever be pursued, doing so will not necessarily be a pointless exercise by having any recoveries buried beneath the administrative priority of the capital gain liability.

### III.

### CONCLUSION

Although the Debtor and interested parties may have anticipated that the Secured Creditors would consent to anything as being better than a foreclosure sale by Hyundai, that is not the case.    The objecting Secured Creditors prefer foreclosure by Hyundai.    That is their right.    In the absence of their consent (or non-opposition as stated in the Notice and the Motion), the Sale Motion cannot be approved under Section 363.    The result is dictated by the language of Section 363(f)(5) of the Code, and the persuasive analysis and holding in the Hassen decision, made by the District Court, which in turn "treat[ed] the BAP's decision as persuasive authority," namely, the decision of the BAP in Clear Channel.    The Motion also should be denied because the effect of the proposed Sale is to create administrative priority capital gain liability for which there is no known provision for payment, ever, by the bankruptcy estate whether the case proceeds under chapter 11 or under chapter 7.

DATED:   November 24, 2021            THE LAW OFFICES OF DAVID W. MEADOWS

By:        /s/ David W. Meadows
                David W. Meadows
Counsel for Packo Investments, Inc., Allen Park, The BAE
Family Trust, and Mohamed Sanfaz

---

e.    **SALES AND ABANDONMENTS**

When estate property is sold, the estate recognizes a taxable gain or loss. The trustee must abandon assets that will not generate net proceeds sufficient to pay any tax liability generated by the sale. 28 U.S.C. § 586. The estate may be liable for any taxable gain upon the sale of property, even if the proceeds are abandoned. In an individual case, the estate also may be liable for any taxable gain from foreclosure after relief from the automatic stay is granted if the trustee does not abandon the property before the foreclosure sale.   *See* **Exhibit 2** to the Meadows Decl.

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

## <u>DECLARATION OF DAVID W. MEADOWS</u>

I, David W. Meadows declare as follows:

1.      I am an attorney duly admitted to practice law in the State of California and before the United States Bankruptcy Court for the Central District of California.    Except as otherwise stated, each of the facts contained in this declaration is based upon my personal knowledge and if called upon to do so, I could competently testify thereto.

2.      Attached as **Exhibit 1** is a true and correct copy of the document *I believe* is cited by the Debtor in the Sale Motion as "*In re DVS Shoe Co., Inc.,* 2012 WL 3042672 (Bankr. C.D. Cal. May 18, 2012)".    I had some difficulty locating it.    I have a Lexis license.    Ordinarily, a Westlaw cite can be searched in Lexis and the case will come up.    However, when I searched for the above citation in Lexis, I could not find the document.    I turned to the Lexis online "chat" feature.    It took the representative almost half an hour to locate the document because it is not really an opinion. It is a court filing, in this case a sale order, picked up by Westlaw.    Lexis was able to find it but it was outside of my subscription plan. The Lexis representative was able to send me a link to the document.    Once I knew that I was looking only for a document filed in a Central District case, I was able to use my ECF login to access the case docket.    The document I downloaded from ECF I believe is identical to the one I received via the Lexis link and is identical to the document attached as Exhibit 1.    The redline appears at page 6 of 19, at the top.    I presume the DVS Shoe sale order was cited by some inadvertence and without any intent to mislead.

3.      ***Note that, inexplicably,*** the document I have attached as Exhibit 1 shows an entry date of **July 1, 2013.**  The citation in the Movant's brief is to May 18, 2012.    Nonetheless, Exhibit 1 is the document linked to an entry appearing on May 17, 2012.    Attached <u>as the last page of Exhibit 1</u> is a true and correct copy of the Lexis search result screen (I added yellow highlight).    The "Click to view PDF document" link generates the document attached as Exhibit 1, dated July 1, 2013.  (The date shown in the

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

upper left corner of that last page is the date and time that I went back and double checked, and then saved the page as a .pdf to attach to Exhibit 1.)    Possibly, where the Motion cites "(Bankr. C.D.Cal. May 18, 2012)", that date is meant to refer to the petition date, which was the day earlier, May 17.   Also unknown is why the hearing date shown on Exhibit 1 was June 20, 2012, but Exhibit 1 was entered more than a year later, as an amended order, on July 1, 2013.   **Finally**, **note footnote 2 on page 6 of 19 of Exhibit 2**: "**On further order of the Court, the stricken language of this paragraph is deleted from the original Order entered on June 22, 2012, as the Court did not make such a finding**."   (Highlighting added).

4.      If there is a different document the Debtor intended to be associated with the citation provided in the Motion, I could not locate it.

5.      Attached as **Exhibit 2** is a true and correct copy of a page 4-10 from the Office of the United States Trustee's "Handbook for Chapter 7 Trustees," with respect to the direction to abandon assets that will not generate net proceeds sufficient to pay any tax liability generated by a sale.  The handbook is available on line at   https://www.justice.gov/ust/page/file/762521/download.   (The link will be "flattened" when this document is efiled.)


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration is being executed this 24th of November, 2021, in Los Angeles, California.


        /s/ David W. Meadows
        David W. Meadows

LAW OFFICES OF DAVID W. MEADOWS
LOS ANGELES, CALIFORNIA

EXHIBIT 1

1  ROBERT E. OPERA -- State Bar No. 101182
   ropera@winthropcouchot.com
2  GARRICK A. HOLLANDER -- State Bar No. 166316
   ghollander@winthropcouchot.com
3  JEANNIE KIM -- State Bar No. 270713
   jkim@winthropcouchot.com
4  **WINTHROP COUCHOT**
   660 Newport Center Drive, Fourth Floor
5  Newport Beach, CA 92660
   Telephone: (949) 720-4100
6  Facsimile: (949) 720-4111
7
8  [Proposed] General Insolvency Counsel for
   Debtor and Debtor-in-Possession
9

FILED & ENTERED

JUL 01 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY kent          DEPUTY CLERK

CHANGES MADE BY COURT

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                   **SANTA ANA DIVISION**

14

15  In re:                          Case No. 8:12-bk-16209 CB

16  DVS SHOE CO., INC., a California  Chapter 11 Proceeding
    corporation,
17                                   **AMENDED ORDER APPROVING:  (1) SALE
18                                   OF ASSETS OF THE DEBTOR'S ESTATE
                                     FREE AND CLEAR OF LIENS AND
19              Debtor and          INTERESTS; (2) ASSUMPTION AND
                Debtor-in-Possession.   ASSIGNMENT OF LEASES AND
20                                   EXECUTORY CONTRACTS; AND (3)
                                     REJECTION OF LEASES AND EXECUTORY
21                                   CONTRACTS**
22
                                     DATE:      June 20, 2012
23                                   TIME:      10:30 a.m.
                                     PLACE:     Courtroom 5D
24                                              411 West 4th Street
                                                Santa Ana, CA 92701
25

26          //

27          //

28          ///

1    On June 20, 2012, at 10:30 a.m., the matter of the Motion for Order Authorizing (1) Sale

2  of Assets of the Debtor's Estate Free and Clear of Liens and Interests; (2) Assumption and

3  Assignment of Leases and Executory Contracts; and (3) Rejection of Leases and Executory

4  Contracts ("Sale Motion") filed by Debtor DVS Shoe Co., Inc. ("Debtor") came on for hearing

5  ("Sale Hearing") before the Honorable Catherine E. Bauer, United States Bankruptcy Judge for

6  the Central District of California, Santa Ana Division, in Courtroom 5D, located at the Ronald

7  Reagan Federal Building and United States Courthouse, 411 West 4th Street, Santa Ana, CA

8  92701.  The Debtor was represented by Robert E. Opera of Winthrop Couchot Professional

9  Corporation, the Debtor's proposed general insolvency counsel in its case.  Bank of America, N.A.

10  ("Bank") was represented by William B. Freeman of Katten Muchin Rosenman LLP.  The Official

11  Committee of Unsecured Creditors ("Committee") was represented by Richard A. Marshack of

12  Marshack Hays LLP, the Committee's proposed counsel in the Debtor's case.  DVS Footwear

13  International LLC (or such other entity as may be designated by Sequential Brands Group, Inc.,

14  "Purchaser") was represented by Van C. Durrer II of Skadden, Arps, Slate, Meagher & Flom LLP.

15  Clark Codiga was represented by Henry Niles III.  Other appearances were as reflected on the

16  Court's record of the proceedings.

17    The Court having read and considered the Sale Motion, all declarations and other

18  pleadings filed in support of the Sale Motion, the objection to the Sale Motion filed by the

19  Committee and the limited objection to the Sale Motion filed by the Los Angeles County

20  Treasurer and Tax Collector ("L.A. County"), and the reply to such objections ("Objections") filed

21  by the Debtor, and based upon the other pleadings and documents on file in this Chapter 11 case,

22  and the evidence proffered, and the arguments of counsel made at, the Sale Hearing, and the Court

23  finding that, under the circumstances of this case, the notice given of the hearing on the Sale

24  Motion was sufficient, and the Court finding that the highest and best bid made for the Debtor's

25  Assets was made by the Purchaser for the consideration and on the terms set forth in that certain

26  Asset Purchase Agreement dated as of June 20, 2012 (together with any amendments thereto, the

27

28

"APA"),[1] a true and correct copy of which is attached as <u>Exhibit A</u> to the Notice of Filing Exhibits to Order Approving (1) Sale of Assets of the Debtor's Estate Free and Clear of Liens and Interests; (2) Assumption and Assignment of Leases and Executory Contracts; and (3) Rejection of Leases and Executory Contracts ("Notice of Exhibits"), and good cause appearing to grant the Sale Motion and for the relief granted in this Order;

**IT IS FOUND AND CONCLUDED**, that:

A.    A voluntary petition under chapter 11 of the Bankruptcy Code was filed by the Debtor on May 17, 2012.

B.    The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this chapter 11 case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    The Debtor has complied with the procedures set forth in the Court's Order: (1) Approving Sale and Overbid Procedures in Connection with the Sale of Assets of the Debtor's Estate Free and Clear of Liens and Interests; (2) Approving Break-Up Fee and Expense Reimbursement in Connection with Sale of Debtor's Assets; (3) Setting a Hearing on Sale Motion; and (4) Approving Form of Notice to Be Provided to Creditors and Parties-in-Interest in Connection with Sale Motion ("Sale Procedures Order"), lodged on May 25, 2012, for giving notice of the Sale Motion and the Sale Hearing.

D.    The bidding procedures (the "Bidding Procedures") established by the Court pursuant to the Sale Procedures Order and as set forth in the memorandum provided to bidders (the "Sale Procedures Memorandum"), approved by the Court pursuant to the Sale Procedures Order, have been fully complied with in all material respects.

E.    Proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing, the Sale and the relief granted in this Order has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004 and 9014 of the Bankruptcy Rules

---

[1] All otherwise undefined capitalized terms used herein have the meanings provided in the Sale Motion or the APA. In the event of any of inconsistency between the Sale Motion and the APA, the APA shall control.

and all applicable Local Bankruptcy Rules, and such notice was otherwise good and sufficient, and appropriate under the particular circumstances, and no other or further notice of the Sale Motion, the Sale Hearing, the Sale or the entry of or relief granted in this Order is required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

F.      Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Assets under the Bidding Procedures. The Debtor marketed the Assets and conducted the sale process in compliance with the Sale Procedures Memorandum, Bidding Procedures, the Sale Procedures Order of this Court and the requirements of applicable law. The Auction was conducted in a reasonable and appropriate manner and in compliance with the Sale Procedures Memorandum and the Bidding Procedures.

G.      The Purchaser is a Qualified Bidder, and the bid submitted by the Purchaser at the Auction, as improved by the further bidding at the Sale Hearing, as reflected in the APA is the highest and best offer for the Assets. The consideration to be paid by the Purchaser under the APA constitutes reasonably equivalent value for the Assets and the other consideration being provided by the Debtor under the APA.

H.      The decision to enter into the APA reflects the exercise of the sound business judgment of the Debtor.

I.      The Bank consents to and supports the relief granted in this Order.

J.      The Debtor has full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary corporate action of the Debtor. The Debtor has all the corporate power and authority necessary to consummate the transactions contemplated by the APA, including, without limitation, the Sale.

K.      Approval at this time of the APA and for the consummation of the Sale is in the best interests of the Debtor and its creditors and estate.

L.      The Debtor has demonstrated good, sufficient and sound business purpose and justification for the Sale. The Debtor has demonstrated also compelling circumstances for the Sale,

-4-

without the filing and confirmation of a plan of reorganization or liquidation in this case,

including, without limitation, the fact that the value of the Assets is likely to depreciate rapidly in

the absence of the Sale.

M.    The APA was negotiated, proposed and entered into by the Debtor and the

Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither

the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the APA or

the Sale to be avoided under, or that would otherwise implicate, section 363(n) of the Bankruptcy

Code. The Purchaser is not an "insider" of the Debtor or any of its affiliates as that term is defined

in section 101(31) of the Bankruptcy Code.

N.    The Purchaser is a good faith buyer within the meaning of section 363(m) of the

Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser

will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in

closing the transactions contemplated by the APA.

O.    The terms and conditions of the APA and the purchase price and any other

consideration provided thereunder by the Purchaser (i) are fair and reasonable, (ii) represent the

highest and best offer for the Assets, (iii) will provide a greater recovery for the Debtor's creditors

than would be provided by any other practical alternative and (iv) constitute fair consideration.

P.    The Debtor may sell the Assets free and clear of any and all liens, claims, interests,

encumbrances, debts arising in any way in connection with any acts of the Debtor, claims (as that

term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options,

rights, contractual commitments, restrictions, interests and matters of any kind or nature, whether

incurred voluntarily or arising by operation of law, in the United States or elsewhere, arising prior

to the Closing Date or relating to acts occurring prior to the Closing Date, whether imposed by

agreement, understanding, law, equity or otherwise and whether known or unknown, disclosed or

undisclosed, absolute, contingent, inchoate, fixed or otherwise (the foregoing are collectively

referred to as "Encumbrances" herein), except only for any Encumbrance which constitutes an

Assumed Obligation under the APA, because one or more of the requirements set forth in

section 363(f) of the Bankruptcy Code has been satisfied. Specifically, for example,

1    subsection 363(f)(3) is satisfied because the Purchase Price is greater than the aggregate value of

2    all Encumbrances, ~~subsection 363(f)(5) ("such entity could be compelled in a legal or equitable~~

3    ~~proceeding to accept a money satisfaction of such interest") is satisfied because California law~~

4    ~~authorizes a general receiver to sell property free and clear of liens whether or not the sale will~~

5    ~~generate proceeds sufficient to fully satisfy all claims secured by the propert,~~[2] and

6    subsection 363(f)(2) is satisfied because no secured claimant (including, without limitation,

7    Codiga) objected to the Sale Motion and therefore secured claimants are deemed to have

8    consented to the relief requested by the Sale Motion. The interests of non-debtor parties with

9    Encumbrances of any kind or nature whatsoever in the Assets are adequately protected because

10   such Encumbrances shall attach to the proceeds of the sale of the Assets to the same extent (and in

11   the same priority and subject to the same limitations) as such Encumbrances attached to the Assets

12   immediately before the Sale.   In the event that L.A. County asserts an Encumbrance against any

13   Assets, the Assets may be sold and assigned to the Purchaser free and clear of any such

14   Encumbrance pursuant to section 363(f)(4) as any such Encumbrance is disputed by the Debtor.

15         Q.      Among other things, pursuant to section 363(f) of the Bankruptcy Code, this Order

16   provides for the Sale of the Assets to the Purchaser free and clear of any and all Encumbrances of

17   Clark Codiga ("Codiga"), with any such Encumbrances to attach to the Sale proceeds with the

18   same validity and priority as existed prior to the Sale.  As reflected by the proof of service of the

19   notice given of the Sale Motion [Docket No.41] and the proof of service of the notice given of the

20   continued hearing on the Sale Motion [Docket  No. 65], Codiga was provided with proper, timely,

21   adequate and sufficient notice of the relief provided in this Order, including as such relief affects

22   Codiga.  Codiga had a reasonable opportunity to object and/or be heard with respect to the relief

23   provided in this Order.  Codiga did not file an objection and is deemed to consent to the relief

24   provided in this Order.

25

26

27

28

---

[2] On further order of the Court, the stricken language of this paragraph is deleted from the original Order entered on June 22, 2012 as the Court did not make such a finding.

R. Except only as provided expressly to the contrary in the APA, the Debtor has good and valid title to the Assets, and the transfer of the Assets to the Purchaser will vest the Purchaser with good and marketable title to the Assets, free and clear of any and all Encumbrances.

S. Consummation of the Sale, including, without limitation, the transfer of the Assets to the Purchaser will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor, any affiliate of the Debtor, or any other person by reason of such transfers and assignments, including, without limitation, based on any theory of antitrust or successor, transferee or other liability, except only that the Purchaser shall be liable for payment of the liabilities expressly assumed in Schedule C of the APA.

T. The Purchaser would not have agreed to the APA and would not consummate the Sale and other transactions contemplated thereby if the Sale of the Assets and assignment of Assumed Contracts to the Purchaser were not free and clear of any and all Encumbrances or if the Purchaser would, or in the future could, be liable for any Encumbrances of any kind or nature whatsoever, other than those it expressly assumed under the APA.

U. There is no legal or equitable reason to delay the Sale. Cause exists to waive and not apply any stay imposed by Bankruptcy Rules 6004(g) and 6006(d) or any other applicable rule or law. This Order shall be effective and enforceable immediately upon entry hereof.

V. No non-debtor party to an Assumed Contract has filed an objection to the Sale Motion.

W. No secured claimant has filed an objection to the Sale Motion.

X. Good cause exists to authorize the Debtor to assume and to assign any Assumed Contracts to the Purchaser pursuant to section 365 of the Bankruptcy Code.

Y. Good cause exists to overrule the Objections filed by the Committee and by L.A. County.

Z.      To the extent any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

Based upon the record in this case and the findings of fact and conclusions of law set forth hereinabove, pursuant to Bankruptcy Rules 6004, 6006, 7052 and 9014,

**IT IS HEREBY ORDERED THAT:**

1.      The Sale Motion is granted in all respects. All objections to the Sale Motion, including, without limitation, objections filed by the Committee and by L.A. County, and any opposition to those matters necessary for approval of the Sale Motion, and entry of this Order, if any, that have not been withdrawn, waived or settled are hereby overruled on the merits. All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief sought therein including without limitation all non-debtor parties to any executory contracts and unexpired leases.

2.      The APA and the transactions contemplated thereby, including, without limitation, the Sale, are hereby approved in all respects.  Transfer of the Assets by the Debtor to the Purchaser shall be a legal, valid and effective transfer of the Assets, free and clear of any and all Encumbrances. The Closing of the Sale and the other transactions contemplated thereby are hereby approved and authorized under section 363(b) of the Bankruptcy Code.  The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA be authorized and approved in its entirety.

3.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtor is authorized to and shall sell, and the Purchaser shall buy, the Assets on the terms and conditions set forth in the APA free and clear of any and all Encumbrances other than those expressly assumed by the Purchaser in the APA. Any Encumbrances that encumber or are found to encumber or purport to encumber the Assets shall be transferred to and attach to the net proceeds of the Sale under the APA (after the payments specified therein) to the same extent and in the same priority that they encumbered the Assets prior to the Sale.  For the avoidance of doubt, the Assets shall be

1    sold free and clear of any and all Encumbrances that Codiga might assert, with any such Codiga

2    Encumbrances to attach to the Sale proceeds to the same extent and in the same priority as they

3    had prior to the Sale.  Codiga shall not take any action that might interfere in any way with the

4    Purchaser's use or enjoyment of the Assets and the rights and benefits that are the subject matter

5    of the APA.

6            4.        In furtherance of the foregoing and except for Assumed Obligations that the

7    Purchaser is expressly assuming in Schedule C of the APA, the Purchaser is not assuming nor

8    shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any

9    Encumbrances of or against the Debtor or Encumbrances in any way whatsoever relating to or

10   arising from the Assets or the Debtor's operations or use of the Assets, including, without

11   limitation, the Assumed Contracts, on or prior to the Closing Date or any Encumbrances that in

12   any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid,

13   discharged or performed on or prior to the Closing Date (in each case, including, without

14   limitation, any Encumbrances that result from, relate to or arise out of tort, product liability or

15   other claims, in the United States or elsewhere), or any Encumbrances calculable by reference to

16   the Debtor or its assets or operations, or relating to continuing conditions existing on or prior to

17   the Closing Date, which Encumbrances are hereby extinguished insofar as they may give rise to

18   successor or other liability of the Purchaser, without regard to whether the claimant asserting any

19   such Encumbrances has delivered to the Purchaser a release thereof. Without limiting the

20   generality of the foregoing, the Purchaser shall not be liable or responsible whatsoever, as a

21   successor or otherwise, for Encumbrances, whether calculable by reference to the Debtor or its

22   operations, or under or in connection with (i) any employment or labor agreements, consulting

23   agreements, severance arrangements, change-in-control agreements or other similar agreements to

24   which the Debtor is a party, (ii) any pension, welfare, compensation or other employee benefit

25   plans, agreements, practices and programs, including, without limitation, any pension plan of the

26   Debtor or an affiliate, (iii) the cessation of any of the Debtor's operations, dismissal of employees,

27   or termination of employment or labor agreements or pension, welfare, compensation or other

28   employee benefit plans, agreements, practices and programs, obligations that might otherwise

-9-

arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the

Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and

Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations

Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the Worker

Adjustment and Retraining Notification Act, or any such similar regulation in the United States or

elsewhere, (iv) workmen's compensation, occupational disease or unemployment or temporary

disability insurance claims, (v) environmental liabilities, debts, claims or obligations arising from

conditions first existing on or prior to the Closing Date (including, without limitation, the presence

of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on

any basis, including, without limitation, under the Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. §9601 *et seq*., (vi) any bulk sales or similar law, (vii)

any liabilities, debts, commitments or obligations of, or required to be paid by, the Debtor for any

taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any

taxes relating to the operations or Assets for or applicable to any pre-Closing Date tax period,

including any property taxes, except only for any stamp, documentary, sales and/or transfer taxes

arising from and as a result of the Sale ("Sale Transaction Taxes"), (ix) any liabilities, debts,

commitments or obligations of any kind under any contract or lease other than as expressly

assumed under the APA, (x) any litigation, or (xi) any products liability or similar claims, whether

pursuant to any federal laws or otherwise.

5.      The recitation, in the immediately preceding paragraph of or elsewhere in this

Order, of specific agreements, plans or statutes in this Order is not intended, and shall not be

construed, to limit in any way the generality of the categories of Encumbrances referred to herein.

6.      The Purchaser has provided adequate assurance of future performance under the

relevant Assumed Contracts within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the

extent applicable) and 365(f)(2)(B).

7.      The Debtor is authorized to assume the Assumed Contracts and to assign the

Assumed Contracts to the Purchaser pursuant to 11 U.S.C. §§ 365(a) and (f), and as otherwise set

forth in the Bankruptcy Code.  Pursuant to the APA, the list of Assumed Contracts shall be

identified by a notice to be filed and served on parties in interest promptly after Closing.

8.      Pursuant to 11 U.S.C. §§ 105(a), 363 and 365, all Assumed Contract counterparties

served with the Sale Motion are forever barred and permanently enjoined from raising or

asserting, prosecuting or otherwise pursuing such person's or entity's interests against the Debtor

or the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to

assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or

arising by reason of the Closing.  All amounts necessary to cure any and all defaults under the

Assumed Contracts ("Cure Claims") are hereby fixed in the applicable amounts set forth on

Exhibit "1" to the Declaration of Kevin Dunlap in Support of Debtor's Motion for Order

Authorizing (1) Sale of Assets of the Debtor's Estate Free and Clear of Liens and Interests; (2)

Assumption and Assignment of Leases and Executory Contracts; and (3) Rejection of Leases and

Executory Contracts [Docket No. 39].  The Purchaser shall pay all Cure Claims for Assumed

Contracts (to the extent such contracts are included in the list of Assumed Contracts identified by

the Purchaser at Closing) as soon as practicable after the Closing Date without any reduction of or

credit against the Purchase Price.

9.      On the Closing Date and upon the payment of the relevant Cure Claims by the

Purchaser, if any, (i) the Assumed Contracts shall remain in full force and effect, (ii) no default

shall exist under the Assumed Contracts nor shall there exist any event or condition which, with

the passage of time or giving of notice, or both, would constitute such a default, (iii) the Purchaser

shall be deemed to be substituted for the Debtor as a party to the applicable Assumed Contracts,

and (iv) the Debtor shall be relieved, pursuant to 11 U.S.C. § 365(k), from any further liability

under the Assumed Contracts.

10.      Upon the Purchaser's payment of the Cure Claims, all parties are forever barred,

estopped, and permanently enjoined from (i) asserting against the Debtor or the Purchaser, or the

property of either of them, any default existing as of Closing Date, or against the Purchaser, any

counterclaim, defense, setoff or any other Encumbrance asserted or assertable against the Debtor;

and (ii) imposing or charging against the Purchaser, its affiliates or its property any accelerations,

assignment fees, increases or any other fees as a result of the Debtor's assumption and assignment

to the Purchaser of the Assumed Contracts.

11.    The Debtor may reject any contracts not assumed and assigned pursuant to this

Order and the APA by giving notice of such rejection to the non-debtor counter party to the

applicable contract, which rejection shall be effective as of the day that is one business day after

notice of such rejection is given by the Debtor.

12.    All parties holding Encumbrances of any kind or nature whatsoever against or in

the Debtor, or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Debtor, the Assets, the operation of the Debtor's businesses prior to

Closing Date, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped,

and permanently enjoined from asserting such persons' or entities' Encumbrances against the

Purchaser, its successors or assigns, property, or assets, whether or not a party asserting any such

Encumbrance has delivered to the Purchaser a release thereof.

13.    In the absence of a stay pending appeal, if the Purchaser and the Debtor close under

the APA at any time after entry of this Order, then, with respect to the Sale, the Purchaser, as a

buyer in good faith, shall be entitled to the protections of section 363(m) of the Bankruptcy Code

if this Order or any authorization contained herein is reversed or modified on appeal.

14.    In the event that any person or entity (as those terms are defined in the Bankruptcy

Code) which has filed statements or other documents or agreements evidencing Encumbrances on

the Assets has not delivered in escrow to the Debtor's counsel prior to the Closing, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of

satisfactions, releases of Encumbrances which such person or entity has with respect to the Assets,

the Debtor is authorized and directed (and the Purchaser is authorized on behalf of the Debtor),

after the Closing, to execute and file or record such statements, instruments, releases, and other

documents on behalf of the person or entity with respect to the Assets.

15.     All entities that are presently, or at Closing may be, in possession of some or all of the Assets (including titles to Assets) are hereby directed to surrender possession of said assets and titles to said assets to the Purchaser at Closing.

16.     The Debtor is further authorized and directed to execute, acknowledge and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer and take such other action that may be reasonably necessary or appropriate to perform the terms and provisions of the APA, and shall take any and all other actions for purposes of assigning, transferring, granting, conveying, and confirming to the Purchaser, or reducing to possession, any or all of the Assets and to execute such nonmaterial amendments to the APA and related agreements as may be required to effectuate the letter and intent of the APA and the consummation of the Sale to the extent contemplated by the APA.

17.     To the extent that any Sale Transaction Taxes are payable, such taxes shall be paid timely by the Purchaser, without any reduction of or credit against the Purchase Price.

18.     At or after the Closing, the Debtor is authorized to pay, from the net proceeds of the Sale, any allowed secured claim of the Bank with the prior written consent of the Committee, and any allowed secured claim of Codiga with the prior written consent of the Bank and the Committee.  The Debtor also is authorized to pay any expenses or costs that are required to be paid in order to consummate the Sale or perform its obligations under the APA, if any. This authority includes authority to make payment to parties holding Encumbrances secured by the Assets in order to satisfy such Encumbrances ("Payment to Extinguish Secured Debt") at Closing with proceeds from the Sale; provided, however, that any Payment to Extinguish Secured Debt shall not be deemed or construed as a waiver of the rights or remedies under applicable law of the Debtor, the Committee, any creditor or party-in-interest to later assert any claims against the recipient of any such Payment to Extinguish Secured Debt, including without limitation the right to later challenge the perfection and validity of the underlying Encumbrance, so long as any such challenge is commenced within any applicable limitations period and according to applicable process and procedure, including those set forth in the Bankruptcy Rules.

19. Subject to the provisions of the APA, this Court retains jurisdiction to (i) enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Assets (including titles to such Assets) to the Purchaser, (iii) compel delivery of the Purchase Price under the APA, (iv) resolve any disputes, controversies or claims arising out of or relating to the APA, (v) interpret, implement and enforce the provisions of this Order and (vi) protect the Purchaser against any claims, causes of action or other Encumbrances of whatever nature that the Purchaser did not expressly assume under the APA.  Without limiting the foregoing, the Court expressly reserves jurisdiction to enforce the provisions relating to assumption by the Debtor and assignment to the Purchaser of the Assumed Contracts, including, without limitation, with respect to any applicable Cure Claims.

20. The provisions of this Order authorizing the Debtor to enter into the APA and authorizing the transactions contemplated thereby shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file any releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and to implement the foregoing provisions hereof except as expressly provided in the APA. Notwithstanding the foregoing, the Debtor, the Purchaser and all other parties are authorized and directed to take any and all actions necessary or appropriate to effectuate, consummate and implement fully the APA consistent with their obligations under the APA.

21. The automatic stay imposed by 11 U.S.C. § 362 is hereby modified to the extent necessary or appropriate to implement the provisions of this Order and the terms of the APA.

22. This Order is binding upon and inures to the benefit of any successors or assigns of the Debtor or the Purchaser, including any trustee appointed in any subsequent case of the Debtor under Chapter 7 or 11 of the Bankruptcy Code.

23. This Order is and shall be (i) effective as a determination that, at Closing and after consummation of the Closing and payment of the Purchase Price as provided for herein, all Encumbrances existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated as charges against the Assets and/or the Purchaser (but not as

against any other person or entity or the proceeds of the Sale, to which the Encumbrances attach as previously provided, or as against the Debtor's estate, to which Encumbrances remain assertable), and that the conveyance of the Assets described herein have been effected, and (ii) binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

24.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014, Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, this Order shall be effective and enforceable immediately upon entry hereof. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk its appeal being foreclosed as moot in the event that the Purchaser and the Debtor elect to close prior to this Order becoming a final, non-appealable order.

25.    The provisions of this Order and the APA are non-severable and mutually dependent.

26.    Nothing contained in any plan of reorganization or liquidation confirmed in the Debtor's Bankruptcy Case or any order of this Court confirming such plan or any other order entered in the Debtor's Bankruptcy Case shall conflict with or derogate from the provisions of the APA or the terms of this Order.

27.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material and has been provided to the Committee, the Bank, and the United States Trustee in a timely manner for review and comment.

28.    This Court hereby requests the aid and recognition of any court, tribunal, regulatory, administrative or other governmental body having jurisdiction in Canada, Mexico, the United Kingdom, France, Germany, the United States, or elsewhere, to give effect to this Order and to assist the Debtor and the Purchaser and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Debtor and the Purchaser as may be necessary or desirable to give effect to this Order and to assist the Debtor and the Purchaser and their respective agents in carrying out the terms of this Order.  The Debtor and the Purchaser are hereby authorized and empowered to apply to any court, tribunal, regulatory, administrative or other governmental body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.  In connection with the foregoing, the Purchaser is hereby appointed as the foreign representative with respect to the Assets purchased under the APA.

29.    As set forth in section III(j) of the APA, except as expressly set forth in the APA, the Assets are sold "as is, where is", and except for the representations and warranties set forth in the APA, no other representation or warranty is made or implied, including a warranty of fitness for a particular purpose, a warranty of merchantability, or otherwise.

30.    As set forth in section I(c) of the APA, Purchaser shall be responsible for the Cure Amounts and the Post-Closing Date Obligations.

31.    As set forth in section VI(h) of the APA, (i) Debtor shall be liable for any and all state and local taxes and fees assessed against the Assets, utility costs, and other charges and expenses relating to the Assets that arose and/or relate to a period prior to the Closing Date; (ii) Purchaser shall be liable for any and all state and local taxes and fees assessed against the Assets, utility costs, and other charges and expenses relating to the Assets that arose and/or relate to a period after the Closing Date; and (iii) the applicable obligations shall be prorated accordingly.

32.    Good cause, valid reasons and the record of this case amply support entry of this Order.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. §

1    158(a).  This Order shall be effective, and the parties may consummate the transactions approved

2    by this Order, immediately upon entry of this Order.

3           33.     The Debtor is hereby authorized and directed to pay to Valtus Capital Group, LLC

4    ("Valtus") the commission and other fees and costs to which Valtus is entitled to be paid upon the

5    Closing of the transaction contemplated by the APA, subject to the Court's prior entry of an order

6    authorizing the employment of Valtus.

7           34.     The Debtor is hereby authorized and directed to pay all carve-outs to the respective

8    professionals as set forth in the Debtor's cash collateral motion or subsequent stipulations or

9    agreements approved by the Court.

10           35.     The Purchaser shall accept and pay for all unpaid goods that, as of the date hereof,

11    are the subject of a purchase order by the Debtor and have a sales order by a customer that is not

12    past the cancellation date.  Payment shall be made as and when such goods are delivered in the

13    ordinary course of business.

14       //

15       //

16       //

36.     Except as set forth expressly herein to the contrary, no further notice or Court appearance shall be necessary to effectuate the foregoing.

**PRESENTED BY:**

| | |
|---|---|
| **WINTHROP COUCHOT PROFESSIONAL CORPORATION** | **KATTEN MUCHIN ROSENMAN LLP** |

By:_____/s/ Robert E. Opera_____
    Robert E. Opera
    Garrick A. Hollander w
    Jeannie Kim
[Proposed] Counsel for Debtor and
Debtor-in-Possession DVS Shoe Co., Inc.

By:_____/s/ William B. Freeman_____
    William B. Freeman
Counsel to Bank of America, N.A.

**MARSHACK HAYS LLP**

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By:_____/s/ Richard A. Marshack_____
    Richard A. Marshack
[Proposed] Counsel to the Official
Committee of Unsecured Creditors

By:_____/s/ Van C, Durrer II_____
    Van C. Durrer II
Counsel to DVS Footwear
International LLC and Sequential
Brands Group, Inc.

Date: July 1, 2013

Catherine Bauer
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **AMENDED ORDER APPROVING:  (1) SALE OF ASSETS OF THE DEBTOR'S ESTATE FREE AND CLEAR OF LIENS AND INTERESTS; (2) ASSUMPTION AND ASSIGNMENT OF LEASES AND EXECUTORY CONTRACTS; AND (3) REJECTION OF LEASES AND EXECUTORY CONTRACTS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**    Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of **June 28, 2013**, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Robert D Bass    rbass@greenbass.com
Jennifer K Brooks    jennifer.brooks@kattenlaw.com, ecf.lax.docket@kattenlaw.com
Ed J Gezel    Notices@bkservicing.com
Barry S Glaser    bglaser@swesq.com
Steven M Gribben    gribben@gribbeninc.com
Chad V Haes    chaes@marshackhays.com, ecfmarshackhays@gmail.com
Michael J Hauser    michael.hauser@usdoj.gov
Garrick A Hollander    ghollander@winthropcouchot.com,
pj@winthropcouchot.com;vcorbin@winthropcouchot.com;chipp@winthropcouchot.com
Jeannie Kim    jkim@winthropcouchot.com, vcorbin@winthropcouchot.com;pj@winthropcouchot.com
Paul J Laurin    plaurin@btlaw.com, tpearsall@btlaw.com
Richard A Marshack    rmarshack@marshackhays.com, lbergini@marshackhays.com;ecfmarshackhays@gmail.com
Neeta Menon    nmenon@btlaw.com
Tania M Moyron    tmoyron@peitzmanweg.com
Randall P Mroczynski    randym@cookseylaw.com
Ramon Naguiat    rnaguiat@skadden.com
Henry H Oh    hoh@soollp.com, dholland@soollp.com;jcurley@soollp.com
Robert E Opera    ropera@winthropcouchot.com,
pj@winthropcouchot.com;vcorbin@winthropcouchot.com;chipp@winthropcouchot.com
Penelope Parmes    pparmes@rutan.com
Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
Martina A Slocomb    mslocomb@marshackhays.com, ecfmarshackhays@gmail.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

DVS Shoe Co., Inc., POB 2856, La Puente, CA 91746

**3.    TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

 Lexis    

Client: -None-    Folders    History    Help    More

**Document:**    DVS Shoe Co., Inc., a California subchapter S corp    Actions ∨

Go to ∨    All terms   2 ∨    ∧ ∨    Search Document    1 of 1    Results list

## DVS Shoe Co., Inc., a California subchapter S corp

12-16209

US Bankruptcy Court for the Central District of California

May 17, 2012, Filed

**Reporter**

**State:** US-CA

**Type:** Unknown

## Title

DVS Shoe Co., Inc., a California subchapter S corp

 Click to view PDF document

LexisNexis

About
Privacy Policy

Cookie Policy
Terms & Conditions

RELX™

Copyright © 2021 LexisNexis.

EXHIBIT 2

The trustee may also have to file information returns (Form 1099 series) if certain payments are made. For example, Form 1099-INT must be supplied to the payee and to the IRS when a trustee makes certain interest payments. Similarly, the trustee may be required to issue to payees and to file with the IRS Form 1099-MISC when fees are paid to attorneys, accountants and other professionals for their work in assisting in the administration of the estate. Payments made to an attorney where the attorney's fee cannot be determined (such as payment of a settlement) must also be reported to the IRS and the attorney. The trustee should consult with the tax professional to determine the appropriate threshold amounts required for filing these forms.

d. **EMPLOYEE W-2 FORMS**

If the trustee pays wages, including pre-petition wage claims, the trustee is responsible for preparing and filing W-2 forms for the wages paid and for sending copies to the employees. For those cases in which the trustee does not pay any wages, but wages were paid by the debtor during the calendar year of the bankruptcy petition, the trustee will receive requests from the employees for wage withholding information in order to complete their personal income tax returns. In these circumstances the trustee may complete W-2 forms to give to the employees based on the corporate records or may make those records available to the former employer or former employees to assist them in reconstructing the information. In any event, if an employee is unable to obtain Form W-2 for wages paid by the debtor pre-petition, the employee should be instructed to secure Form 4852 from the IRS and attach it to the employee's Form 1040 in order to obtain credit for the estimated amount of taxes withheld. For further information, the trustee may consult IRS Circular E (The Employer's Tax Guide).

e. **SALES AND ABANDONMENTS**

When estate property is sold, the estate recognizes a taxable gain or loss. The trustee must abandon assets that will not generate net proceeds sufficient to pay any tax liability generated by the sale. 28 U.S.C. § 586. The estate may be liable for any taxable gain upon the sale of property, even if the proceeds are abandoned. In an individual case, the estate also may be liable for any taxable gain from foreclosure after relief from the automatic stay is granted if the trustee does not abandon the property before the foreclosure sale.

f. **PROPERTY TAXES**

As noted above, property taxes incurred by the estate, whether secured or unsecured, are allowable as administrative expenses and the governmental unit is not required to file a request for payment. The trustee may recover the payment of ad valorem property taxes from the property securing the claim, pursuant to section 506(c).

The trustee is generally required to pay property taxes in a business case on or before their due dates, unless the taxes are secured by a lien against property that is abandoned by the trustee within a reasonable period of time after the lien attaches. 28 U.S.C. § 960(b)(1).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1801 Century Park East, Suite 1201, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: OPPOSITION OF CERTAIN SECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER (1) APPROVING THE SALE OF THE REAL PROPERTY COMMONLY KNOWN AS 8201 SANTA FE AVENUE, HUNTINGTON PARK, CA 90255, SUBJECT TO OVERBIDDING PROCEDURES PURSUANT TO 11 U.S.C. § 363; (2) AUTHORIZING THAT SUCH SALE BE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES OF ANY NATURE WHATSOEVER PURSUANT TO 11 U.S.C. § 363; (3) EXTINGUISHING EXISTING LEASE; (4) REJECTING ALL OTHER EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (5) AUTHORIZING PAYMENT DIRECTLY OUT OF ESCROW OF THE CLAIM OF HYUNDAI STEEL COMPANY, ESCROW COSTS, BROKERS' FEE AND LIENS SENIOR TO THE LIENS OF HYUNDAI STEELCOMPANY; (6) FINDING THAT BUYER IS A GOOD FAITH BUYER ENTITLED TO THE PROTECTIONS OF SECTION 363(M) OF THE BANKRUPTCY CODE; (7) WAIVING THE FOURTEEN-DAY STAY PROVISION OF BANKRUPTCY RULE 6004; (8) APPROVING COMPROMISE OF CONTROVERSY WITH HYUNDAI STEEL COMPANY AND AUTHORIZING GENERAL MUTUAL RELEASES; AND, (9) GRANTING OTHER RELIEF IT DEEMS JUST AND APPROPRIATE **[Doc. 379]**; DECLARATION OF DAVID W. MEADOWS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 11/24/21, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 11/24/21 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Overnight/FedEx**:
Hon. Vincent P. Zurzolo
United States Bankruptcy Judge
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/24/21 | David W. Meadows | /s/ David W. Meadows |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1.    <u>**Via ECF (Continued):**</u>

- **Katrina M Brown**    kbrown@pskbfirm.com
- **Shirley Cho**    scho@pszjlaw.com
- **Theron S Covey**    theronscovey@hotmail.com, sferry@raslg.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Hal D Goldflam**    hgoldflam@frandzel.com, dmoore@frandzel.com
- **Michael S Greger**    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- **Carrie V Hardman**    chardman@winston.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com,
  roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- **Richard Holm**    rholm@omm.com, richard-holm-1054@ecf.pacerpro.com
- **Evan M Jones**    ejones@omm.com, evan-jones-5677@ecf.pacerpro.com
- **Michael T Leary**    MTLeary@winston.com, ecf_sf@winston.com;mike-leary-2899@ecf.pacerpro.com;pacercourtfile@winston.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Giovanni Orantes**    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- **Daniel E Park**    dpark@parksylvalaw.com
- **Valerie Smith**    claims@recoverycorp.com
- **Derrick Talerico**    dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Roye Zur**    rzur@elkinskalt.com, cavila@elkinskalt.com;myuen@elkinskalt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**