Giovanni Orantes, Esq. 190060
**THE ORANTES LAW FIRM, P.C.**
3435 Wilshire Blvd., Suite 2920
Los Angeles, CA 90010
Telephone: (213)389-4362
Facsimile: (877) 789-5776
go@gobklaw.com

Insolvency Counsel for Debtor
And Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Jong Uk Byun,<br><br>                Debtor and<br>                Debtor-in-Possession. | Case No. 2:20-bk-17433-VZ<br><br>Chapter 11<br><br>**REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ORDER:**<br>**(1) AUTHORIZING AND APPROVING SALE PROCEDURES FOR SALE OF ASSETS;**<br>**(2) AUTHORIZING AND APPROVING THE BREAK-UP FEE;**<br>**(3) APPROVING FORM AND MANNER OF NOTICE OF AUCTION AND SALE HEARING;**<br>**(4) SCHEDULING HEARING TO CONSIDER APPROVAL OF REAL ESTATE PURCHASE AND SALE AGREEMENT; AND**<br>**(5) GRANTING OTHER RELIEF AS THE COURT MAY DEEM APPROPRIATE;**<br>**AND SUPPORTING MEMORANDUM & DECLARATIONS (DOCKET NO. 379)**<br><br>**HEARING**<br>DATE: November 30, 2021<br>TIME: 11:00 A.M.<br>CTRM: 1368<br>PLACE: 255 E. Temple Street<br>             Los Angeles, CA |

1

**TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL OTHER PARTIES IN INTEREST:** Jong Uk Byun, the Debtor and Debtor-in-Possession in the above entitled Chapter 11 Case (the "Debtor"), submits his reply in support of the Motion For Order: (1) Authorizing And Approving Sale Procedures For Sale Of Assets; (2) Authorizing And Approving The Break-Up Fee; (3) Approving Form And Manner Of Notice Of Auction And Sale Hearing; (4) Scheduling Hearing To Consider Approval Of Real Estate Purchase And Sale Agreement; And (5) Granting Other Relief As The Court May Deem Appropriate; And Supporting Memorandum & Declarations (Docket No. 379) ("Sale Procedures Motion"), and states as follows:

On November 18, 2021, the Debtor filed and served via ECF, email or overnight mail the aforementioned Sale Procedures Motion as well as that Motion For Order **(1)** Approving The Sale Of The Real Property Commonly Known As 8201 Santa Fe Avenue, Huntington Park, Ca 90255, Subject To Overbidding Procedures Pursuant To 11 U.S.C. § 363; **(2)** Authorizing That Such Sale Be Free And Clear Of Liens, Claims, Interests, And Encumbrances Of Any Nature Whatsoever Pursuant To 11 U.S.C. § 363; **(3)** Extinguishing Existing Lease; **(4)** Rejecting All Other Executory Contracts And Unexpired Leases; **(5)** Authorizing Payment Directly Out Of Escrow Of The Claim Of Hyundai Steel Company, Escrow Costs, Brokers Fee And Liens Senior To The Liens Of Hyundai Steel Company; **(6)** Finding That Buyer Is A Good Faith Buyer Entitled To The Protections Of Section 363(M) Of The Bankruptcy Code; **(7)** Waiving The Fourteen-Day Stay Provision Of Bankruptcy Rule 6004; **(8)** Approving Compromise Of Controversy With Hyundai Steel Company And Authorizing General Mutual Releases; And, **(9)** Granting Other Relief It Deems Just And Appropriate; Memorandum Of Points And Authorities; And, Declarations In Support Thereof (Docket No. 374 replaced by Docket No. 379) (the "Sale Motion") and a Notice Of Sale Of Estate Property (LBR 6004-2) 8201 Santa Fe Avenue, Huntington Park, CA 90255 (the "Sale Notice").

The Debtor was ordered by the Court to include and did include in the notice portion of the Sale Procedures Motion, the objection deadline of November 24, 2021, by 12:00 p.m. (Noon) Pacific Standard Time for interested parties to file and serve objections on Judge Zurzolo's chambers via e-mail at Chambers_VZurzolo@cacb.uscourts.gov, which the Debtor. The reply deadline to those

objections is set to November 29, 2021 by 12:00 p.m. (Noon) Pacific Standard Time and should file and serve objections on Judge Zurzolo's chambers via e-mail at Chambers_VZurzolo@cacb.uscourts.gov.

On November 24, 2021, Thor Acquisition West LLC (the "Buyer") filed the Declaration of Greg German in support of the Sales Procedures Motion and Property Sale Motion as Docket No. 385.

On November 24, 2021, Creditors Packo Investments, Inc., Allen Park, Mohamed Sanfaz, and The BAE Family Trust filed the Opposition only to the Sale Motion as Docket No. 386 ("Packo Sale Opposition").

On November 26, 2021, Toni Ko, filed as Docket No. 388, which it later re-filed as Docket No. 392, that Statement and Reservation of Rights Re Debtor's Notice of Motion and Motion for Order (1) Approving the Sale of the Real Property Commonly Known as 8201 Santa Fe Avenue, Huntington Park, CA 90255, Subject to Overbidding Procedures Pursuant to 11 U.S.C. § 363; etc. ("Ko Statement"). As its title makes clear, the Ko Statement concerns only the Sale Motion.

In sum, **no opposition or objection to the Sale Procedures Motion has been filed at all**, let alone a timely opposition or objection. The Debtor believes this is quite intentional as the sale the Debtor proposes to make benefits the entire estate.

The Debtor plans to file a timely reply by December 2, 2021 to the Packo Sale Opposition, which is not properly before the Court on November 30, 2021. Should the Court consider any argument in such opposition at all on November 30, 2021, a few issues are noteworthy, however:

1. Again, in the first instance, the arguments in the Packo Sale Opposition go to the Sale Motion, not the Procedures Motion and, thus, are not ripe on Tuesday. As to the sale, Packo relies primarily on *In re Hassen Imps. P'ship (In re Hassen Imports Pasrtnership)*, 502 B.R. 851 (D. C.D. Cal. 2013) ("*Hassen*"), which in turn relies in part on *In re PW, LLC*, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008) ("*Clear Channel*"). Both cases are easily distinguished from our facts.

    a. *Hassen* is distinguishable because that case involved an enforceable equitable servitude not a lien. *Hassen* at 856.

i. The *Hassen* Court concluded that the servitude is **not** an interest that is reducible to "money satisfaction" within the meaning of section 363(f)(5) because, under California law, "a foreclosure on a senior lien interest extinguishes junior covenants and equitable servitudes." *Id*. at 859-860. Because such an interest would simply be extinguished in a foreclosure and would not be entitled to "money satisfaction," no matter the sale price achieved at foreclosure, the Court concluded that the foreclosure would "not constitute a 'legal or equitable proceeding' pursuant to § 363(f)(5)." *Id*. at 861. The Court cited authority, including *Clear Channel* and *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir.1994), for the proposition that section 363(f)(5) does not apply to covenants, such as the equitable servitude at issue, which are not "cash convertible." *Id*. at 861. In short, the *Hassen* decision hinged entirely on the non-cash-convertible nature of the equitable servitude at issue in that case. Here, no equitable servitude is at issue; *Hassen* is therefore not on point. Because an equitable servitude is neither a lien, nor supports a claim, it never receives a cash settlement. Indeed, courts have found that equitable servitudes and easements are not claims subject to the discharge. *See Matter of Udell*, 18 F.3d 403, 408-10 (7th Cir. 1994) (holding that the right to equitable relief for breach of a covenant not to compete was not a claim dischargeable in bankruptcy under § 101(5)(B) because the right to equitable relief constitutes a claim only if it is an alternative to a right to payment or if compliance with the equitable order will itself require the payment of money, and neither circumstance was present); *Kennedy v. Medicap Pharmacies, Inc*., 267 F.3d 493, 497–98 (6th Cir. 2001) (same); *Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994) (holding that a restrictive, reciprocal land covenant, which included a money damages provision along side a

4

|     |     |
| --- | --- |
| 1   | provision for a permanent injunction, was not a claim dischargeable in |
| 2   | bankruptcy under § 101(5)(B) for the same reasons set forth in *Matter of* |
| 3   | *Udell*). |
| 4   | ii.  As a matter of fact, the *Hassen* Court discussed approvingly *In re Jolan,* |
| 5   | *Inc.*, 403 B.R. 866 (Bankr.W.D.Wash.2009) and *In re Boston* |
| 6   | *Generating, LLC*, 440 B.R. 302 (Bankr.S.D.N.Y.2010), specifically to |
| 7   | contrast its holding from the facts in those cases, where the interest at |
| 8   | issue—a junior lien, not an equitable servitude—was reducible to |
| 9   | "money satisfaction": |

> In these hypothetical foreclosures, the junior lienholder would lose their lien on the foreclosed property, and receive in exchange a lien attaching to the proceeds from the foreclosure sale. . . . .
> …
> It is this lien on the monetary proceeds from the foreclosure sale which the *Jolan* and *Boston Generating* courts found to be the "money satisfaction" received by junior interests. *Jolan* identified foreclosure as a proceeding "by which lienholders may be compelled to accept money satisfactions" because "foreclosures ... operate to clear junior lienholders' interests, [with] their liens attach[ing] to proceeds in excess of the costs of sale and the obligation or judgment foreclosed." 403 B.R. at 870. Likewise, *Boston Generating* found that "a junior lienholder ... is entitled to nothing more than the surplus cash generated in a sale" and that the junior lienholders could thus be "compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full." 440 B.R. at 333 & n. 29. *Jolan* and *Boston Generating* thus both turn on the fact that junior lienholders can be compelled to receive an entitlement to the proceeds of a foreclosure sale in exchange for their junior liens. The City, by contrast, would receive no such satisfaction of the Operating Covenant under a foreclosure of the CorePointe lien, because, as stated above, such a foreclosure would simply terminate the Operating Covenant [i.e., the equitable servitude].

*Hassen* at 862.

iii.  The Packo Sale Opposition misleadingly dismisses *Jolan*, arguing that the *Jolan* Bankruptcy Court "missed the point as made by the *Hassen* court" because "[w]iped out by foreclosure is hardly the same as being forced to accept a 'monetary satisfaction.'" Opposition

5

1                 at 7. In fact, it is the Packo Sale Opposition that misses the point

2                 of *Hassen*: section 363(f)(5) does not apply to an interest, such as an

3                 equitable servitude, that is not "cash convertible." Here, the liens at

4                 issue are clearly cash convertible in the context of a foreclosure auction,

5                 as were the liens at issue in *Jolan*. For purposes of the Sale

6                 Motion, *Jolan* is on point, not *Hassen*.

7         iv.    Furthermore, the Packo Sale Opposition confuses the issue by arguing

8                 that Thor's $31 million bid, if it ends up being the winning bid, would

9                 leave nothing for his clients, with the possible exception of Packo. The

10                correct analysis under 363(f)(5) is whether there is "a legal or equitable

11                proceeding," other than the 363 sale, under which the holders of these

12                liens would be compelled to accept a money satisfaction of their

13                respective interests. A judicial or nonjudicial foreclosure auction would

14                constitute such a proceeding (note that *Jolan* and *Boston*

15                *Generating* make clear either type of foreclosure qualifies); as the sale

16                price under such a proceeding is unknowable until the proceeding takes

17                place, it is irrelevant whether the claims of the holders of these liens

18                would be satisfied in full or in part, or whether one or more of them

19                might end up out of the money altogether.

20     b.   *Clear Channel* is also distinguishable.

21         i.    There, the Court found that section 363(f)(5) did not apply because the

22                chapter 11 trustee did not identify a mechanism for extinguishing the

23                interest at issue. As the Court noted:

24-27
> The question is thus whether there is an available type or form of legal or equitable proceeding in which a court could compel Clear Channel to release its lien for payment of an amount that was less than full value of Clear Channel's claim. ***Neither the Trustee nor DB has directed us to any such proceeding under nonbankruptcy law, and the bankruptcy court made no such finding***."

28                *Clear Channel* at 45-46 (emphasis added).

6

> The only proceeding put forward by the chapter 11 trustee was "cramdown under § 1129(b)(2)," which the Court found unpersuasive because "[i]f the proceeding authorizing satisfaction was found elsewhere in the Bankruptcy Code, then an estate would not need § 363(f)(5) at all; it could simply use the other Code provision." *Clear Channel* at 46. The *Clear Channel* holding is very narrow:
>
>> We thus hold that Congress did not intend under § 363(f)(5) that nonconsensual confirmation be a type of legal or equitable proceeding to which that paragraph refers. As a result, the availability of cramdown under § 1129(b)(2) is not a legal or equitable proceeding to which § 363(f)(5) is applicable."
>
> *Clear Channel* at 46.
>
> As the *Jolan* court observed in its discussion of *Clear Channel*:
>
>> The careful reader will have noted that, after pointing out that appellees had not shown the existence of a qualifying proceeding, the Panel did not continue with the familiar appellate rubric "nor have we found any such authority." Rather, it exercised its prerogative to limit its ruling to the arguments presented by the parties, as might be expected when it was not evident that they had argued anything but § 1129 to the bankruptcy court[.]
>
> *Jolan* at 869.
>
> ii. Here, Debtor has made no attempt to argue that the availability of cramdown under § 1129(b)(2) triggers application of section 363(f)(5). *Clear Channel* is thus not on point. Rather, the applicable judicial proceeding forcing a monetary satisfaction is a judicial foreclosure. For reasons not entirely clear neither the appellee nor the court below seems to have pointed this out in *Clear Channel*. But California's judicial foreclosure statute provides precisely that result.

2. Furthermore, the Packo Sale Opposition concedes (Opposition at 4, n. 2), that *Clear Channel* is not mandatory authority, but at most persuasive authority. Judge Zurzolo has recognized this rule. *See, e.g., In re Locke*, 180 B.R. 245, 254 (Bankr. C.D. Cal. 1995) ("The decisions of the BAP are binding only on the judges whose orders have

7

been reversed or remanded by the BAP in that particular dispute. In all other instances, the decisions of the BAP are effective only to the extent they are persuasive.").

3. Several opinions have declined to follow *Clear Channel*. Note that some of the decisions cited below decline to follow *Clear Channel* in regard to off-point issues, such as its holding that the § 363(m) stay does not apply to the "free and clear" aspect of a sale under § 363(f), or the correct interpretation of section 363(f)(3).

    i. *In re Bos. Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010):

> As noted above, this Court declines to follow *Clear Channel*. Section 363(f)(5) does not require that the sale price for the property exceed the value of the interests. As recognized in a post-*Clear Channel* decision from a Bankruptcy Court in the Ninth Circuit, the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5). *See In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr.W.D.Wash.2009). Numerous legal and equitable procedures exist by which the Second Lien Lenders could be forced to accept less than full payment of the Second Lien Debt. Thus, the Court finds that because the Second Lien Lenders could be compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full, section 363(f)(5) is satisfied.

    ii. *In re Nashville Senior Living, LLC*, 407 B.R. 222, 231 (B.A.P. 6th Cir. 2009), *aff'd sub nom. In re Nashville Sr. Living, LLC*, 620 F.3d 584 (6th Cir. 2010) (citing a long line of cases that declined to follow *Clear Channel*, and concluding "Accordingly, Clear Channel appears to be an aberration in well-settled bankruptcy jurisprudence applying § 363(m) to the 'free and clear' aspect of a sale under § 363(f).")

    iii. *In re WK Lang Holdings, LLC*, No. 13-11934, 2013 WL 6579172, at *8 (Bankr. D. Kan. Dec. 11, 2013) (in declining to follow *Clear Channel*, noting that no court of appeal has adopted its holding that under § 363(f)(3) "the price of the property sold must be greater than the aggregate amount of all claims held by the lienholders" and that "the great weight of lower court authority is to the contrary" of the *Clear*

*Channel* holding). In regard to section 363(f)(5), *WK Lang* agrees with *Jolan* and undermines Packo's argument:

> The proposed sale meets the requirement of subsection (f)(5). This subsection allows the property to be sold free and clear of an entity's lien if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Midland's "interest" is an Article Nine security interest in personal property that, outside of bankruptcy, could be enforced by self-help or foreclosed in a court of appropriate jurisdiction. Midland could be compelled to accept less than payment in full of the debt in a state law foreclosure and, to the extent the proceeds of the foreclosure sale were insufficient to pay the claims in full, Midland would receive an unsecured deficiency or, if it wished, Midland could credit-bid up to the amount of its claim under at the foreclosure sale.

*WK Lang* at *8.

    iv.    *In re Gardens Reg'l Hosp. & Med. Ctr., Inc*., No. 2:16-BK-17463-ER, 2018 WL 1229989, at *5 (C.D. Cal. Jan. 19, 2018) (noting in regard to the section 363(m) issue that "BAP cases are not binding, and the Court is unpersuaded by the rationale of *Clear Channel*[,]" and citing several cases to the effect that the *Clear Channel* holding is an "aberration").

For the reasons set forth above, the Debtor requests that the Court grant the Sales Procedures Motion and any other relief as necessary.

Dated: November 29, 2021                **THE ORANTES LAW FIRM, P.C.**

                                               /s/ Giovanni Orantes
                                               Giovanni Orantes, Esq.
                                               Insolvency Counsel for Debtor and Debtor-in-Possession