JEFFREY K. GARFINKLE (SBN: 153496)
BUCHALTER, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email: jgarfinkle@buchalter.com

JULIAN I. GURULE (SBN: 252160)
BUCHALTER, a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: jgurule@buchalter.com

*Attorneys for Fleet Yards, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>JONG UK BYUN,<br><br>       Debtor. | Case No. 2:20-bk-17433 VZ<br><br>Chapter 11<br><br>**DECLARATION OF DANIEL OTTING IN SUPPORT OF FLEET YARDS, INC.'S (I) PRELIMINARY OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING SALE OF THE REAL PROPERTY AND (II) REQUEST FOR ADEQUATE PROTECTION PURSUANT TO SECTION 363(E)**<br><br>Date: December 9, 2021<br>Time: 11:00 a.m.<br>Ctrm: 1368<br>      Edward Roybal Building<br>      255 E. Temple Street<br>      Los Angeles, CA 90012 |

1. I, Daniel Otting, hereby declare under penalty of perjury:

2. I am an individual over the age of 18 and am competent to testify as to the facts set forth in this declaration. If called upon to testify, I could and would testify to the facts set forth in this declaration. I am authorized by Fleet Yards, Inc. ("Fleet Yards") to submit this declaration.

3. I am the Chief Executive Officer of Fleet Yards, which operates in the container transport and storage industry.

4. I offer this declaration in support of Fleet Yards' opposition to the sale motion filed by the above-captioned debtor and debtor-in-possession (the "Preliminary Objection"), which will be filed contemporaneously with this declaration. All capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the Preliminary Objection.

5. On August 24, 2020, Fleet Yards and, nominally, Central Metals, Inc. entered into that certain Commercial Lease Agreement (as defined in the Preliminary Objection, the "Fleet Yards Lease"). A true and correct copy of the Fleet Yards Lease is attached hereto as Exhibit A.

6. The Debtor's real estate broker, Century 21, represented both Central Metals and Fleet Yards in connection with the negotiation and execution of the Fleet Yards Lease.

7. Fleet Yards is currently in possession of the Property and operates its transport containers business on the premises. Fleet Yards' business would be substantially and negatively impacted if it loses possession of the Property and is forced to terminate its business at that location.

8. Fleet Yards is not a related party with respect to the Debtor or Central Metals and has no relationship with either party aside from the Fleet Yards Lease and Fleet Yards' possession of the Property.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 6, 2021, in Laguna Beach, California.

                                              */s/ Daniel Otting*
                                              Daniel Otting

# EXHIBIT A

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A


**CALIFORNIA ASSOCIATION OF REALTORS®**

**COMMERCIAL LEASE AGREEMENT**
(C.A.R. Form CL, Revised 12/15)

Date (For reference only): _August 24, 2020_

_____ _Central Metals Inc._ _____ ("Landlord") and
_____ _Fleet yards Inc._ _____ ("Tenant") agree as follows:

1. **PROPERTY:** Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: _8201 Santa Fe ave._ _Huntington Park Ca 90255_ ("Premises"), which comprise approximately _____ % of the total square footage of rentable space in the entire property. See exhibit _____ for a further description of the Premises.

2. **TERM:** The term begins on (date) _August 1, 2020_ ("Commencement Date").
   (Check A or B):
   ☒ A. **Lease:** and shall terminate on (date) _August 14, 2025_ at _12_ ☒ AM ☐ PM. Any holding over after the term of this agreement expires, with Landlord's consent, shall create a month-to-month tenancy that either party may terminate as specified in paragraph 2B. Rent shall be at a rate equal to the rent for the immediately preceding month, payable in advance. All other terms and conditions of this agreement shall remain in full force and effect.
   ☐ B. **Month-to-month:** and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other at least 30 days prior to the intended termination date, subject to any applicable laws. Such notice may be given on any date.
   ☐ C. **RENEWAL OR EXTENSION TERMS:** See attached addendum _____

3. **BASE RENT:**
   A. Tenant agrees to pay Base Rent at the rate of (CHECK ONE ONLY:)
   ☒ (1) $_94,286.61_ per month, for the term of the agreement.
   ☐ (2) $_____ per month, for the first 12 months of the agreement. Commencing with the 13th month, and upon expiration of each 12 months thereafter, rent shall be adjusted according to any increase in the U.S. Consumer Price Index of the Bureau of Labor Statistics of the Department of Labor for All Urban Consumers ("CPI") for _____ (the city nearest the location of the Premises), based on the following formula: Base Rent will be multiplied by the most current CPI preceding the first calendar month during which the adjustment is to take effect, and divided by the most recent CPI preceding the Commencement Date. In no event shall any adjusted Base Rent be less than the Base Rent for the month immediately preceding the adjustment. If the CPI is no longer published, then the adjustment to Base Rent shall be based on an alternate index that most closely reflects the CPI.
   ☐ (3) $_____ per month for the period commencing _____ and ending _____ and
       $_____ per month for the period commencing _____ and ending _____ and
       $_____ per month for the period commencing _____ and ending _____.
   ☐ (4) In accordance with the attached rent schedule.
   ☐ (5) Other: _Tenant pays 2 month in advance of 5 year lease agreement to landlord for 285,717 PSF @$0.33 PSF. Due the 15th of each month._
   B. Base Rent is payable in advance on the 1st (or ☐ _____ ) day of each calendar month, and is delinquent on the next day.
   C. If the Commencement Date falls on any day other than the first day of the month, Base Rent for the first calendar month shall be prorated based on a 30-day period. If Tenant has paid one full month's Base Rent in advance of Commencement Date, Base Rent for the second calendar month shall be prorated based on a 30-day period.

4. **RENT:**
   A. **Definition:** ("Rent") shall mean all monetary obligations of Tenant to Landlord under the terms of this agreement, except security deposit.
   B. **Payment:** Rent shall be paid to (Name) _Central Metals Inc._ at (address) _____, or at any other location specified by Landlord in writing to Tenant.
   C. **Timing:** Base Rent shall be paid as specified in paragraph 3. All other Rent shall be paid within 30 days after Tenant is billed by Landlord.

5. **EARLY POSSESSION:** Tenant is entitled to possession of the Premises on _____. If Tenant is in possession prior to the Commencement Date, during this time (i) Tenant is not obligated to pay Base Rent, and (ii) Tenant ☐ is ☐ is not obligated to pay Rent other than Base Rent. Whether or not Tenant is obligated to pay Rent prior to Commencement Date, Tenant is obligated to comply with all other terms of this agreement.

6. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay Landlord $_____ as a security deposit. Tenant agrees not to hold Broker responsible for its return. (IF CHECKED:) ☐ If Base Rent increases during the term of this agreement, Tenant agrees to increase security deposit by the same proportion as the increase in Base Rent.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent, late charges, non-sufficient funds ("NSF") fees, or other sums due; (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest or licensee of Tenant; (iii) broom clean the Premises, if necessary, upon termination of tenancy; and (iv) cover any other unfulfilled obligation of Tenant. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or any portion of the security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within 5 days after written notice is delivered to Tenant. Within 30 days after Landlord receives possession of the Premises, Landlord shall: (i) furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and (ii) return any remaining portion of security deposit to Tenant. However, if the Landlord's only claim upon the security deposit is for unpaid Rent, then the remaining portion of the security deposit, after deduction of unpaid Rent, shall be returned within 14 days after the Landlord receives possession.
   C. No interest will be paid on security deposit, unless required by local ordinance.

Landlord's Initials ( _[initials]_ ) ( _____ )    Tenant's Initials ( _DDFY_ ) ( _____ )

© 2015, California Association of REALTORS®, Inc.
**CL REVISED 12/15 (PAGE 1 OF 6)**

**COMMERCIAL LEASE AGREEMENT (CL PAGE 1 OF 6)**

Exhibit A, Page 4

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A

Premises: **8201 Santa Fe ave. Huntington Park Ca 90255**                                            Date **August 24, 2020**

7. **PAYMENTS:**

| | | TOTAL DUE | PAYMENT RECEIVED | BALANCE DUE | DUE DATE |
|---|---|---|---|---|---|
| A. | Rent: From **09/15/2020** To **11/14/2020** | $ **188,573.22** | $ | $ **188,573.22** | **08/07/2020** |
| B. | Security Deposit | $ | $ | $ | |
| C. | Other: **August 7 to Sept 7 prior lease 6.22 acres** (Category) | $ | $ **81,393.60** | $ **(81,393.60)** | **08/07/2020** |
| D. | Other: **Prorated 9/8-9/14 per day $3142.88** (Category) | $ **22,000.16** | $ | $ **22,000.16** | |
| E. | Total: | $ **210,573.38** | $ **81,393.60** | $ **129,179.78** | |

8. **PARKING:** Tenant is entitled to _____ unreserved and _____ reserved vehicle parking spaces. The right to parking ☒ is ☐ is not included in the Base Rent charged pursuant to paragraph 3. If not included in the Base Rent, the parking rental fee shall be an additional $ _____ per month. Parking space(s) are to be used for parking operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked in parking spaces or on the Premises. Mechanical work or storage of inoperable vehicles is not allowed in parking space(s) or elsewhere on the Premises. No overnight parking is permitted.

9. **ADDITIONAL STORAGE:** Storage is permitted as follows: _____
The right to additional storage space ☐ is ☐ is not included in the Base Rent charged pursuant to paragraph 3. If not included in Base Rent, storage space shall be an additional $ _____ per month. Tenant shall store only personal property that Tenant owns, and shall not store property that is claimed by another, or in which another has any right, title, or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, or other dangerous or hazardous material. Tenant shall pay for, and be responsible for, the clean-up of any contamination caused by Tenant's use of the storage area.

10. **LATE CHARGE; INTEREST; NSF CHECKS:** Tenant acknowledges that either late payment of Rent or issuance of a NSF check may cause Landlord to incur costs and expenses, the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within 5 calendar days after date due, or if a check is returned NSF, Tenant shall pay to Landlord, respectively, $ _____ as late charge, plus 10% interest per annum on the delinquent amount and $25.00 as a NSF fee, any of which shall be deemed additional Rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any late charge, delinquent interest, or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any late charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date Rent is due under paragraph 4, or prevent Landlord from exercising any other rights and remedies under this agreement, and as provided by law.

11. **CONDITION OF PREMISES:** Tenant has examined the Premises and acknowledges that Premise is clean and in operative condition, with the following exceptions: _____
Items listed as exceptions shall be dealt with in the following manner: _____

12. **ZONING AND LAND USE:** Tenant accepts the Premises subject to all local, state and federal laws, regulations and ordinances ("Laws"). Landlord makes no representation or warranty that Premises are now or in the future will be suitable for Tenant's use. Tenant has made its own investigation regarding all applicable Laws.

13. **TENANT OPERATING EXPENSES:** Tenant agrees to pay for all utilities and services directly billed to Tenant. _____

14. **PROPERTY OPERATING EXPENSES:**
   A. Tenant agrees to pay its proportionate share of Landlord's estimated monthly property operating expenses, including but not limited to, common area maintenance, consolidated utility and service bills, insurance, and real property taxes, based on the ratio of the square footage of the Premises to the total square footage of the rentable space in the entire property. *This section 14 It is Not Applicable pertaining to this lease. See addendum #1.*
OR B. ☐ (If checked) Paragraph 14 does not apply.

15. **USE:** The Premises are for the sole use as **Transportation containers and Trucks** _____
No other use is permitted without Landlord's prior written consent. If any use by Tenant causes an increase in the premium on Landlord's existing property insurance, Tenant shall pay for the increased cost. Tenant will comply with all Laws affecting its use of the Premises.

16. **RULES/REGULATIONS:** Tenant agrees to comply with all rules and regulations of Landlord (and, if applicable, Owner's Association) that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant do not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, or transporting illicit drugs or other contraband, or violate any law or ordinance, or committing a waste or nuisance on or about the Premises.

17. **MAINTENANCE:**
   A. Tenant OR ☐ (If checked, Landlord) shall professionally maintain the Premises including heating, air conditioning, electrical, plumbing and water systems, if any, and keep glass, windows and doors in operable and safe condition. Unless Landlord is checked, if Tenant fails to maintain the Premises, Landlord may contract for or perform such maintenance, and charge Tenant for Landlord's cost.
   B. Landlord OR ☐ (If checked, Tenant) shall maintain the roof, foundation, exterior walls, common areas and

Landlord's Initials ( ___ ) ( ___ )                                            Tenant's Initials ( DOFY ) ( ___ )
CL REVISED 12/15 (PAGE 2 OF 6)
**COMMERCIAL LEASE AGREEMENT (CL PAGE 2 OF 6)**

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A

Premises: _8201 Santa Fe ave. Huntington Park Ca 90255_ Date _August 24, 2020_

18. **ALTERATIONS:** Tenant shall not make any alterations in or about the Premises, including installation of trade fixtures and signs, without Landlord's prior written consent, which shall not be unreasonably withheld. Any alterations to the Premises shall be done according to Law and with required permits. Tenant shall give Landlord advance notice of the commencement date of any planned alteration, so that Landlord, at its option, may post a Notice of Non-Responsibility to prevent potential liens against Landlord's interest in the Premises. Landlord may also require Tenant to provide Landlord with lien releases from any contractor performing work on the Premises.

19. **GOVERNMENT IMPOSED ALTERATIONS:** Any alterations required by Law as a result of Tenant's use shall be Tenant's responsibility. Landlord shall be responsible for any other alterations required by Law.

20. **ENTRY:** Tenant shall make Premises available to Landlord or Landlord's agent for the purpose of entering to make inspections, necessary or agreed repairs, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers, tenants, mortgagees, lenders, appraisers, or contractors. Landlord and Tenant agree that 24 hours notice (oral or written) shall be reasonable and sufficient notice. In an emergency, Landlord or Landlord's representative may enter Premises at any time without prior notice.

21. **SIGNS:** Tenant authorizes Landlord to place a FOR SALE sign on the Premises at any time, and a FOR LEASE sign on the Premises within the 90 (or ☐ _____ ) day period preceding the termination of the agreement.

22. **SUBLETTING/ASSIGNMENT:** Tenant shall not sublet or encumber all or any part of Premises, or assign or transfer this agreement or any interest in it, without the prior written consent of Landlord, which shall not be unreasonably withheld. Unless such consent is obtained, any subletting, assignment, transfer, or encumbrance of the Premises, agreement, or tenancy, by voluntary act of Tenant, operation of law, or otherwise, shall be null and void, and, at the option of Landlord, terminate this agreement. Any proposed sublessee, assignee, or transferee shall submit to Landlord an application and credit information for Landlord's approval, and, if approved, sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one sublease, assignment, or transfer, shall not be construed as consent to any subsequent sublease, assignment, or transfer, and does not release Tenant of Tenant's obligation under this agreement.

23. **POSSESSION:** If Landlord is unable to deliver possession of Premises on Commencement Date, such date shall be extended to the date on which possession is made available to Tenant. However, the expiration date shall remain the same as specified in paragraph 2. If Landlord is unable to deliver possession within 60 (or ☐ _____ ) calendar days after the agreed Commencement Date, Tenant may terminate this agreement by giving written notice to Landlord, and shall be refunded all Rent and security deposit paid.

24. **TENANT'S OBLIGATIONS UPON VACATING PREMISES:** Upon termination of agreement, Tenant shall: (i) give Landlord all copies of all keys or opening devices to Premises, including any common areas; (ii) vacate Premises and surrender it to Landlord empty of all persons and personal property; (iii) vacate all parking and storage spaces; (iv) deliver Premises to Landlord in the same condition as referenced in paragraph 11; (v) clean Premises; (vi) give written notice to Landlord of Tenant's forwarding address; and (vii) _____.

All improvements installed by Tenant, with or without Landlord's consent, become the property of Landlord upon termination. Landlord may nevertheless require Tenant to remove any such improvement that did not exist at the time possession was made available to Tenant.

25. **BREACH OF CONTRACT/EARLY TERMINATION:** In event Tenant, prior to expiration of this agreement, breaches any obligation in this agreement, abandons the premises, or gives notice of tenant's intent to terminate this tenancy prior to its expiration, in addition to any obligations established by paragraph 24, Tenant shall also be responsible for lost rent, rental commissions, advertising expenses, and painting costs necessary to ready Premises for re-rental. Landlord may also recover from Tenant: (i) the worth, at the time of award, of the unpaid Rent that had been earned at the time of termination; (ii) the worth, at the time of award, of the amount by which the unpaid Rent that would have been earned after expiration until the time of award exceeds the amount of such rental loss the Tenant proves could have been reasonably avoided; and (iii) the worth, at the time of award, of the amount by which the unpaid Rent for the balance of the term after the time of award exceeds the amount of such rental loss that Tenant proves could be reasonably avoided. Landlord may elect to continue the tenancy in effect for so long as Landlord does not terminate Tenant's right to possession, by either written notice of termination of possession or by reletting the Premises to another who takes possession, and Landlord may enforce all Landlord's rights and remedies under this agreement, including the right to recover the Rent as it becomes due.

26. **DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, Landlord shall have the right to restore the Premises by repair or rebuilding. If Landlord elects to repair or rebuild, and is able to complete such restoration within 90 days from the date of damage, subject to the terms of this paragraph, this agreement shall remain in full force and effect. If Landlord is unable to restore the Premises within this time, or if Landlord elects not to restore, then either Landlord or Tenant may terminate this agreement by giving the other written notice. Rent shall be abated as of the date of damage. The abated amount shall be the current monthly Base Rent prorated on a 30-day basis. If this agreement is not terminated, and the damage is not repaired, then Rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of the Premises. If total or partial destruction or damage occurs as a result of an act of Tenant or Tenant's guests, (i) only Landlord shall have the right, at Landlord's sole discretion, within 30 days after such total or partial destruction or damage to treat the lease as terminated by Tenant, and (ii) Landlord shall have the right to recover damages from Tenant.

27. **HAZARDOUS MATERIALS:** Tenant shall not use, store, generate, release or dispose of any hazardous material on the Premises or the property of which the Premises are part. However, Tenant is permitted to make use of such materials that are required to be used in the normal course of Tenant's business provided that Tenant complies with all applicable Laws related to the hazardous materials. Tenant is responsible for the cost of removal and remediation, or any clean-up of any contamination caused by Tenant.

28. **CONDEMNATION:** If all or part of the Premises is condemned for public use, either party may terminate this agreement as of the date possession is given to the condemner. All condemnation proceeds, exclusive of those allocated by the condemner to Tenant's relocation costs and trade fixtures, belong to Landlord.

29. **INSURANCE:** Tenant's personal property, fixtures, equipment, inventory and vehicles are not insured by Landlord against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is to carry Tenant's own property insurance to protect Tenant from any such loss. In addition, Tenant shall carry (i) liability insurance in an amount of not less than $_____ and (ii) property insurance in an amount sufficient to cover the replacement cost of the property if Tenant is responsible for maintenance under paragraph 17B. Tenant's insurance shall name Landlord and Landlord's agent as additional insured. Tenant, upon Landlord's request, shall provide Landlord with a certificate of insurance establishing Tenant's compliance. Landlord shall maintain liability insurance insuring Landlord, but not Tenant, in an amount of at least $_____, plus property insurance in an amount sufficient to cover the replacement cost of the property unless Tenant is responsible for maintenance pursuant to paragraph 17B. Tenant is advised to carry business interruption insurance in an amount at least sufficient to cover Tenant's complete rental obligation to Landlord. Landlord is advised to obtain a policy of rental loss insurance. Both Landlord and Tenant release each other, and waive their respective rights to subrogation against each other, for loss or damage covered by insurance.

Landlord's Initials (✗) (_____)       Tenant's Initials (DF) (_____)

CL REVISED 12/15 (PAGE 3 OF 6)

**COMMERCIAL LEASE AGREEMENT (CL PAGE 3 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        8201 Santa Fe

Exhibit A, Page 6

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A



# DISCLOSURE REGARDING
# REAL ESTATE AGENCY RELATIONSHIP
(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b) A duty of honest and fair dealing and good faith.
   (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☐ Seller ☒ Landlord ☐ Tenant _____ Central Metals, Inc. _____ Date 8-24-2020

☐ Buyer ☐ Seller ☐ Landlord ☒ Tenant _____ Dan Otting - Fleet Yards _____ Date 8/25/2020
FLEET YARD

Agent Century 21 Allstars DRE Lic. # 01280965
Real Estate Broker (Firm)
By _____ DRE Lic. # 01971402/01363650/01949822 Date 8/24/20
(Salesperson or Broker-Associate, if any) D. Von Puschendorf, L. Chavez, S. Madrigal

© 1991-2018, California Association of REALTORS®, Inc.
**AD REVISED 12/18 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Century 21 Allstars, 9155 Telegraph Rd Pico Rivera CA 90660    Phone: (562)861-2121    Fax: (562)863-3275    8201 Santa Fe
Dieter Von Puschendorf    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A68A

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions.
(b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY___ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent ___DO NOT COMPLETE. SAMPLE ONLY___ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm ___DO NOT COMPLETE. SAMPLE ONLY___ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent ___DO NOT COMPLETE. SAMPLE ONLY___ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/18 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        8261 Santa Fe

Premises: <u>8201 Santa Fe ave. Huntington Park Ca 90255</u>　　　　　　　　　　　　　　　Date <u>August 24, 2020</u>

30. **TENANCY STATEMENT (ESTOPPEL CERTIFICATE):** Tenant shall execute and return a tenancy statement (estoppel certificate), delivered to Tenant by Landlord or Landlord's agent, within 3 days after its receipt. The tenancy statement shall acknowledge that this agreement is unmodified and in full force, or in full force as modified, and state the modifications. Failure to comply with this requirement: (i) shall be deemed Tenant's acknowledgment that the tenancy statement is true and correct, and may be relied upon by a prospective lender or purchaser; and (ii) may be treated by Landlord as a material breach of this agreement. Tenant shall also prepare, execute, and deliver to Landlord any financial statement (which will be held in confidence) reasonably requested by a prospective lender or buyer.

31. **LANDLORD'S TRANSFER:** Tenant agrees that the transferee of Landlord's interest shall be substituted as Landlord under this agreement. Landlord will be released of any further obligation to Tenant regarding the security deposit, only if the security deposit is returned to Tenant upon such transfer, or if the security deposit is actually transferred to the transferee. For all other obligations under this agreement, Landlord is released of any further liability to Tenant, upon Landlord's transfer.

32. **SUBORDINATION:** This agreement shall be subordinate to all existing liens and, at Landlord's option, the lien of any first deed of trust or first mortgage subsequently placed upon the real property of which the Premises are a part, and to any advances made on the security of the Premises, and to all renewals, modifications, consolidations, replacements, and extensions. However, as to the lien of any deed of trust or mortgage entered into after execution of this agreement, Tenant's right to quiet possession of the Premises shall not be disturbed if Tenant is not in default and so long as Tenant pays the Rent and observes and performs all of the provisions of this agreement, unless this agreement is otherwise terminated pursuant to its terms. If any mortgagee, trustee, or ground lessor elects to have this agreement placed in a security position prior to the lien of a mortgage, deed of trust, or ground lease, and gives written notice to Tenant, this agreement shall be deemed prior to that mortgage, deed of trust, or ground lease, or the date of recording.

33. **TENANT REPRESENTATIONS; CREDIT:** Tenant warrants that all statements in Tenant's financial documents and rental application are accurate. Tenant authorizes Landlord and Broker(s) to obtain Tenant's credit report at time of application and periodically during tenancy in connection with approval, modification, or enforcement of this agreement. Landlord may cancel this agreement: (i) before occupancy begins, upon disapproval of the credit report(s); or (ii) at any time, upon discovering that information in Tenant's application is false. A negative credit report reflecting on Tenant's record may be submitted to a credit reporting agency, if Tenant fails to pay Rent or comply with any other obligation under this agreement.

34. **CONSTRUCTION-RELATED ACCESSIBILITY STANDARDS:** Landlord states that the Premises ☐ has, or ☐ has not been inspected by a Certified Access Specialist. If so, Landlord states that the Premises ☐ has, or ☐ has not been determined to meet all applicable construction-related accessibility standards pursuant to Civil Code Section 55.53.

35. **DISPUTE RESOLUTION:**
    A. **MEDIATION:** Tenant and Landlord agree to mediate any dispute or claim arising between them out of this agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 35B(2) below. Paragraphs 35B(2) and (3) apply whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
    B. **ARBITRATION OF DISPUTES:** (1) Tenant and Landlord agree that any dispute or claim in Law or equity arising between them out of this agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 35B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of real estate transactional law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. In all other respects, the arbitration shall be conducted in accordance with Part III, Title 9 of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05.
    (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from Mediation and Arbitration hereunder: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court; and (v) an action for bodily injury or wrongful death, or for latent or patent defects to which Code of Civil Procedure §337.1 or §337.15 applies. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a violation of the mediation and arbitration provisions.
    (3) **BROKERS:** Tenant and Landlord agree to mediate and arbitrate disputes or claims involving either or both Brokers, provided either or both Brokers shall have agreed to such mediation or arbitration, prior to, or within a reasonable time after the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Landlord's Initials ( ✗ ) (　 )　　　Landlord's Initials ( ✗ )　　　Tenant's Initials ( DOEU )
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Tenant's Initials ( DOEU ) ( 　 )

CL REVISED 12/15 (PAGE 4 OF 6)

COMMERCIAL LEASE AGREEMENT (CL PAGE 4 OF 6)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      8201 Santa Fe

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A

Premises: _8201 Santa Fe ave. Huntington Park Ca 90255_____ Date _August 24, 2020_

36. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this agreement, jointly with every other Tenant, and individually, whether or not in possession.

37. **NOTICE:** Notices may be served by mail, facsimile, or courier at the following address or location, or at any other location subsequently designated:

Landlord: _____    Tenant: _____

Notice is deemed effective upon the earliest of the following: (i) personal receipt by either party or their agent; (ii) written acknowledgement of notice; or (iii) 5 days after mailing notice to such location by first class mail, postage pre-paid.

38. **WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same breach or a waiver of any subsequent breach.

39. **INDEMNIFICATION:** Tenant shall indemnify, defend and hold Landlord harmless from all claims, disputes, litigation, judgments and attorney fees arising out of Tenant's use of the Premises.

40. **OTHER TERMS AND CONDITIONS/SUPPLEMENTS:** _1. This new lease is for 6.559 acres (285,717 PSF) while obtaining CUP from LA county for storage of trailers. Once obtained CUP tenant will use & lease the full property acreage 11.271 acres (490,991) sq ft._
_2. Tenant will lease 5 years & have the option to extend 5 more year lease with 11.271 acres w/obtained CUP plus the option to purchase before or after 5 years lease w/the services leasing agents S. Madrigal Jr, D. von Puschendorf & Louis Chavez for tenant & landlord._
_3. The tenant to lease at $.033 per sq ft from landlord 1st 5 year lease & tenant's option to do a 5 more years extension with rent increase per sq. ft. rate is based on CPI (consumer price index) to pay rate at that time w/CUP approved. All monthly lease payments to be paid via wire on the 15th of each month & to pay 2 months advance 1st 5 yrs. The landlord & tenant's to use leasing agents S. Madrigal Jr, D. von Puschendorf & Louis Chavez._
_4. Tenant has first right to purchase or refusal of the property. S. Madrigal Jr, D. von Puschendorf & L. Chavez will represent Tenant/Buyer & landlord/seller. Tenant can lease more land if needed. See the attached addendum #1 made 08-24-20 for point #8 & #9._
_5. The landlord will be responsible for all brokerage costs. Also this lease meant to replace/terminate existing 2 year lease of 6.559 acres_
_6. Landlord is responsible for any past and or on going city and or county code corrections or violations related to the property._
_7. Tenant will not get penalized by landlord if for some reason the city/county will not allowed tenant to use all acres leased while tenant is working on obtaining a CUP from city/county. Allowing tenant to reduce the acreage per city allowed compliance to use at that time. Also to adjust leased monthly fee accordingly to the acres. If any advance payment made to the landlord to credit back to the tenant._

The following ATTACHED supplements/exhibits are incorporated in this agreement: ☐ Option Agreement (C.A.R. Form OA)
Continuation of other terms and conditions/supplements:
_For section 40 point #8 & #9 please see the attached addendum #1 made on 08-24-20._

41. **ATTORNEY FEES:** In any action or proceeding arising out of this agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs from the non-prevailing Landlord or Tenant, except as provided in paragraph 35A.

42. **ENTIRE CONTRACT:** Time is of the essence. All prior agreements between Landlord and Tenant are incorporated in this agreement, which constitutes the entire contract. It is intended as a final expression of the parties' agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The parties further intend that this agreement constitutes the complete and exclusive statement of its terms, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving this agreement. Any provision of this agreement that is held to be invalid shall not affect the validity or enforceability of any other provision in this agreement. This agreement shall be binding upon, and inure to the benefit of, the heirs, assignees and successors to the parties.

43. **BROKERAGE:** Landlord and Tenant shall each pay to Broker(s) the fee agreed to, if any, in a separate written agreement. Neither Tenant nor Landlord has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as named in this agreement, in connection with any act relating to the Premises, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this agreement. Tenant and Landlord each agree to indemnify, defend and hold harmless the other, and the Brokers specified herein, and their agents, from and against any costs, expenses, or liability for compensation claimed inconsistent with the warranty and representation in this paragraph 43.

44. **AGENCY CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent: _____ _Century 21 Allstars_ _____ (Print Firm Name) is the agent of (check one):
☐ the Landlord exclusively; or ☒ both the Tenant and Landlord.
Selling Agent: _____ _Century 21 Allstars_ _____ (Print Firm Name) (if not same as Listing Agent) is the agent of (check one):
☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.
Real Estate Brokers are not parties to the agreement between Tenant and Landlord.

Landlord's Initials (___) (___)    Tenant's Initials (_DV_) (___)

CL REVISED 12/15 (PAGE 5 OF 6)

**COMMERCIAL LEASE AGREEMENT (CL PAGE 5 OF 6)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    8201 Santa Fe

DocuSign Envelope ID: 8D945FF8-1494-4AEF-9FED-F1DD04E5A88A

Premises: __8201 Santa Fe ave. Huntington Park Ca 90255_____ Date __August 24, 2020__

> Landlord and Tenant acknowledge and agree that Brokers: (i) do not guarantee the condition of the Premises; (ii) cannot verify representations made by others; (iii) will not verify zoning and land use restrictions; (iv) cannot provide legal or tax advice; (v) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this agreement, Brokers: (vi) do not decide what rental rate a Tenant should pay or Landlord should accept; and (vii) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance, and other desired assistance from appropriate professionals.

Tenant _/s/ Dan Olling - Fleet Yards_____ Date __8/25/2020__
_Fleet Yards Inc_____
(Print name)
Address _____ City _____ State ____ Zip ____

Tenant _____ Date _____
(Print name)
Address _____ City _____ State ____ Zip ____

☐ GUARANTEE: In consideration of the execution of this Agreement by and between Landlord and Tenant and for valuable consideration, receipt of which is hereby acknowledged, the undersigned ("Guarantor") does hereby: (i) guarantees unconditionally to Landlord and Landlord's agents, successors and assigns, the prompt payment of Rent or other sums that become due pursuant to this Agreement, including any and all court costs and attorney fees included in enforcing the Agreement; (ii) consent to any changes, modifications or alterations of any term in this Agreement agreed to by Landlord and Tenant; and (iii) waive any right to require Landlord and/or Landlord's agents to proceed against Tenant for any default occurring under this Agreement before seeking to enforce this Guarantee.

Guarantor (Print Name) _____
Guarantor _____ Date _____
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

Landlord agrees to rent the Premises on the above terms and conditions.
Landlord _/s/_____ Date __8-24-2020__
(owner or agent with authority to enter into this agreement) Central Metals Inc.
Address _____ City _____ State ____ Zip ____

Landlord _____ Date _____
(owner or agent with authority to enter into this agreement)
Address _____ City _____ State ____ Zip ____

Agency relationships are confirmed as above. Real estate brokers who are not also Landlord in this agreement are not a party to the agreement between Landlord and Tenant.

Real Estate Broker (Leasing Firm) __Century 21 Allstars__ DRE Lic. # __01280965__
By (Agent) _/s/_____ DRE Lic. # __01971402/01363650/0194__ Date __8/24/20__
Dieter Von Puschendorf, Silvestre Madrigal Jr & Louis Chavez
Address __9155 Telegraph Rd__ City __Pico Rivera__ State __CA__ Zip __90660__
Telephone __(714)349-6649__ Fax __(562)863-3275__ E-mail __dvpworld@gmail.com__

Real Estate Broker (Listing Firm) __Century 21 Allstars__ DRE Lic. # __01280965__
By (Agent) _/s/_____ DRE Lic. # __01971402/01363650/0194__ Date __8/24/20__
D. Von Puschendorf, L. Chavez, S. Madrigal
Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

© 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CL REVISED 12/15 (PAGE 6 OF 6)
COMMERCIAL LEASE AGREEMENT (CL PAGE 6 OF 6)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   8201 Santa Fe

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A



**CALIFORNIA ASSOCIATION OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. _1_

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other _Commercial industrial land new lease continuation of other terms and conditions/supplements_
dated _____, on property known as _8201 Santa Fe Ave_
_Huntington Park, CA 90255_
in which _Fleet Yards Inc._ is referred to as ("Buyer/Tenant")
and _Central Metals Inc._ is referred to as ("Seller/Landlord").

Continuation of other terms and conditions/supplements from section 40 of Commercial Lease agreement page 5 of 6:

8- In the event that, through no fault of Tenant, and despite Tenant's diligent, continuous good-faith efforts, Tenant is unable to procure a Conditional Use Permit ("CUP") for the Premises, or Tenant is prohibited from engaging in trucking-related activities in the Premises by the City of Huntington Park, the County of Los Angeles, or any other governmental agency, any law or ordinance is enacted or changed, with the result that Tenant cannot conduct its business in the Premises for the Agreed Use, or any other use that Tenant, in its good faith judgment, determines to engage in at the Premises, or if the requirements of the CUP are not economically feasible, Tenant shall have the right to terminate this Lease by giving Landlord thirty (30) days' written notice of such termination. Notwithstanding the foregoing, Landlord shall may, at its option, elect to assist Tenant with obtaining issuance of the required permits within such thirty (30) day period, and if Landlord is able to do so, the termination shall be deemed null and void. Landlord shall be responsible for all CUP fees.

9- Tenant will be performing all maintenance and will not be paying CAMs Common Area Maintenance; Landlord to pay property taxes and insurance.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _8/25/2020_    Date _8-24-2020_
Buyer/Tenant _Dan Alling - Fleet Yards_ (Fleet Yards Inc.)    Seller/Landlord _[signature]_ (Central Metals Inc.)
Buyer/Tenant _____    Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/15 (PAGE 1 OF 1)
ADDENDUM (ADM PAGE 1 OF 1)

Century 21 Allstars, 9155 Telegraph Rd Pico Rivera CA 90660    Phone: (562)863-2121    Fax: (562)863-3275    8201 Santa Fe
Dieter Von Paschendorf    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

DocuSign Envelope ID: 8D945FFB-1494-4AEF-9FED-F1DD04E5A88A



# CALIFORNIA ASSOCIATION OF REALTORS®

## COMMERCIAL LEASE CONSTRUCTION ACCESSIBILITY ADDENDUM
(C.A.R. Form CLCA 11/16)

This is an addendum to the Commercial Lease Agreement (lease) dated __August 24, 2020__
in which __Central Metals Inc.__ is referred to as "Landlord"
and __Fleet Yards Inc.__ is referred to as "Tenant".
Paragraph 34 of the lease is deleted in its entirety and replaced by the following:

**Paragraph 34. CONSTRUCTION-RELATED ACCESSIBILITY STANDARDS:**

A. Landlord states that the Premises ☐ have, or ☒ have not been inspected by a Certified Access Specialist (CASp).
B. If the Premises have been inspected by a CASp,
   (1) Landlord states that the Premises ☐ have, or ☐ have not been determined to meet all applicable construction-related accessibility standards pursuant to Civil Code Section 55.53. Landlord shall provide Tenant a copy of the report prepared by the CASp (and, if applicable a copy of the disability access inspection certificate) as specified below.
   (2) ☐ (i) Tenant has received a copy of the report at least 48 hours before executing this lease. Tenant has no right to rescind the lease based upon information contained in the report.
   OR ☐ (ii) Tenant has received a copy of the report prior to, but no more than, 48 hours before, executing this lease. Based upon information contained in the report, Tenant has 72 hours after execution of this lease to rescind it.
   OR ☐ (iii) Tenant has not received a copy of the report prepared by the CASp prior to execution of this lease. Landlord shall provide a copy of the report prepared by the CASp (and, if applicable a copy of the disability access inspection certificate) within 7 days after execution of this lease. Tenant shall have up to 3 days thereafter to rescind the lease based upon information in the report.
C. If the Premises have not been inspected by a CASp or a certificate was not issued by the CASp who conducted the inspection,
   "A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises."
D. Notwithstanding anything to the contrary in paragraph 17, 18, 19 or elsewhere in the lease, any repairs or modifications necessary to correct violations of construction related accessibility standards are the responsibility of Tenant, ☒ Landlord, ☐ Other _____.

Tenant (Signature) _[signature]_ Date 8/25/2020
Tenant (Print name) __Fleet Yards Inc.__

Tenant (Signature) _____ Date _____
Tenant (Print name) _____

Landlord (Signature) _[signature]_ Date 8-24-2020
Landlord (Print name) __Central Metals Inc.__

Landlord (Signature) _____ Date _____
Landlord (Print name) _____

© 2016, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CLCA 11/16 (PAGE 1 OF 1)
**COMMERCIAL LEASE CONSTRUCTION ACCESSIBILITY ADDENDUM (CLCA PAGE 1 OF 1)**

Century 21 Allstars, 9155 Telegraph Rd Pico Rivera CA 90660    Phone: (562)863-2121    Fax: (562)863-3275    8201 Santa Fe
Dieter Von Peschendorf    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: BUCHALTER, 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF DANIEL OTTING IN SUPPORT OF FLEET YARDS, INC.'S (I) PRELIMINARY OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING SALE OF THE REAL PROPERTY AND (II) REQUEST FOR ADEQUATE PROTECTION PURSUANT TO SECTION 363(E)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/6/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 12/6/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| Debtor: | United States Trustee (LA) | Hon. Vincent P. Zurzolo |
|---|---|---|
| Jong Uk Byun | Attn: Kelly L. Morrison | U.S. Bankruptcy Court |
| 8201 Santa Fe Ave. | 915 Wilshire Blvd, Suite 1850 | Roybal Fed. Bldg. |
| Huntington Park, CA 90255 | Los Angeles, CA 90017 | 255 E. Temple St., Ste. 1360 |
| | | Los Angeles, CA 90012 |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/6/2021 | Shirlene Martin | */s/ Shirlene Martin* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*        **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Katrina M Brown    kbrown@pskbfirm.com
- Shirley Cho    scho@pszjlaw.com
- Theron S Covey    theronscovey@hotmail.com, sferry@raslg.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Hal D Goldflam    hgoldflam@frandzel.com, dmoore@frandzel.com
- Michael S Greger    mgreger@allenmatkins.com, kpreston@allenmatkins.com
- Carrie V Hardman    chardman@winston.com
- M. Jonathan Hayes    jhayes@rhmfirm.com, roksana@rhmfirm.com;matt@rhmfirm.com;rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra@rhmfirm.com;rosario@rhmfirm.com
- Richard Holm    rholm@omm.com, richard-holm-1054@ecf.pacerpro.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com
- Evan M Jones    ejones@omm.com, evan-jones-5677@ecf.pacerpro.com
- Michael T Leary    MTLeary@winston.com, ecf_sf@winston.com;mike-leary-2899@ecf.pacerpro.com;pacercourtfile@winston.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kelly L Morrison    kelly.l.morrison@usdoj.gov
- Giovanni Orantes    go@gobklaw.com, gorantes@orantes-law.com,cmh@gobklaw.com,gobklaw@gmail.com,go@ecf.inforuptcy.com;orantesgr89122@notify.bestcase.com
- Daniel E Park    dpark@parksylvalaw.com
- Valerie Smith    claims@recoverycorp.com
- Derrick Talerico    dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Roye Zur    rzur@elkinskalt.com, cavila@elkinskalt.com;myuen@elkinskalt.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                         **F 9013-3.1.PROOF.SERVICE**