UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION


IN RE:                        )    CASE NO: 2:20-bk-17433-VZ
                              )    CHAPTER  11
                              )
JONG UK BYUN,                 )    Los Angeles, California
                              )
                              )    Thursday, December 9, 2021
         Debtor.             )
_____ )    11:00 a.m.


#4 - MOTION HEARING


BEFORE THE HONORABLE VINCENT ZURZOLO,
UNITED STATES BANKRUPTCY JUDGE


CALENDARED MOTION:      See page 2


APPEARANCES:            See Pages 2, 3, 4


Court Recorder [ECRO]:   Shemainee Carranza
                         855 460-9641


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>CALENDARED MOTION</u>:


### #4 - MOTION FOR ORDER
(1) APPROVING THE SALE OF THE REAL PROPERTY, SUBJECT TO
OVERBIDDING PROCEDURES PURSUANT TO 11 USC SECTION 363;
(2) AUTHORIZING THAT SUCH SALE BE FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS, AND ENCUMBRANCES OF ANY NATURE WHATSOEVER
PURSUANT TO 11 USC SECTION 363;
(3) EXTINGUISHING EXISTING LEASE;
(4) REJECTING ALL OTHER EXECUTORY CONTRACTS AND UNEXPIRED
LEASES;
(5) AUTHORIZING PAYMENT DIRECTLY OUT OF ESCROW OF THE CLAIM
OF HYUNDAI STEEL COMPANY, ESCROW COSTS, BROKERS FEE AND LIENS
SENIOR TO THE LIENS OF HYUNDAI STEEL COMPANY;
(6) FINDING THAT BUYER IS A GOOD-FAITH BUYER ENTITLED TO THE
PROTECTIONS OF SECTION 363(M) OF THE BANKRUPTCY CODE;
(7) WAIVING THE FOURTEEN-DAY STAY PROVISION
OF BANKRUPTCY RULE 6004;
(8) APPROVING COMPROMISE AND CONTROVERSY WITH HYUNDAI STEEL
COMPANY AND AUTHORIZING GENERAL MUTUAL RELEASES;
AND, (9) GRANTING OTHER RELIEF IT DEEMS JUST AND APPROPRIATE
[DKT.NO.379]



<u>APPEARANCES FOR</u>:


Debtor:                        GIOVANNI ORANTES, ESQ.
                               Orantes Law Firm, PC
                               3435 Wilshire Blvd.
                               Suite 2920
                               Los Angeles, CA 90010
                               888-619-8222


Hyundai Steel Company:         EVAN M. JONES, ESQ.
                               RICHARD HOLM, ESQ.
                               O'Melveny & Myers, LLP
                               400 S. Hope Street
                               Los Angeles, CA 90071
                               213-430-8313


Also present:                  AISLING MURRAY, ESQ.
                               YOUNGWOOK SHIN, ESQ.
                               BRIAN KENYAN

**APPEARANCES FOR:**          (CONTINUED)


Toni Ko:                     SHIRLEY CHO, ESQ.
                             Pachulski Stang Ziehl & Jones, LLP
                             10100 Santa Monica Blvd.
                             13th Floor
                             Los Angeles, CA 90067
                             310-277-6910


Packo Investments,           DAVID W. MEADOWS, ESQ.
et al.:                      1801 Century Park East
                             Suite 1235
                             Los Angeles, CA 90067
                             310-557-8490


Thor Acquisition West:       MICHAEL S. GREGER, ESQ.
                             Allen Matkins, LLP
                             1900 Main Street
                             5th Floor
                             Irvine, CA 92614
                             949-553-1313

                             STEVEN A. COHEN, ESQ.
                             Wachtell Lipton, et al.
                             51 West 52nd Street
                             New York, NY 10019
                             212.403.1347

Also present:                GREG BERMAN
                             Senior VP Thor Equities


Richard Marshack:            ROBERT P. GOE, ESQ.
                             Goe Forsythe & Hodges, LLP
                             18101 Von Karman
                             Suite 1200
                             Irvine, CA 92612


North Palisade               ERIC D. GOLDBERG, ESQ.
Partners:                    DLA Piper LLP (US)
                             2000 Avenue of the Stars
                             Suite 400 North Tower
                             Los Angeles, California
                             310-595-3085

**APPEARANCES FOR:**           (CONTINUED)


Fleet Yards, Inc.:        JULIAN GURULE, ESQ.
                          Buchalter
                          18400 Von Karman Ave.
                          Suite 800
                          Irvine, CA 92612
                          949-760-1121


8201 Santa Fe, LLC:       SCOTT B. COHEN, ESQ.
                          Engelman Berger, P.C.
                          2800 North Central Avenue
                          Suite 1200
                          Phoenix, AZ 85004
                          602-271-9090

Also present:             ERIC CROCKER
                          JASON BERG


WM Capital Partners:      ROYE ZUR, ESQ.
                          Elkins Kalt, et al.
                          10345 W. Olympic Blvd.
                          Los Angeles, CA 90064
                          310-746-4400

Also present:             SCOTT WHITWORTH


ACI VI Santa Fe, LLC:     JACQUELINE L. JAMES, ESQ.
                          Cox Castle Nicholson
                          2029 Century Park East
                          Suite 2100
                          Los Angeles, CA 90067
                          310-284-2214

Also present:             JEFFREY GOLDBERGER


Antonio Bernard Whitley: NOAH R. BALCH, ESQ.

1 | __Los Angeles, California; Thursday, December 9, 2021; 11:00 a.m.__

2 | **(Call to order)**

3 | **THE COURT:**  This is a motion for an order approving a

4 | sale and seeking approval of a compromise of controversy, and

5 | other forms of relief in the Jong Uk Byun bankruptcy case.  So

6 | may I please first have an appearance on behalf of the moving

7 | party?

8 | **MR. ORANTES:**  Good morning, Your Honor.  This is

9 | Giovanni Orantes of Orantes Law Firm on behalf of the Debtor

10 | and debtor in possession.

11 | **THE COURT:**  Okay.  Good morning.  Next can I please

12 | have --

13 | **MR. SPEAKER:**  Can't hear anything.  I wonder what's

14 | going on.

15 | **THE COURT:**  -- the -- an appearance on behalf of

16 | Hyundai Steel Company?

17 | **MR. SPEAKER:**  My speaker is not on.

18 | **MR. JONES:**  Good morning, Your Honor.  Evan Jones and

19 | Richard --

20 | **MR. SPEAKER:**  Do you --

21 | **MR. JONES:**  -- Holm in the courtroom from O'Melveny

22 | and Myers.  Your Honor, we also have on the phone --

23 | **MR. SPEAKER:**  (Indisc.) earlier.

24 | **MR. JONES:**  -- with us my colleague Ms. Murray and --

25 | **MR. SPEAKER:**  (Indisc.) anything.  That's the funny

6

1  thing.

2          **MR. JONES:**  -- my colleague Brian Kenyon who the --

3          **MR. SPEAKER:**  Something I haven't tested anyway.

4          **THE COURT:**  Excuse me.  Someone on the phone does not

5  have their mute button pushed.  So please everyone who's on the

6  phone --

7          **MR. SPEAKER:**  Well, but the judge is sitting out

8  there.  It should --

9          **THE COURT:**  Everyone who's on the phone, you need to

10  mute yourself before you --

11          **MR. SPEAKER:**  That's weird.

12          **THE COURT:**  -- embarrass yourself --

13          **MR. SPEAKER:**  We should.

14          **THE COURT:**  -- even further.

15          **MR. SPEAKER:**  He's still speaking into the mic.

16          **THE COURT:**  Life in the twenty-first century.

17          **MR. SPEAKER:**  Oh, no.  Hold on a second.  Hello.

18          **THE COURT:**  May I ask who's saying hello?

19          **MR. SPEAKER:**  I don't hear anything.

20          **THE COURT:**  Can you see who's talking, recorder?  Who

21  is it?

22          **MS. SPEAKER:**  Jeff.

23          **THE COURT:**  Sorry?

24          **MS. SPEAKER:**  It's Jeff.

25          **THE COURT:**  It's in -- from chambers?  Okay.  All

1   right.  I think we've controlled that problem.  Okay.  Let's

2   start over again.

3           **MR. JONES:**  Thank you.

4           **THE COURT:**  Okay.  So you're about to tell me about

5   your colleague on the phone.

6           **MR. JONES:**  Yes, Your Honor.  On the phone I have

7   Ms. Murray as well as Mr. Kenyon, who's a real estate attorney

8   involved in this matter.  I'd also note for the record, Your

9   Honor, my colleague Youngwook Shin, who is in Seoul, is sitting

10  in a conference room with our clients.  And it's 4:00 a.m. in

11  Seoul so that's --

12          **THE COURT:**  I was just going to ask --

13          **MR. JONES:**  -- how important this is.

14          **THE COURT:**  Yeah.  Okay.

15          **MR. JONES:**  It's --

16          **THE COURT:**  Thank you very much.

17          **MR. JONES:**  Thank you, Your Honor.

18          **THE COURT:**  You're welcome.  Do we have an appearance

19  on behalf of Toni Ko?

20      (No audible response)

21          And I thank you all for spacing yourselves out.

22          **MS. CHO:**  Good morning, Your Honor.  Shirley Cho of

23  Pachulski, Stang, Ziehl, and Jones for Ms. Ko.

24          **THE COURT:**  Good morning.  Okay.  Next, on behalf of

25  Packo Investments and related parties.

1          **MR. MEADOWS:**  Good morning, Your Honor, David Meadows

2    appearing on behalf of certain junior secured creditors, which

3    are Packo Investments, Mr. Allen Park, Mr. Mohamed Sanfaz, and

4    the BAE Family Trust.

5          **THE COURT:**  Good morning.

6          **MR. MEADOWS:**  Thank you.

7          **THE COURT:**  Okay.  Next, on behalf of Thor

8    Acquisitions, please.

9          **MR. SPEAKER:**  On I think it's best --

10         **THE COURT:**  Let's --

11         **MR. SPEAKER:**  -- if we start --

12         **THE COURT:**  Let's pause.

13         **MR. SPEAKER:**  -- your hosting --

14         **THE COURT:**  Stay on the record.

15         **MR. SPEAKER:**  -- in January.

16         **THE COURT:**  (Indisc.)

17         **MR. SPEAKER:**  Not next week.  That -- practice time

18   and also we can post the stuff on the website.  We could set up

19   a recurring meeting where right now --

20      **(Recess taken from 11:03 a.m. to 11:04 a.m.)**

21         **THE CLERK:**  Court is one against -- once again in

22   session.

23         **THE COURT:**  Okay.  That proves you should never think

24   you're not being heard by someone somewhere in the world.

25         Okay.  Thor Acquisition, please.

1          **MR. GREGER:**  Good morning, Your Honor, Michael Greger

2    of Allen Matkins of Allen, Matkins, Leck, Gamble, Mallory, and

3    Natsis on behalf of Thor Acquisition West, LLC.  Your Honor, my

4    co-counsel Steven Cohen at the Wachtel Missry LLP firm is also

5    on the line.  He has been admitted pro hac vice in this matter.

6    In addition, Mr. Greg Berman, a Senior Vice President of Thor,

7    is on the line as well for participation in the auction.

8          **THE COURT:**  Okay.  Thank you very much.

9          **MR. GREGER:**  Thank you, Your Honor.

10         **THE COURT:**  Next, on behalf of Richard Marshack.

11         **MR. GOE:**  Yeah, Robert Goe of Goe, Forsythe, and

12    Hodges on behalf of Chapter 7 Trustee Richard Marshack, just

13    monitoring the hearing, Your Honor.

14         **THE COURT:**  Okay.  Good morning.  And then we have

15    North Palisades Partners.

16         **MR. GOLDBERG:**  Good morning, Your Honor, Eric

17    Goldberg of DLA Piper for North Palisade Partners.

18         **THE COURT:**  Good morning.  And then on behalf of

19    Fleet Yards, Incorporated.

20         **MR. GURULE:**  Good morning, Your Honor, Julian Gurule

21    of Buchalter for Fleet Yards, Inc.

22         **THE COURT:**  Good morning.

23         **MR. GURULE:**  Good morning.

24         **THE COURT:**  And then we have 8201 Santa Fe, LLC.

25         **MR. SCOTT COHEN:**  Good morning, Your Honor, Scott

1   Cohen appearing on behalf of 8201 Santa Fe, LLC.  I'm joined in

2   the courtroom by the member representative, Eric Crocker, and

3   by the indirect parent company's representative from Amerco,

4   Treasurer Jason Berg.

5          **THE COURT:**  Good morning.

6          **MR. SCOTT COHEN:**  B-E-R-G.  Thank you.

7          **THE COURT:**  You're welcome.  And then we have other

8   parties, WM Capital Partners.

9          **MR. ZUR:**  Good morning, Your Honor, Roye Zur of

10  Elkins Kalt on behalf of WM Capital Partners.  We are hoping to

11  be qualified before this auction starts.  We are still waiting

12  on that.  I have --

13         **THE COURT:**  Have you talked to anyone about that?

14         **MR. ZUR:**  We sure have, Your Honor.  And I hope the

15  conversation continues and resolves itself --

16         **THE COURT:**  Okay.  So just to save --

17         **MR. ZUR:**  -- before the auction begins.

18         **THE COURT:**  -- a little tension, I'm going to

19  bifurcate obviously.  First, if the motion's not granted,

20  there's no point in having an auction.  So that will be

21  bifurcated so you can just -- we'll have a break in between to

22  make sure who the bidders are, if we get to that point.

23         **MR. ZUR:**  I appreciate that very much.  And, Your

24  Honor, one more thing.  I believe that the managing member of

25  WM Capital Partners, Scott Whitworth, is on the line.  But I

11

1    didn't hear him.

2            **THE COURT:**  Okay.  Thanks.

3            **MR. ZUR:**  Thank you very much, Your Honor.

4            **THE COURT:**  Sure.  ACI 6 Santa Fe LLC.  I presume

5    you're using the Roman numeral.

6            **MS. JAMES:**  Yes, Your Honor.  Good morning, Your

7    Honor, Jacqueline James, Cox, Castle, Nicholson, on behalf of

8    overbidder ACI Roman numeral six Santa Fe LLC.

9            **THE COURT:**  Okay.  Good morning.  I believe you said

10   -- did you say Jacqueline James?

11           **MS. JAMES:**  Yes, I did, Your Honor.

12           **THE COURT:**  Okay.  So again for future reference,

13   when you come back to the lectern, if you do, I am giving you

14   the option, not requiring, I'm saying you may take off your

15   mask if you'd like to make sure that we can make a record.

16           **MS. JAMES:**  I understand, Your Honor.

17           **THE COURT:**  Okay.

18           **MS. JAMES:**  Thank you.

19           **THE COURT:**  You're welcome.  Okay.  Next, we have

20   Antonio Whitley.

21           **MR. BALCH:**  Good morning, Your Honor, Noah Balch on

22   behalf of Antonio Bernard Whitley.

23           **THE COURT:**  Good morning.  And then we have on behalf

24   of Daniel Park, Joan Park, and Jourdain DeWerd, do we have an

25   appearance?

12

1       **THE CLERK:**  I didn't get (indisc.).

2       **THE COURT:**  No one checked in on that matter.  So

3   there's no one appearing on behalf of Daniel Park, Joan Park,

4   Jourdain DeWerd, correct?

5       (No audible response)

6       Okay.  Mr. Orantes, would you like to add any oral

7   argument in support of your motion?

8       **MR. ORANTES:**  Yes, Your Honor.  Thank you very much.

9   And, Your Honor, I have to apologize for having to appear

10  telephonically.  I was in front of Your Honor for the sales

11  procedures motion.  Unfortunately, my wife tested positive for

12  COVID-19.  And although the last time I checked I was negative,

13  that could change at any moment and I did not want to --

14  obviously I did not want to infect anybody.  So I'm limited to

15  doing this by telephone.

16      **THE COURT:**  Well we thank you all for your caution.

17      **MR. ORANTES:**  Thank you, Your Honor.  Well, Your

18  Honor, we filed a motion to approve this transaction under

19  Section 363(b) and Section 363(f)(1), (4), and (5).

20      We believe that the Dolan (phonetic) case provides

21  support for this transaction, as well as for completing this

22  transaction free and clear of the lien of Fleet Yards, Inc.

23  under *Spanish Peaks*, because we have a very analogous situation

24  where if we don't complete a sale through the bankruptcy

25  process, Hyundai Steel Company, which has as we speak a

1   foreclosure scheduled for December 21st at 11:00 o'clock, can

2   foreclose on the property.  And not only on this property but

3   on three other properties of the estate because they're all

4   cross-collateralized.

5          And that result would lead to no recovery for most of

6   the creditors of the estate, other than Hyundai.  Hyundai

7   conducted a foreclosure sale earlier in the year.  The highest

8   bid that it received I believe was $15.2 million, which is far

9   less than the $31 million starting bid that we have here for

10  Thor.  And we have received three other bids.

11         But before we go on, Your Honor, I think just taking

12  the Court's marching orders as you said that you would

13  bifurcate the two matters, we did receive bids from -- three

14  bids, and there were certain statements that we do need them to

15  make on the record.  But I will make those after everybody

16  argues the motion.

17         As the Court knows, we didn't receive an opposition

18  from the Packo creditors, and they have since withdrawn that in

19  part due to the stipulation by Hyundai to accept $24 million in

20  full satisfaction of its claim, plus 50 percent of any overbid

21  -- any net proceeds of the overbid, up to the amount of their

22  full claim.  So based on that stipulation, all of the

23  objections have been withdrawn.

24         We did receive an opposition by Fleet Yards and which

25  alleged that it did not receive notice of this motion.

1    However, since that time, we did file a reply and address that

2    declarations and address the issues set forth in the

3    opposition.  But also Fleet Yards signed a stipulation

4    indicating that in fact it did have notice because I personally

5    provided notice and we did proofs of service of the motion to

6    show that Mr. Dan Otting of Fleet Yards, Inc. did receive

7    notice.

8            I believe, Your Honor, with respect to the motion

9    itself, it should be granted.  It's in the best interest of the

10   creditors and is consistent with maximizing the recovery by

11   creditors of the estate, which is one of the pillars of the

12   bankruptcy process.

13           And after Your Honor rules on the motion, we would

14   like to take a moment to -- for the bidders to make their

15   representations, and if the Court would allow us at that point

16   to adjourn for a few minutes to consider the bidding packages

17   to qualify the bidders.  And we would follow that with a sale

18   proceeding, Your Honor.

19           At this point, I don't have anything further unless

20   the Court has any questions.

21           **THE COURT:**  NO questions, thank you very much.

22           **MR. ORANTES:**  And any response to any other --

23           **THE COURT:**  No questions.

24           **MR. ORANTES:**  Thank you, Your Honor.

25           **THE COURT:**  Okay.  So next I'm going to call for

1    parties in the order that I asked.  For those who I perceive

2    either consent -- or let me put it this way.  I'm going to call

3    for those who wish to be heard in support of the motion.  So,

4    first, let's see, we'll go in order.  So, Hyundai Steel, do you

5    wish to be heard in support of the motion?

6              **MR. JONES:**  Yes, Your Honor, we do.

7              **THE COURT:**  Please.

8              **MR. JONES:**  Your Honor, Evan Jones on behalf of

9    Hyundai Steel.  Your Honor, I'm going to take my mask off.

10   I've never been told I'm hard to hear, but I want to make sure.

11             **THE COURT:**  It's clarity, not volume.

12             **MR. JONES:**  Thank you.  Your Honor, I'll start with

13   the Court's tentative ruling from the other day raising the

14   question of notice to CMI.  I think that Mr. Byun's declaration

15   that was filed at ECF 427 amply addresses that.

16             And so, Your Honor, I turn to the objection filed on

17   Monday of this week by Fleet Yard, which asserts a sublease

18   from the Debtor's non-debtor affiliate CMI.  Your Honor, the

19   objection is untimely, inadequate, and should be overruled.  I

20   would make five points.  And I apologize in advance for going

21   into detail.  But since the objection was filed so late, we

22   haven't been able to respond in writing.

23             Point one, notice was properly given to Fleet Yard

24   when the motion was filed, and the objection is not timely.  In

25   its opposition, Fleet Yard complains about a failure of notice.

16

1    And certainly when I heard about that from Mr. Garfinkle

2    (phonetic), I was quite concerned because, as the Court has

3    said on many occasions, failure of notice is a reason to

4    continue a hearing.  But it's simply not true.

5            As Mr. Orantes notices, the declaration of service on

6    the original motion at ECF 373, page 125, notes that Mr. Otting

7    as CEO of Fleet Yard received notice as a prospective buyer and

8    was given timely notice of the motion.  I'd note, Your Honor,

9    until this week, Fleet Yard has never entered an appearance,

10   hasn't filed a proof of claim.  That's the only address that

11   the Debtor had for Fleet Yard.

12           Your Honor will have noted that nowhere in

13   Mr. Otting's declaration does he say he didn't get notice.

14   Your Honor, I think --

15           **THE COURT:**  I'm thinking it's an echo.  Go ahead.

16           **MR. JONES:**  Very well, Your Honor.  And, Your Honor,

17   in fact, as the Court is aware, on further investigation and

18   discussion with the parties, counsel for Fleet Yards has

19   acknowledged their mistake.  They acknowledge that proper

20   service was made timely.  And the failure of notice argument is

21   abandoned.

22           Your Honor, you've seen the stipulation of facts on

23   those that Fleet Yards' counsel entered with Hyundai.  I

24   certainly commend counsel's professional candor and the honesty

25   of their client in admitting that fundamental error.  But the

1    fact remains, notice was timely and the objection proceeds from

2    the fatal and false premise that notice was not timely given.

3         Fleet Yards' objection is almost two weeks late, Your

4    Honor, yet they got notice.  The fact that Fleet Yards may have

5    decided or slept on its rights or whatever so that they didn't

6    get counsel up in time and they filed their objection 12 days

7    late under the local bankruptcy rules is not an excuse for the

8    fact that they filed the objection on Monday.  The Court should

9    rule their pleadings untimely and stop there.

10        But, Your Honor, I'll continue to the four other

11   reasons why their pleadings are unavailing.

12        Point two, Fleet Yards does not even assert a lease

13   with the Debtor.  This is another fatal flaw in all their

14   arguments.  They are not in privity with the Debtor.  Their

15   assertion is of a separate lease agreement with CMI, a

16   subsidiary of the Debtor.  They've not asserted the lease with

17   the Debtor but they ask this Court, with no evidence, to simply

18   substantively consolidate those two entities and pretend that

19   they have a lease with the Debtor.  There's no support for

20   that.

21        Your Honor, as CMI itself notes, apparently -- I'm

22   sorry, as Fleet itself notes, apparently CMI has an oral,

23   unrecorded lease with the Debtor.  That lease itself is

24   certainly subject to being sold free and clear of under at

25   least three separate provisions of Section 363.

1          First, CMI, which is the only party in privity with

2    the Debtor, has consented to the sale.  That's Mr. Byun's

3    declaration.  That's grounds for sale free and clear under

4    363(f)(2).

5          Second, even if CMI didn't consent, as the Ninth

6    Circuit ruled in *Spanish Peaks*, because there is a senior prior

7    lien in favor of Hyundai -- and by the way, Your Honor, I want

8    to thank Ms. Cho for teaching me to pronounce my client's name

9    correctly.  Because there is a senior lien in favor of Hyundai,

10   363(f)(1) applies because a foreclosure of that lien would wipe

11   out any lease to CMI.  And I'll talk about *Spanish Peaks* in

12   detail a little later.  But that rule applies to the CMI lease.

13         Third, as Fleet Yards itself notes, CMI's lease is

14   avoidable as unwritten and unrecorded.  So even if CMI didn't

15   consent to the sale, which it does, and even if *Spanish Peaks*

16   didn't apply to the sale, which it does, CMI's lease hold is

17   certainly subject to bona fide dispute.  The Court can of

18   course order sale free and clear of an interest subject to bona

19   fide dispute under 363(f)(4).

20         It's well-established that voidability satisfies the

21   requirement of Section 363(f)(4).  Your Honor, for that we cite

22   the *Securities and Exchange Commission versus Capital Cove*

23   *Bancorp* case from this district at 2015 WL 9701154 from 2015,

24   as well as the *In Re Gaylord Grain LLC* decision from the Eighth

25   Circuit BAP at 306 BR 624.

1          And, Your Honor, I quote from *Gaylord* for the point

2     that the Trustee doesn't have to have commenced the avoidance

3     action to put the interest in bona fide dispute.  And the quote

4     is as follows:  "Although the trustee did not file an adversary

5     proceeding seeking to avoid the liens in question, he may

6     nevertheless sell free and clear of the bank's liens if he can

7     show, pursuant to 11 USC 544, an objective basis for avoiding

8     the liens, and thus establish a bona fide dispute for purposes

9     of 11 USC, 363(f)(4)."

10         **THE COURT:**  Okay.  Mr. Jones, please pause.  Someone

11    on the line is not muting their phone.  So please take the time

12    right now and look at your phone and make sure it's muted.

13    Thank you very much.  Go ahead.  Sorry, Mr. Jones.

14         **MR. JONES:**  Thank you, Your Honor.  Your Honor, if

15    the CMI lease from the Debtor fails, it is -- or can be sold

16    free and clear of, it is hornbook law that when the master

17    lease to CMI fails, any sublease to Fleet Yard likewise fails.

18         Your Honor, I cite the California Court of Appeals in

19    the Syufy Industry -- I'm sorry, *Syufy Enterprises, LP versus*

20    *City of Oakland* case, which actually involved at least

21    following bankruptcy.  And in that case at 104 Cal. App. Fourth

22    869 in December 20, 2002, the Court stated, and I'll quote:

23    "Under California law, a subtenant's rights are," and then

24    there's an interior quote, "'dependent upon and subject to the

25    sublessor's rights.  Rights under the sublease stand or fall

1    with those of the sublessor.'"  Fleet Yards would like to

2    pretend they have a lease with the Debtor.  But they don't.

3    They have a sublease from CMI, and CMI's lease fails for the

4    three reasons I've mentioned.

5           Your Honor, I'd also note that even if Fleet Yards

6    had the lease directly with the Debtor, it would be subject to

7    avoidance under Section 544 for the same reasons.  It's a five-

8    year lease.  It's not recorded.  Such a lease is obviously

9    avoidable by a judgment lien creditor or BFP under California

10   law and is subject to bona fide dispute within the terms of

11   363(f)(4).

12          Again, I'd refer back to the cases I quoted on the

13   fact that a interest is avoidable or subject to avoidance

14   constitute a bona fide dispute.  That's yet another reason the

15   CMI sublease is subject to -- I'm sorry, the Fleet Yards

16   sublease is subject to 363(f).

17          Point three, there are no enforceable holdover rights

18   under Section 365(h).  And, Your Honor, I think apart from the

19   incorrect assertion that there was a failure of notice, this is

20   the fundamental argument that Fleet Yards makes.  Your Honor,

21   of course the predicates for that section to apply are, one, a

22   lease under which the Debtor is the lessor.  That's not Fleet

23   Yards lease.

24          The second predicate is that there is a rejection of

25   that lease.  That's not the case here.  The Debtor cannot

1    reject leases it is not a party to; 365(h) does not apply on

2    both of those reasons.

3          Your Honor, finally, as Fleet Yards admits in its

4    late-filed objection, the Ninth Circuit held in *Spanish Peaks*

5    that even if there were a valid lease with the Debtor, and even

6    if that lease were subject to rejection because it's a lease

7    with the Debtor, 365(h) rights do not survive sale free and

8    clear under 363(f).

9          Fleet Yards tries to distinguish *Spanish Peaks* as

10   involving an insider.  But as my law professor used to say,

11   that's a fact of no importance.  The Court doesn't use that as

12   the basis for its decision.  It doesn't refer to that in its

13   analysis.

14         What the Court does say is because a foreclosure by

15   the senior lienholder under applicable law would wipe out the

16   holdover rights and the lease, that those rights are subject to

17   363(f)(1).

18         And by the way, Your Honor, in *Spanish Peaks*, the

19   Court went out of its way to indicate that no actual

20   foreclosure was required to implicate 363(f)(1).  As the Court

21   will recall, the bankruptcy court made no findings on which

22   provision applied.  There were -- of which provision of 363(f)

23   applied.

24         The circuit court, though, found that there was no

25   problem with concluding that 363(f)(1), which would apply in a

1  foreclosure by the senior lender applied.  Your Honor, I would

2  quote from the Ninth Circuit opinion -- and by the way, Your

3  Honor, I'll note here, the only change I make, because I'm

4  going to substitute the name of the parties for clarity.

5  Indeed -- and I'm sorry, Your Honor, I apologize if I didn't

6  say the page.  This is at page 900 of the circuit court's

7  decision.  Indeed, had the debtor not declared bankruptcy, we

8  can confidently say that there would have been an actual

9  foreclosure sale.  Such a sale would have terminated the

10 applicable leases.

11       Section 363(f)(1) does not require an actual or

12 anticipated foreclosure sale.  It is satisfied if such a sale

13 would be legally permissible.

14       Now, Your Honor, the court does go on to say that it

15 seems clear there would be a foreclosure but for the sale.  And

16 I don't think the Court needs stretch to make that conclusion

17 here.  Hyundai has relief from the stay on its senior liens to

18 foreclose and expressly stipulated in a stipulation approved by

19 this Court to delay that foreclosure to permit this sale.

20       Your Honor, I'd also note that *Spanish Peaks* goes on

21 to say because that interest can be foreclosed out and sold

22 free of under 363(f)(1), no adequate protection is required.

23 But that's a peripheral matter.

24       Your Honor, the record is clear, Hyundai's lien was

25 recorded long before either the purported lease to CMI or the

1   sublease to Fleet Yard, which I remind the Court was entered 14

2   days before this third bankruptcy case was commenced.  A

3   foreclosure by Hyundai would wipe out both of those interests

4   and thus permits a sale under 363(f)(1), even though the Debtor

5   is not a party to Fleet Yards' lease.

6           If there were a lease with the Debtor, and if that

7   lease were therefore subject to rejection, *Spanish Peaks* would

8   be directly on point.  Of course there is no lease with the

9   Debtor and Fleet Yards' lease is not rejected because it's not

10  a lease with the Debtor.

11          But in the imaginary world that Fleet Yards wants the

12  Court to imagine, *Spanish Peaks* controls and this Court can and

13  should order sale free and clear of any holdover right.

14          Your Honor, point four, the asserted right of first

15  refusal does not interfere with the sale today.  There is a

16  single sentence in the lease between CMI and Fleet Yards that

17  says tenant has right -- I'm sorry, tenant has first right to

18  purchase or refusal of the property.  Now, Your Honor, I'm not

19  even sure that's sufficiently clear under California contract

20  law to impose obligations, but it doesn't matter.

21          And I apologize if I'm a broken record but this isn't

22  an agreement with the Debtor.  CMI is not selling its rights.

23  If Fleet Yards has a cause of action against CMI under that

24  right of first refusal, they are free to pursue it.

25          But, Your Honor, more importantly, the evidence

1    demonstrates beyond dispute that if there were a direct right

2    of first refusal as against the Debtor, which there's not, the

3    Debtor has complied with it.  Your Honor has seen the

4    stipulation that Fleet Yards counsel signed regarding

5    Mr. Otting's conversations.  And it says exactly what we'd

6    hoped to get from Mr. Otting on cross examination today, if

7    need be, but again counsel has behaved responsibly and

8    acknowledged these points.

9            Mr. Otting has been aware of the bankruptcy of

10   Mr. Byun since it was filed.  He was in active conversations

11   with Mr. Byun and his agents about possibly buying the

12   property.  And he couldn't.  He told the Debtor's agents that

13   he couldn't finance a bid to meet the other bids, including the

14   stalking horse.  And he told them they should go ahead with an

15   alternative.

16           Now, Your Honor, if there were an enforceable right

17   of first refusal against this Debtor, that -- those actions

18   certainly fulfilled it.  Mr. Otting had his chance and he

19   appropriately said and honestly said I can't do that.  I don't

20   know what more this right of first refusal that the Debtor

21   asserts against CMI is supposed to encompass.  Mr. Otting had

22   his chance.

23           And by the way, Your Honor, we encouraged Fleet Yard

24   to qualify and participate in the auction today.  They didn't.

25   I think the reason's obvious:  they don't have the funds.

1    They'd like to have the funds, we would have liked to have them

2    bid.  But they didn't.

3              And, Your Honor, that right of first refusal doesn't

4    lie against the estate.  And if it did, it's been complied

5    with.

6              Your Honor, the last thing I'll say on the right of

7    first refusal is that even if this were a right of first

8    refusal against the estate, the law is not as Fleet Yard

9    suggests that such rights are necessarily enforceable in

10   bankruptcy.

11             In fact, the very case they cite, Northrop Grumman

12   from Delaware, says that such rights are enforceable within the

13   discretion of the Court if doing so does not, and I'll quote

14   from the Court, hamper the Debtor's ability to assign the

15   property or foreclose the estate from realizing the full value

16   of the Debtor's interest.  But where it does interfere with

17   those processes, the Court has discretion to rule the right of

18   first refusal unenforceable.

19             On that point, Your Honor, Northrop Grumman is in

20   accord with numerous other courts, including the *Adelphia*

21   *Communications* decision, 359 Br 65, Bankruptcy Southern

22   District of New York 2007; *In Re Chicago Investments*, 470 BR

23   32, Bankruptcy D. Massachusetts, 2012; *In Re Mr. Grocer* -- and,

24   Your Honor, I have a personal soft spot for this case -- 77 BR

25   349, Bankruptcy D. New Hampshire 1987.

1          Your Honor, that decision was by Judge Yacos, who I

2     had the pleasure to appear before actually in 1987.  As Your

3     Honor will recall, he started the very first loose leaf

4     bankruptcy reporter service, The Broken Bank -- *The Broken*

5     *Bench Review*.

6          And, Your Honor, he got it right in that case because

7     every one of those cases says that if there were a right of

8     first refusal against the estate, and if it hadn't been

9     complied with, neither of which is true here, that this court

10    might nevertheless in its discretion order it not enforced

11    because it interfered with realizing the value of the estate

12    and its assets.

13         It's readily apparent, Your Honor, that enforcement

14    of this right of first refusal by delaying this auction will

15    materially interfere with this estate in realizing the value of

16    its assets.  We are finally, literally after years, on the

17    verge of selling the estate's asset, primary asset.

18         Now, Your Honor, this case has finally gotten to the

19    point where I'm sure the Court would like to see all bankruptcy

20    cases.  The prime litigants, Hyundai Steal -- apologize,

21    Ms. Cho -- and the Debtor are finally in accord.  Mr. Orantes

22    and I have communicated extensively about this auction.

23         And by the way, Your Honor, as in any good bankruptcy

24    case, when peace breaks out, my appreciation of opposing

25    counsel has grown enormously.

1          This Court should not delay the auction today because

2     of a late-filed assertion of a right of first refusal against

3     an affiliate which has been complied with.  The standards for

4     enforcing that right of first refusal simply are not met.

5          Now, Your Honor, Mr. Orantes mentioned the objection

6     that Mr. Meadows filed on behalf of certain junior lienholders.

7     I understand that objection to have been withdrawn subject to

8     approval of the settlement with Hyundai, which certainly we --

9     Hyundai, which certainly we support approval of.  And, Your

10    Honor, we addressed that objection extensively in our papers.

11    Unless the Court has questions about that, I get to skip about

12    20 pages of my outline that I've put in purple because I think

13    we addressed clear channel in extensive detail, and it sounds

14    like it's simply not material today.

15         Your Honor, that brings me to point five.  It is time

16    for the estate to sell this property.  In some cases we might

17    say, okay, let's give Fleet Yard some more time.  They were

18    late but people have time.  Let them keep looking for more

19    financing.  Let's see if other people can qualify today.

20         And as Mr. Orantes mentioned, if the Court rules that

21    it will enter an order approving sale today, we do need to

22    discuss qualification.  And there are some commitments we need

23    from various bidders before they will be qualified.  But we can

24    do that if the Court says it's appropriate to go forward after

25    we take a break and address those issues.

1          But, Your Honor, this is not a case where further

2    delay is appropriate.  The Debtor has been marketing this

3    property for years.  Fleet Yard has been aware of those efforts

4    for years.  They sought to buy the property but they couldn't,

5    and they said, go forward with someone else.  They first

6    entered an appearance through counsel on Tuesday.

7          Your Honor, enough is enough.  We have a generous

8    contract, almost double the price obtained in an adjourned

9    foreclosure sale last summer, for all of the estate's real

10   property assets.  And that's a point I want to make sure is not

11   lost.  The Debtor proposes to sell off one piece of property.

12   It is the most valuable one.  But the estate will be left with

13   significant assets, and junior creditors can receive a

14   distribution.

15         Your Honor, we wish Mr. Byun well if the sale and

16   settlement are approved today.  But I want to make sure the

17   Court is a well -- aware that at a regularly conducted

18   foreclosure sale for all of the estate's real property, the

19   highest bid obtained was $15.3 million.  Now, Hyundai would

20   like to see these bids succeed.  They're much higher.  That's

21   what bankruptcy is for.

22         Your Honor, the sale agreement, the stalking horse

23   agreement we have before the Court requires closing by December

24   29th.  That date is not accidental.  The 30th and 31st are

25   holidays in Korea.  Hyundai has waited a decade to receive a

1  penny of principal on this debt.  This is the third bankruptcy

2  this Court has heard essentially over this debt.

3          There are approved procedures for this auction.  They

4  were approved without objection.  They are appropriate and they

5  are fair.

6          This last-minute objection is not well-founded and

7  should not delay this sale.

8          Similarly, the request that the Court's order be

9  stayed for 14 days is not well-founded.  Again, as an initial

10 matter, it starts from the false premise that Fleet Yards

11 didn't get notice.  That's just not true.  Fleet Yards got

12 notice and for whatever reason didn't act until this week.

13         On the other hand, need to proceed promptly is amply

14 show.  We are at yearend.  Both companies and individuals like

15 to resolve things before yearend.

16         The purchase agreement requires closing as soon as

17 feasible, and in all events by December 29th.  Further delay

18 because of Fleet Yards' sandbagging is not appropriate.

19         There is a time to object, there is a time to bid,

20 and Fleet Yards has missed both.

21         Your Honor, Fleet Yards' objection should not be

22 sustained for the five reasons I've mentioned.

23         Your Honor, the last thing I'd turn to -- I'm sorry,

24 did the Court have question?

25         **THE COURT:**  No.

1          **MR. JONES:**  Thank you.  Your Honor, the last thing

2   I'd turn to is the settlement with Hyundai, I got it right,

3   which is built into the sale motion.

4          As the record demonstrates, Hyundai asserts a senior

5   secured claim in excess of $28 million.  This Court has already

6   rejected the Debtor's objection to the prepetition claim,

7   except for approximately $2 million in fees for which this

8   Court has permitted further briefing an evidence.  Those fees

9   have of course continued to accrue post-petition, and they've

10  not yet been subject to review.  So perhaps there are more fees

11  that might be disputed.

12         The Debtor in the settlement gives up counterclaims

13  against Hyundai.  But of course those were dispositively

14  dismissed by the State Court in litigation with the Debtor.

15         So the calculus is simple.  Hyundai gives up over $4

16  million in claims.  Now, it might get some more if the bidding

17  today is successful.  And maybe it'll come close to at some

18  point getting its full claim paid.  And of course, Your Honor,

19  the stipulation says we'll never get more than our full claim.

20         But, Your Honor, the settlement which was entered

21  sets the possibility, perhaps the probability, that Hyundai

22  will walk away from over $4 million in claims.  In return,

23  Hyundai receives a release of counterclaims that have been

24  denied by the State Court -- they could always file an

25  appeal -- and potential factual and legal disputes over legal

1    fees that are certainly subject to complexity, cost,

2    difficulty, and uncertainty.

3         Your Honor, I said there were five reasons why the

4    Fleet Yard objection should be rejected.  I suggest that there

5    are over four million reasons why the settlement is fair.

6    Hyundai is taking a $4 million haircut in return for giving up

7    claims that at best are questionable -- counterclaims or

8    objections that are at best questionable.

9         The parties walk away from each other.  And, again, I

10   would submit to the Court that's the best outcome to a

11   bankruptcy like this.  Hyundai will walk away with a

12   significant haircut, the estate will sell a key asset.  There

13   will be funds available for junior creditors.  There will be

14   assets available for junior creditors.

15        Your Honor, that settlement is well within the range

16   of reasonable outcomes and should be approved by the Court.

17        And of course, Your Honor, in our paper, as

18   Mr. Orantes' paper, we address the standards for approval of a

19   settlement.  But those are well-known to the Court.

20        And I'd submit that the calculus required here is not

21   difficult.  It's a fair and reasonable settlement.  The Court

22   should approve it.

23        Finally, Your Honor, the last point I make is if the

24   Court does not order payment of that settlement amount at

25   closing of a sale, and until such payments are made, Hyundai

1  requests an adequate protection lien on the proceeds in the

2  full amount of its claim.  I don't think --

3          **THE COURT:**  Do you mean Hyundai?

4          **MR. JONES:**  (No audible response)

5          **THE COURT:**  I had -- I'm sorry, you just -- you

6  invited that so --

7          **MR. JONES:**  I did, Your Honor.  And I'm happy to

8  admit that my Spanish is no better.  And when I attempt to

9  imitate my son's statement of the city he spent a semester in

10 in Australia, I don't get Melbourne right either.

11         Your Honor, I thank you for your time.  I'm happy to

12 answer any questions, but I have nothing else.

13         **THE COURT:**  I have no questions.  Thank you.

14         **MR. JONES:**  Thank you, Your Honor.

15         **THE COURT:**  All right.  So at the risk of inventing a

16 word, trifurcate, before I hear arguments with regards to the

17 sale aspects of the motion, I want to see if there's anyone

18 that wishes to make oral argument in opposition to the

19 component of the motion with regards to the proposed compromise

20 of controversy.

21         I saw nothing in any opposition papers, be they be

22 withdrawn or not withdrawn, which opposed the compromise of

23 controversy.  So that in and of itself would be deemed consent

24 to that granting of relief.  But this is your opportunity if

25 there is any party opposing the compromise of controversy to

1  speak.  I'll ask first if there's anyone on the phone.  I don't

2  -- you don't have to -- don't say "no."  If you wish to speak,

3  identify yourself.

4      (No audible response)

5          No, that's sufficient time to unmute.  Okay.  In the

6  courtroom is there anyone that wishes only to oppose -- and,

7  again, I saw nothing in anyone's papers, withdrawn or not

8  withdrawn, opposing the compromise of controversy.

9      (No audible response)

10         Okay.  I reviewed the motion, all (indisc.)

11 obviously, as well as the component with regards to seeking

12 approval of the compromise if controversy.  I find that each

13 and every element laid out by the Ninth Circuit in the ANC

14 (phonetic) decision has been met.  It is a fair compromise.

15         It is a remarkable one.  That's not a requirement.

16 But, frankly, having lived through these cases, it's amazing

17 that the parties have gotten to this.  And that it would create

18 the opportunity for the best interest of if not every creditor,

19 nearly every creditor to have some satisfaction out of this

20 bankruptcy case.  I can't imagine a better result.

21         So the compromise of controversy component of the

22 motion is approved.

23         Now I will call for other parties who wish to be

24 heard in support of the motion or at least non-objection to the

25 motion, if not outright consent.  So let me start with Ms. Cho.

34

1          **MS. CHO:**  Good morning again, Your Honor.  For the

2    record, Shirley Cho of Pachulski, Stang, Ziehl, and Jones for

3    Ms. Toni Ko.  Ms. Ko is a secured creditor in a second lien

4    position behind Hyundai Steel.  She's owed not less than $1.295

5    million.  Your Honor, I lower my mask because you might not

6    have seen me smiling from ear to ear the first time --

7          **THE COURT:**  I observed the eyebrows.

8          **MS. CHO:**  -- I appeared.  You know, frankly, Your

9    Honor, we never thought this day would come.  Like Hyundai,

10   Ms. Ko has been waiting over five years for payment on her

11   claim.  And we are so pleased and thankful to the bidders for

12   their time this morning.  Looking forward to robust bidding

13   this afternoon.  We support the sale, Your Honor, and would

14   urge the Court to deny -- to overrule any objections, Your

15   Honor.

16          I rise only because Ms. Ko did file her statement and

17   reservation of rights at Docket Number 392.  Your Honor, we

18   need to renew that reservation of rights.  We have asked and

19   have still not seen the form of proposed sale order.  Your

20   Honor, I understand that is being drafted, but as of this date

21   we've not seen it.

22          Like Mr. Jones, we do need to -- and I'm sure this

23   would not come as a surprise, Your Honor, we are looking for

24   comfort language.  And Mr. Orantes, you know, even though he's

25   so busy this morning running around with the different bidders,

1   was able to assure me by phone that the proposed form of order

2   will have the necessary comfort language that a secured

3   creditor such as Ms. Ko would be looking for in the form of the

4   adequate protection language, either with the payment of

5   proceeds directed to her claim or the assurances that proceeds

6   will not be paid out of order, Your Honor, and that the secured

7   creditors' liens will attach to the same extent priority and

8   validity as existed immediately prior to the closing of the

9   sale, Your Honor.

10          So with respect to the continuing reservation of

11  rights to the form of sale order, Your Honor, we support the

12  sale.

13          **THE COURT:**  Okay.  So you didn't address my immediate

14  request which was with regards to compromise of controversy.

15  You --

16          **MS. CHO:**  The --

17          **THE COURT:**  -- do not oppose it, correct?

18          **MS. CHO:**  We do not oppose it, Your Honor.

19          **THE COURT:**  That component of the motion.

20          **MS. CHO:**  We concur with Your Honor's assessment.  It

21  is remarkable, and we do thank Hyundai.

22          **THE COURT:**  Okay.  Great, thanks.

23          **MS. CHO:**  Thank you.

24          **THE COURT:**  Is there anyone that wants to be heard

25  before I call on other parties that wants to oppose the

1    compromise of controversy?

2        (No audible response)

3        Okay.  Because I want to be absolutely clear, so it's

4    approved.

5        There are other remaining aspects of the motion which

6    obviously I have not ruled on yet, including -- which you

7    should be aware, you may have, I'll give you a chance to think

8    about it -- extinguishing leases.  I'm not aware of any such

9    provision in the Code to extinguish a lease so it's unlikely I

10   would sign an order that includes that provision, heads up.

11       But now let me turn to the other parties that wish to

12   be heard in support of the motion.  Mr. Meadows, I presume.

13       **MR. MEADOWS:**  Good morning, Your Honor, David Meadows

14   on behalf of the four secured creditors I've previously

15   identified for the record.  Very briefly, Your Honor.

16       At this stage of the proceeding I have nothing

17   further to add, other than to confirm what is already made

18   clear by my filing that my clients have withdrawn their

19   objection.  There were conditions on it.  But since you have

20   just granted the settlement agreement, those conditions have

21   now been made mooted.

22       So to use the word that Ms. Cho used, we support the

23   sale and look forward to a robust auction.  It's a far better

24   outcome than we thought we'd ever see.  So thank you.

25       **THE COURT:**  Okay, thank you.  And then last call --

1          **MR. SPEAKER:**  Okay.

2          **THE COURT:**  -- absolutely clear, no one wishes to be

3     heard in opposition to the compromise of controversy.  Okay.

4     Last call on that.

5          Now let me hear from anyone else that wish to be

6     heard in support of the motion, all the components of the

7     motion.

8          (No audible response)

9          Anyone else?

10         (No audible response)

11         Okay.  Now, --

12         **MR. STEVEN COHEN:**  Your Honor, just -- I'm sorry.

13         **THE COURT:**  On the phone, go ahead.

14         **MR. STEVEN COHEN:**  Yeah, Your Honor, Steven Cohen on

15    behalf of Thor, the stalking horse bidder.  Just very briefly.

16         I thank Mr. Orantes, and particularly Mr. Jones, for

17    comprehensive and eloquent support of the motion and (indisc.)

18    why the objection by Fleet Yards should be rejected.

19         But just to add a fine point to it, my client, Thor,

20    the stalking horse bidder, would not have gone down this path

21    and signed the sale and purchase agreement without the

22    assurance as a condition that the Fleet, whatever interest it

23    had, lease, sublease, call it what you will, would be rejected

24    as part of the sale order.  That's always been our position.

25    That's been the position made clear in the initial motion

1    seeking approval of the bid procedures order and the sale

2    motion.  And Thor supports the application and the motion.

3         **THE COURT:**  Okay.  Before we have a flood of people

4    responding to that, I want to make clear since I -- I don't

5    want to make sure I didn't add something to the intellectual

6    tsunami that is going on in the courtroom right now.  I

7    don't -- I have never seen any provision of the Bankruptcy Code

8    that authorizes extinguishing a lease.

9         Section 365 speaks to a limited power given to

10   trustees and debtors in possession to reject leases.  Okay.

11   That's -- those are two -- that's the distinction I was

12   attempting to draw.  I have now I think drawn it as clearly as

13   it can be drawn.

14        And now I'll -- finally, with regard to rejection, a

15   debtor in possession or a trustee can only reject a lease in

16   which the estate, i.e. the debtor or that the estate of the

17   debtor, is a party to with the party who is on the other side

18   of the lease.  So if there is a sublease between party A and

19   party B, and party B has a lease with the Debtor, rejection

20   does not reach the lease between A and B.

21        **MR. JONES:**  Your Honor, Evan Jones.  If I may jump in

22   here.  Mr. Orantes mentioned that we're going to need the

23   bidders, if we get to bidding, to clarify certain provisions of

24   their APAs.

25        And Your Honor has put your finger on exactly one

1    point we will ask them to clarify.  The phrase "extinguish" I

2    agree with Your Honor is not found in the Bankruptcy Code.  And

3    I also agree with Your Honor that the Debtor cannot reject a

4    lease that it's not a party to.  That was part of my argument.

5    I don't think the Debtor sought to reject the Fleet Yards

6    lease.

7            But I think what this Court can order and what we

8    will ask the Court to order and what we will ask the bidders to

9    confirm is adequate is this Court can order under Section

10   363(f) that the sale is free and clear of any interest that

11   Fleet Yards holds under that sublease in the property.

12           **THE COURT:**  Please full stop pause.  This is reaching

13   ahead again.  But -- and perhaps it's best for the second part

14   of the hearing if I grant the motion just to approve the sale.

15           But I am bound to follow the rulings of the Ninth

16   Circuit, including that in *Spanish Peaks*.  I find *Spanish*

17   *Peaks*, it's not factually directly on point but legally it is.

18   So therefore within the context of this motion, a motion to

19   sell free and clear under 363(f) can be granted so that leases

20   are -- that the property is sold free and clear of any leases.

21           Anyone who has an interest with a sublease in that

22   lease only has whatever interest the lessee has.  So therefore

23   it would be free and clear of that interest as well, but

24   through the lease, which is sold -- of which the property is

25   sold free and clear of.  I don't think ending with a

1  preposition but that's the only way I can think of right now.

2       **MR. JONES:**  Your Honor, I will note that when I was

3  preparing my arguments, when you talk about 363(f), you end up

4  with prepositions at the end far too often.  But Your Honor has

5  put your finger --

6       **THE COURT:**  Yeah.

7       **MR. JONES:**  -- on exactly the point.  If the Court

8  decides to proceed with an auction, we will ask the bidders to

9  confirm that such an order would be adequate.

10      **THE COURT:**  Yeah.

11      **MR. JONES:**  We'd ask them to confirm on the record

12  that such an order would be adequate because we don't want to

13  enter an agreement that we can't deliver.  And --

14      **THE COURT:**  Sure.  And --

15      **MR. JONES:**  -- I thank the Court.

16      **THE COURT:**  And, Mr. Cohen, I don't mind you raising

17  that issue right now, so you can think about it.  And I'm sure

18  you're all talking about it and having associates research it

19  as we go.  But that's -- if I grant the motion to approve the

20  sale, that is the conclusion of law I would reach with regards

21  to what I am authorized to do today pursuant to the law.

22      **MR. JONES:**  Your Honor, I --

23      **MR. STEVEN COHEN:**  I understand, Your Honor.

24      **MR. JONES:**  -- apologize.  If I might --

25      **THE COURT:**  Let me first hear from Mr. Cohen.

1          **MR. JONES:**  I'm sorry, Your Honor.

2          **THE COURT:**  Go ahead, Mr. Cohen.

3          **MR. STEVEN COHEN:**  I understand, Your Honor.  And

4    just I think part of the reason why Mr. Orantes and I, in

5    crafting the purchase and sale agreement, struggled in part and

6    tried to be as inclusive as possible in describing what had to

7    happen with this interest, whatever that interest may be that

8    Fleet has, we want it clear that there's no possessory

9    interest, no occupancy interest, no claims of any nature

10   remaining after the sale --

11         **THE COURT:**  I am --

12         **MR. STEVEN COHEN:**  -- as part of the sale --

13         **THE COURT:**  -- nodding my head yes.  Mr. Cohen, I am

14   nodding my head yes.

15         **MR. STEVEN COHEN:**  Okay.

16         **THE COURT:**  Okay.  That is --

17         **MR. STEVEN COHEN:**  And that's --

18         **THE COURT:**  -- how I read --

19         **MR. STEVEN COHEN:**  Okay.

20         **THE COURT:**  -- 363(f).  And since we're throwing

21   around historical --

22         **MR. STEVEN COHEN:**  Right.

23         **THE COURT:**  -- footnotes, the interesting thing is

24   with the Queen Mary case, Queens Seaport Development, I

25   actually reached that conclusion I think about 15 years before

1    *Spanish Peaks*.  It was nice to see the Ninth Circuit eventually

2    agreed.

3            But in any event, let's stop there --

4            MR. STEVEN COHEN:  Right.  And, Your Honor, if I may

5    (indisc.) I would just, if I may, any rights of possession

6    under 365(h) that may exist, those also we would ask to be

7    included in --

8            **THE COURT:**  Hey.  We're going to put --

9            **MR. STEVEN COHEN:**  -- the order and be --

10           **THE COURT:**  -- aside scrivening right now, and I'm

11   going to turn to the remainder of the parties who wish to be

12   heard with regards to the motion.  Thank you very much.

13           **MR. JONES:**  Thank you, Your Honor.

14           **MR. STEVEN COHEN:**  Thank you, Your Honor.

15           **THE COURT:**  Thank you, Mr. Jones.  Thank you,

16   Mr. Cohen.  All right.  Does anyone else wish to be heard in

17   support of the motion?

18      (No audible response)

19           No.  Does anyone wish to be heard in opposition to

20   the motion?

21      **(Pause)**

22           **MR. GURULE:**  Good afternoon, Your Honor, Julian

23   Gurule of Buchalter for Fleet Yards, Inc, Your Honor.

24           **THE COURT:**  Good morning.  That clock is five minutes

25   fast.

1      **MR. GURULE:**  Yeah.  It's -- oh, okay.

2      **THE COURT:**  It's five minutes fast.

3      **MR. GURULE:**  Good morning.  Good morning --

4      **THE COURT:**  It's okay.

5      **MR. GURULE:**  --  then, Your Honor.  Your Honor, so

6  there are a couple of things I like to do when I show up in

7  bankruptcy cases and some things that I don't like to do when I

8  show up in bankruptcy cases.

9      **THE COURT:**  Especially when you didn't sign the

10  papers, huh?

11      **MR. GURULE:**  Yeah.  One thing I like to do, which I

12  think I've successfully been able to do in large part thanks to

13  the professionalism of Mr. Jones and his colleagues, is narrow

14  the issues in dispute here.  And I think Your Honor saw the

15  stipulation we entered into so I think we've narrowed the focus

16  of things that we're going to be talking about today.  And I

17  appreciate that.

18      And there was a fair amount of back and forth by

19  email, and I think we resolved it to everyone's satisfaction.

20  Hopefully the Court was able to see that stipulation which I

21  know Your Honor approved.

22      The thing, Your Honor, that I do not like to do when

23  I show up in bankruptcy cases is be the fly in the ointment

24  standing in front of, to mix metaphors, a freight train that's

25  been going full steam ahead for years and be the last party

1   standing --

2          **THE COURT:**  Oh, I don't know if that's true but okay.

3          **MR. GURULE:**  Standing on front of a sale that, you

4   know, but for me maybe would be everyone holding hands in

5   harmony, which is usually my goal in bankruptcy cases.

6          So, Your Honor, with that, I'll be brief, Your Honor.

7   Just for the sake of clarity, as I was saying before, I take

8   our stipulation with Hyundai to resolve the notice point raised

9   in our objection so I'm not going --

10         **THE COURT:**  So you don't want to ask you about the

11  sentence in the opposition which reads quote:  "However, the

12  Debtor failed to provide Fleet Yards with notice of the sale

13  and requested relief until five days after the deadline to

14  object to the sale has passed."

15         **MR. GURULE:**  Exactly.

16         **THE COURT:**  That I --

17         **MR. GURULE:**  Exactly right, Your Honor.

18         **THE COURT:**  I appreciate the courtesy and the

19  cooperation.  But I have to tell you before we leave this

20  topic, --

21         **MR. GURULE:**  Yes, Your Honor.

22         **THE COURT:**  -- that when I read that stipulation and

23  I went back and found and re-read -- I read the objection.

24  When I re-read the objection, that disturbed me.

25         **MR. GURULE:**  Yes, Your Honor.

1          **THE COURT:**  I'll leave it at that.

2          **MR. GURULE:**  Yes, Your Honor.  I appreciate that,

3    Your Honor.

4          **THE COURT:**  Okay.

5          **MR. GURULE:**  And I appreciate like I said the

6    parties.

7          **THE COURT:**  Yeah.

8          **MR. GURULE:**  Yeah.  Hopefully resolving --

9          **THE COURT:**  It's resolved.  Go ahead.

10          **MR. GURULE:**  Yeah.  Your Honor, what I would like to

11    focus on today is the second aspect of our papers that we filed

12    this week.  I get the notice point.  I would ask Your Honor,

13    given the enormous detrimental effect that the requested relief

14    would have on Fleet Yards, to consider aside from the notice

15    point all aspects of our -- of the objection that we filed this

16    week.  But, Your Honor, I'm not --

17          **THE COURT:**  Oh, I have.  No, I --

18          **MR. GURULE:**  Yeah.  And, Your Honor, I'm not --

19          **THE COURT:**  And you're welcome to address them.

20          **MR. GURULE:**  Yes.  And I'm not going to address them

21    today because I think that --

22          **THE COURT:**  Okay.

23          **MR. GURULE:**  -- in some ways misses what our primary

24    argument is here, Your Honor, and that is the full second, what

25    I think of as a second, issue that we raised in the brief, Your

46

1  Honor, which was a request for adequate protection under

2  Section 363(e) and 361 of the Bankruptcy Code.  Your Honor,

3  again, not to belabor the notice point, but as Your Honor

4  knows, a request for adequate protection can be made, according

5  to the statute, --

6          **THE COURT:**  At any time.

7          **MR. GURULE:**  -- at any time.

8          **THE COURT:**  Sure.

9          **MR. GURULE:**  Your Honor, it could be made on the

10  podium today.  It could be made you know, earlier this week.

11  It could have been made frankly, you know, much earlier in this

12  case.  At the end of the day, it doesn't matter.

13          Your Honor, we operate transport -- excuse me.  My

14  client operates a transport container business on the real

15  property.  As I said, it would be substantially detrimental to

16  that -- those operations, of course, if we were to lose

17  possession of it.

18          Section 363 of the Bankruptcy Code, Your Honor, is

19  clear that adequate protection must be provided where there is

20  a proposed sale of real property, including under section --

21  specifically under Section 363 where the sale's going to be

22  free and clear of interest in the property.  And plainly here,

23  Your Honor, Fleet Yards has an interest in the property

24  proposed to be sold.

25          **THE COURT:**  Which property?

1          **MR. GURULE:**  The sale prop -- 8201 --

2          **THE COURT:**  Please be specific.  What property does

3  your client have an interest in?

4          **MR. GURULE:**  The real property.

5          **THE COURT:**  Really?  I think it's a sublease and a

6  lease.

7          **MR. GURULE:**  It's a possessory interest, Your Honor,

8  I'd submit.

9          **THE COURT:**  And the possessory interest flows through

10  a sublease with a lessor, correct?  A lessee/lessee -- a

11  lessor/lessee.

12          **MR. GURULE:**  Yes.  One thing --

13          **THE COURT:**  Sublessor/lessee.

14          **MR. GURULE:**  Yeah.  Your Honor, one thing, as I was

15  thinking about this case and anticipating this point, Your

16  Honor, one thing that is not clear to me, and being, you know,

17  especially relative to all my colleagues here today new to the

18  case and the facts, it's not clear to me necessarily, I'd

19  submit, Your Honor, who the lease is with.  I know what the

20  lease agreement says --

21          **THE COURT:**  Okay, let me --

22          **MR. GURULE:**  -- but Your Honor --

23          **THE COURT:**  I apologize for the interruption.  When

24  you say "the lease agreement," are you speaking of the one that

25  your client has?

48

1          **MR. GURULE:**  That my client has, Your Honor.  But

2    Your Honor --

3          **THE COURT:**  Who is the -- what is the name on the

4    lease as the lessor?

5          **MR. GURULE:**  Central Metals, Your Honor.

6          **THE COURT:**  Okay.

7          **MR. GURULE:**  Your Honor, I only say that --

8          **THE COURT:**  So it is clear.

9          **MR. GURULE:**  -- I think it's -- I understand, Your

10   Honor.

11         **THE COURT:**  Okay.

12         **MR. GURULE:**  I only say that because, Your Honor,

13   it's not clear to us that Central Metals does anything, it's

14   not clear to us that there is a true lease at all, an implicit

15   lease, or whatever the Debtor cares to call it, between the

16   Debtor, the individual, and Central Metals, who I don't know if

17   it's a DBA or what.

18         Your Honor, I'd also point out that the Debtor's own

19   Schedules schedule as an unexpired lease of real property the

20   Fleet Yards lease.

21         So, Your Honor, I understand the Court's hesitation

22   and skepticism.  I frankly share it.  But being about less than

23   a week into the case I would be remiss not to preserve the

24   argument that we might have a direct lease under applicable

25   law --

1          **THE COURT:**  Of course,

2          **MR. GURULE:**  -- with --

3          **THE COURT:**  Of course.

4          **MR. GURULE:**  -- with the Debtor.  I think that is I'd

5    say an issue in dispute and something that hasn't been fully

6    examined or briefed.  I get sort of the hour, Your Honor,

7    literally and figuratively, we are in this case.

8          **THE COURT:**  So, if your client had a lease with the

9    Debtor, which seems to be the logical inference to draw from

10   the argument you make --

11         **MR. GURULE:**  Yes, Your Honor.

12         **THE COURT:**  -- so then it could be sold free and

13   clear under *Spanish Peaks*.

14         **MR. GURULE:**  I think, Your Honor --

15         **THE COURT:**  The property could be sold --

16         **MR. GURULE:**  I think --

17         **THE COURT:**  -- free and clear of your lease.

18         **MR. GURULE:**  I think, Your Honor, as Mr. Jones

19   outlined in his report, outlined earlier today, *Spanish Peaks*

20   says a number of things.  I think one thing that it clearly

21   says is that in the Ninth Circuit we're going to apply the

22   minority view, which is fine, and --

23         **THE COURT:**  I have no choice.

24         **MR. GURULE:**  -- and we have no choice and it's

25   sensible when you look at the statutory provisions that are in

1    dispute, that you can sell free and clear under 363(f) of

2    leasehold rights and that, unlike in other Circuits, or other

3    Districts I should say, Section 365(h) does not afford what I

4    think of as holdover rights to the tenant.

5            **THE COURT:**  So even if --

6            **MR. GURULE:**  It is what it is, Your Honor.

7            **THE COURT:**  -- your client had a lease because there

8    is an assertion in the Schedules that the lease is directly

9    with Fleet, or even if you had established, which you haven't

10   obviously, that there is a confusion of identities between --

11           **MR. GURULE:**  Yes, Your Honor.

12           **THE COURT:**  -- the Debtor and Central Metals, you

13   still -- your client would still be subject to the power under

14   363(f)?

15           **MR. GURULE:**  I think that's right, Your Honor.

16           **THE COURT:**  Yeah --

17           **MR. GURULE:**  And that's why, Your Honor --

18           **THE COURT:**  -- I think so too.

19           **MR. GURULE:**  *Spanish Peaks* says what it says, Your

20   Honor, but that is why I started my presentation today with the

21   focus on adequate protection, Your Honor, because *Spanish Peaks*

22   says what we just talked about in terms of how those two

23   statutory provisions work together, but in support of its

24   reasoning -- excuse me -- in support of its holding on the

25   363(f)/365(h) issue it lists reasons that a tenant, Your Honor,

1  is not without some protection in a situation where the

2  property that it has an interest in is going to be sold --

3          **THE COURT:**  Right --

4          **MR. GURULE:**  -- free and clear.

5          **THE COURT:**  -- if 365 applied.

6          **MR. GURULE:**  If --

7          **THE COURT:**  If it applied.

8          **MR. GURULE:**  Your Honor, I would submit that there

9  are two things that a debtor with the, you know, support of its

10  secured lender can do when they're trying to liquidate a

11  property where there's a tenant in place.  Your Honor, they

12  could sell the prop -- excuse me -- they could reject the

13  lease, like we've talked about, I don't know what extinguish a

14  lease means, either they could reject the lease, which clearly

15  under *Spanish Peaks* or otherwise the Bankruptcy Code provides

16  at 365(h) provides them with holdover rights, that is my

17  understanding is not what's happening here, or, Your Honor, the

18  debtor and the secured lender can sidestep the issue of

19  Section 365(h) in the Ninth Circuit and attempt to sell the

20  property free and clear of leasehold interests, Your Honor.

21  And that is fine.  Under *Spanish Peaks*, 365(h) does not protect

22  a tenant like my client.  That's binding authority.

23          **THE COURT:**  Yeah.

24          **MR. GURULE:**  We briefed, Your Honor, I know you read

25  the brief, I think we have facts that are distinct from it, I'm

1  not going to belabor that, in *Spanish Peaks*.

2      But what -- in that second option, where they're

3  attempting to sell free and clear under 363(f), what it does

4  afford under *Spanish Peaks*, what the Ninth Circuit *Spanish*

5  *Peaks* case does afford us are a right to adequate protection.

6  Our proposed form of adequate protection, Your Honor, you saw

7  in the papers, is continued possession in accordance with the

8  terms of the lease.  That's what other Courts confronted with

9  somewhat similar facts have ordered as adequate protection.

10  But, Your Honor, it could be, as Your Honor knows, under 361

11  and the case law interpreting it, it's case-by-case and

12  fashioning a form of adequate protection that would protect the

13  value of that possessory interest, it could be provided in a

14  number of ways.  Possession would be our preferred means of

15  protecting that interest, Your Honor.

16      **THE COURT:**  Okay.  Thank you very much.

17      **MR. GURULE:**  Your Honor, the -- just consulting my

18  notes, Your Honor.

19      **THE COURT:**  Sure.

20      **MR. GURULE:**  Your Honor, I think one last point,

21  again to not belabor the freight train analogy here, I get that

22  everyone wants to close this by the end of the year.  Your

23  Honor, I think given that we're certainly having divergent

24  views of what the final page of *Spanish Peaks* says with the

25  Secured Lender, and I think it's something of an open issue in

53

1    the Ninth Circuit, I would say waiver of the 14-day stay

2    provided for under the Bankruptcy Rules is not appropriate,

3    Your Honor.  And that is on a standalone basis with the request

4    for adequate protection, which would be impacted by the sale.

5        **THE COURT:**  So when did your client first know that

6    the Debtor wanted to sell the property and started engaging in

7    negotiations to sell the property and attempted to buy the

8    property?

9        **MR. GURULE:**  Your Honor, I could not tell you with

10   confidence a date or something approaching --

11       **THE COURT:**  I see.

12       **MR. GURULE:**  -- a firm date, Your Honor.

13       **THE COURT:**  Months?  Weeks?  Years?

14       **MR. GURULE:**  Your Honor, Debtor's counsel submitted a

15   declaration.  I, Your Honor, candidly have no reason to dispute

16   the --

17       **THE COURT:**  Okay.

18       **MR. GURULE:**  -- emails, for example, attached to it.

19       **THE COURT:**  So for a very, very long time?

20       **MR. GURULE:**  Certainly aware of the bankruptcy

21   case --

22       **THE COURT:**  Yeah.

23       **MR. GURULE:**  -- yes, Your Honor.

24       **THE COURT:**  And attempts to purchase the property.

25       **MR. GURULE:**  Yes, Your Honor.

54

1          **THE COURT:**  Thanks.

2          **MR. GURULE:**  Thank you, Your Honor.

3          **THE COURT:**  You're welcome.

4          Okay, please be seated, Mr. Jones.

5          **MR. JONES:**  Yes, Your Honor.

6          **THE COURT:**  All right.  Is there anybody else who

7     wishes to be heard in opposition to the motion?

8          **(No audible response)**

9          No.  All right, Mr. Orantes, do you wish to make a

10    reply?

11         **MR. ORANTES:**  Yes, Your Honor, if I may.  I'll try

12    not to repeat the arguments in my written reply, but --

13         **THE COURT:**  Thank you.

14         **MR. ORANTES:**  -- as counsel indicated, I think that

15    Fleet Yards is really at this point is focusing on the adequate

16    protection aspect, which, as the Court agreed, could be made at

17    any time.

18         With respect to Sections 363(e) and 365(h), with

19    respect to 365(h) they don't have a lease with the Debtor here

20    so, as I pointed out in my papers, it doesn't apply to the

21    facts at issue.  And with respect to 363(e), Fleet Yards is

22    arguing that it should receive continued possession of the

23    property.  If Fleet Yards is allowed to remain in possession of

24    this property, it would completely, you know, block this

25    transaction.  This transaction is resulting in payment of the

1    major, of the biggest creditor of the estate, as well as

2    probably satisfaction of other junior liens, and is the biggest

3    opportunity for the estate for all the creditors in estate to

4    get paid, including even some unsecureds, although there aren't

5    many in this case, and it would just not be consistent with the

6    goals of bankruptcy to not allow this transaction to happen.

7         In terms of whether they are allowed to continue in

8    possession as some sort of adequate protection, as I indicated

9    in my papers they cite a case called *Dishi & Sons v. Bay*

10   *Condos LLC* at 510 B.R. 696, which stated that absent any

11   authority to the contrary the Court must follow the plain

12   language of the Code, which requires the Bankruptcy Court to

13   provide adequate protection, which may include the indubitable

14   equivalent of the interest, namely, continued possession.

15   However, the District Court is from the Second Circuit, it's

16   not a Ninth Circuit Court, and it does not have *Spanish Peaks*

17   as the binding authority.  And *Spanish Peaks* is allowing the

18   sale of the property free and clear of liens on account of the

19   fact that a foreclosure would wipe them out and the Court that

20   they're citing does not have that binding authority as a

21   background or does not rule along those lines.

22        So, if the secured creditor here, Hyundai, was to

23   foreclose on the property, there's no question that, as I

24   indicated in my motion, that Fleet Yards would lose its lease

25   and it would just have to at that point fight its holdover

1  rights in a lawful detainer court and it would just be a matter

2  of time before it gets -- it gets vacated because the lien of

3  Hyundai is far ahead in priority, it was entered into in 2005,

4  whereas this lease was entered into right before the

5  foreclosure -- I'm sorry -- the bankruptcy was filed in this

6  case.  The date of the lease is as of August 5th, which is nine

7  days prior to the filing of the petition in this case.  This

8  lease would be avoidable if we filed an adversary proceeding to

9  avoid it under 547 as a preference or under 544 or any other

10  avoidance statute of the Bankruptcy Code.

11         In light of the power by the Debtor-in-Possession, I

12  think that the indubitable equivalent of whatever interest

13  Fleet Yards has, and again, as I pointed out, the interest that

14  Fleet Yards has is an interest in the lease of its lessor,

15  which is Central Metal Inc., and Fleet Yards has not denied

16  that its lessor is Central Metal Inc.  Filed a Declaration by

17  Mr. Van Notting (phonetic), attaching the lease agreement and

18  that name is repeated numerous times.  They never requested any

19  signature by Mr. Byun in his personal capacity.  And if they

20  had any question with respect to the authority of Central Metal

21  Inc. to enter into a lease agreement, as California law

22  indicates, it is the duty of the person contracting for a

23  sublease to ascertain the positions of the original lease and a

24  subtenant is charged with notice of the existence of the

25  original lease and is bound by its terms and conditions.  So

1  they should not now try to have rights superior to those to

2  which Fleet Yards contracted.

3       So to the extent that Fleet Yards would be put out of

4  possession by foreclosure, which is the predicate here largely

5  for the sale within the bankruptcy context.  To the extent that

6  Fleet Yards only has an interest in the lease, not in the

7  property, I believe that the indubitable equivalent to its

8  interest is not possession for another four years.  As

9  indicated in my papers, subject to the Court's approval and

10  other parties' approval, I think perhaps allowing Fleet Yards

11  time to move out orderly, as it would -- perhaps as it would

12  accomplish if a defendant in a lawful detainer lawsuit might be

13  adequate protection in this situation.  But again, other

14  parties might differ.

15       The contract for sale of this property requires the

16  Debtor to have the approval of both Hyundai as well as the

17  purchaser, Thor, with respect to the points that it makes in

18  its motion, so I defer to their rights with respect to the

19  specific adequate protection.

20       In addition to that, I think after we adjourn we

21  might be able to reach some deal with Fleet Yards with respect

22  to any adequate protection it's entitled to.  But under the law

23  as it stands I believe that the adequate protection they should

24  get is probably a couple of months to move out, subject to what

25  the Court might decide and other parties might say.

1          **THE COURT:**  Are you done, Mr. Orantes?

2          **MR. ORANTES:**  Thank you, Your Honor.  We are done,

3    thank you.

4          **THE COURT:**  Okay.  It's quite unusual to have anyone

5    but the moving party reply, Mr. Jones.  Is it absolutely

6    necessary?

7          **MR. JONES:**  Your Honor will tell me if it is, and

8    I'll be very brief.  Your Honor, Evan Jones on behalf of

9    Hyundai.

10          Your Honor, as Justice Holmes observed, saying

11    someone is a fiduciary is just the start of the inquiry.

12    Saying that Fleet Yards is entitled to adequate protection is

13    the start of the inquiry.  The question is what is adequate

14    protection for their interest.

15          And, Your Honor, frequently adequate protection is

16    nothing.  Junior lienholders who are wiped out in a sale get

17    nothing.  Similarly, the entire rationale of *Spanish Peaks* says

18    Fleet Yards gets nothing here.

19          *Spanish Peaks* turns on the undisputed point of law

20    that a foreclosure by Hyundai would wipe Fleet Yards out.  They

21    would get nothing.  There is no case, and I've read a lot of

22    them, Your Honor, where a Court finds that adequate protection

23    demands more than an interest holder would get outside of this

24    Court, outside of bankruptcy.  Outside of this Court Fleet

25    Yards is wiped out.

1          And therefore, and I hesitate to disagree with

2    Mr. Orantes, but Mr. Orantes is wrong, they're not entitled to

3    stay in possession for some time period.  They need to leave as

4    soon as the order is entered.   The order should say that it is

5    free and clear of their interest, and they're not entitled to

6    anything as adequate protection, because that's what they would

7    get outside of this Court.   Their state law rights do not

8    entitle them to stay in possession.  They should not receive

9    more than that.

10          And finally, Your Honor, I would note the argument

11   that their adequate protection should be they get to stay in

12   the property for the remainder of their lease would make a

13   mockery of *Spanish Peaks*.  Are we really to believe that those

14   three Judges on the Ninth Circuit, who by the way, Your Honor,

15   include Professor Fletcher who taught me federal courts a long

16   time ago, he's a really smart judge, are we really to

17   believe --

18          **THE COURT:**  Oh, everyone in the Ninth Circuit is very

19   smart.

20      **(Laughter)**

21          **MR. JONES:**  As are all the children in Lake Wobegon,

22   Your Honor.

23      **(Laughter)**

24          **THE COURT:**  Oh, that's a bad, that's a bad reference

25   to make, I think.  But in any event, why don't you come to the

1   conclusion.

2          **MR. JONES:**  Yes, Your Honor.

3          If that panel really wanted to say that the

4   leaseholder there, who by the way had a direct lease from the

5   debtor, got to stay in possession for the remainder of its

6   lease as a matter of adequate protection, why in the world

7   didn't they hint at that?

8          Your Honor, the law is not an ass.  They are not

9   entitled to anything by way of adequate protection.  They have

10  a legal right to adequate protection, but what is adequate

11  protection should be determined by applicable non-bankruptcy

12  law and they're entitled to nothing.

13         Thank you, Your Honor.

14         **THE COURT:**  Thank you very much.

15         Okay, that closes oral argument.

16         So let me begin first with this is a motion that is

17  brought within the procedural context of a prior motion setting

18  the parameters of sales procedures.  I think it's important to

19  note for the record that the Debtor-in-Possession had filed a

20  motion before that to approve sales procedures which I

21  rejected.  And as a result, the Debtor refashioned the motion,

22  dealt with its principal creditor and its other creditors to

23  come up with a reasonable and appropriate set of sales

24  procedures, which have been approved and no one objected and no

25  one's appealed.

1         But I think it's important to note as a preliminary

2    or beginning finding that those have been complied with.  The

3    sales procedures Motion and Order has been complied with.

4    Number one.

5         Number two, a fundamental aspect of the relief sought

6    by the Debtor-in-Possession is that the proposed property be

7    sold free and clear of claims and interest under 363(f).  There

8    are various subsections under 363(f) which are available to the

9    Debtor-in-Possession to establish by -- has the burden of

10   establishing by admissible evidence by a preponderance of the

11   evidence.  For all the creditors and parties-in-interest who

12   are entitled to protection under 363(f), that has been

13   established at least by consent, and also by way of bona fide

14   dispute as to some, and also with regards to what would happen

15   in a non-bankruptcy law setting.  So 363(f) to every creditor

16   and party-in-interest to whom that would apply and who would be

17   entitled to the protections of the subsections under 363(f),

18   that's been met.

19        So now we come to the objection of Fleet.  First,

20   Fleet does not have an interest in property of the estate.  It

21   has an interest in a lease and the lessor under that lease is a

22   lessee with the Debtor, who is the master lessor.  So I think

23   it is important to lay out that tenuousness because that

24   establishes that Fleet is not a party that would be entitled to

25   any form of protection vis-à-vis various provisions, and I'll

1  go through them one at a time.

2        So first of all with regards to protections under

3  365, Fleet doesn't have a lease with the Debtor.  So that's --

4  I think that's a slam dunk.  That's it.  There's nothing else

5  really to discuss.  I've been given no evidence that there is

6  any -- that this is a disguised transaction and it's really a

7  lease with the Debtor.  Nothing whatsoever.  And this is a

8  party Fleet has known about, obviously knows about its

9  sublease, right, since the commencement of the sublease from

10  before, and also has known about the sale for a very long time

11  and it's pretty obvious to me that Fleet is just trying to

12  insert a wrench into the wheels of this motion.

13        There's nothing wrong with opposing a motion.  I've

14  denied lots of motions.  I denied the sales procedure motion

15  that preceded the one that set up the sale because it was

16  inappropriate, not reasonable.  But sometimes parties throw

17  wrenches into wheels and sales to try to get something out of

18  the process.  And to be frank, that's how this appears to me.

19        Returning to the law, under 363(f) I find that the --

20  and this is pursuant to *Spanish Peaks* and I'm bound by the

21  ruling in *Spanish Peaks*, and frankly independent of that I

22  agreed with it before *Spanish Peaks* got decided, it is possible

23  under the language of the statute under 363(f), which as a

24  Trial Court I give even greater obeisance than the decisions of

25  the Ninth Circuit, or the Supreme Court for that matter.  The

1   statute makes it available as a remedy to sell free and clear

2   of a lease interest or a sublease that is subsumed within a

3   lease interest because that's how broadly that language is

4   written.

5           So first of all, the Debtor has the power to sell

6   under 363(f) and free and clear of interests.  With regards to

7   Fleet, clearly its interest is in, to the extent it asserts an

8   interest in the property of the estate, which it doesn't have,

9   it's in bona fide dispute.  Next, it would be lost in a

10  foreclosure sale, that interest would disappear.  So the one

11  party who does not consent to the sale, who I don't believe

12  even is entitled to assert an interest that would be protected

13  under 363(f), it would still lose under 363(f) even if it did

14  have such an interest.

15          Let's see, extinguishing leases.  I have not

16  extinguished a lease because I don't know what that means.  I

17  think it's pretty clear even if rejection were at issue here,

18  and I'm not aware of any -- there's sort of a blanket statement

19  made in the motion about rejecting any leases or executory

20  contracts that exist without listing any, which is not a good

21  way to accomplish rejection under 365.  I'm not aware there are

22  any.  If there are any, I still would -- it appears to me that

23  rejection would be appropriate because it would be within the

24  business judgment of the Debtor-in-Possession to do so.  But

25  I'm not aware of any.  If there were though, it would be

1  appropriate.

2          Let's see, with regards to authorizing payment

3  directly out of escrow, Mr. Gurule did not pursue this

4  argument, which was made in his client's preliminary objection,

5  but I frankly see no reason why payment should not go forward.

6  There's absolutely no conflict of interest.  Just because the

7  broker was somehow involved in a transaction with Fleet and

8  Central, that doesn't mean that that creates a conflict of

9  interest which would have barred the broker's employment under

10 327 by the Debtor.  So I think it's appropriate to grant that

11 relief.

12         I cannot see how anyone could reasonably dispute that

13 the buyer is acting in good faith under 363, and especially

14 when you have an open auction process.  It is almost a

15 guarantee of the satisfaction of that requirement.

16         And then before I turn to the 14-stay provision, the

17 stay of the 14-day provision, 14-day stay provision, I just

18 want to address adequate protection quickly.

19         I don't see there's an interest here that's entitled

20 to it.  If it were, I think something which Debtor's counsel

21 and Mr. Jones hit on, maybe Mr. Jones hit on it more precisely,

22 adequate's an adjective.  So even if Fleet was entitled to some

23 kind of protection, it would have to be adequate protection.

24 What's adequate for a sublessee in a lease where the lease is

25 going to be sold free and clear of and would be if there were

1  no sale at all and there was a foreclosure sale would be out in

2  the street immediately after the foreclosure sale?  I think

3  adequate is at that point zero.

4         Now with regards to the waiving of the stay,

5  bankruptcy proceedings have been pending with various debtors

6  in various cases with regards to this property for a very long

7  time.  So independent of businesses liking to do things by the

8  end of the year, it seems they nevertheless seem to do

9  something the next year too, this is a process which needs to

10 be completed.  If anyone wants to challenge it, they should be

11 ready to go and challenge it and go ask for a stay in the

12 appropriate Court if they think there's a basis.  I don't see

13 any.  But of course no Trial Court Judge does, or else they

14 wouldn't grant the motion in the first place.  But I don't see

15 any basis for a stay.  I don't think there's any issue here

16 that's difficult or likely to create an appealable, a

17 reasonably appealable issue, so I am going to waive that stay.

18        I have already found and concluded that all the

19 requirements with regards to approving a compromise of a

20 controversy have been met.  I adopt them herein again.  So when

21 a law clerk has to read it somewhere, that they can find it in

22 the same place, I'm making mine under findings of facts and

23 conclusions of law.

24        Based upon all that, I grant the motion.

25        So now we will turn to the second leg of the

66

1   trifurcate and I'm going to take a pause.  I don't want to take

2   a long pause.  I'll take a 15-minute pause, so we're talking

3   12:45, to get your bidding in order.  And when you do, if we

4   have more than two bidders then I would ask you to set up shop

5   in front of a microphone in the counsel box over here,

6   colloquially known as a jury box, but it's never had a jury in

7   it, sit over there and have somebody sit over here on this

8   table and somebody over here, so you can be spaced and we can -

9   - if there is bidding.  I mean the last auction I had went on

10  for an hour and it went up I think $23 million.  So it might go

11  awhile.  I don't know.

12          All right, so a brief recess, reconvene at 12:45.

13      **(Counsel thank the Court)**

14      **(A recess was taken from 12:31 p.m. to 12:50 p.m.; parties**

15  **present)**

16          **THE CLERK:**  Please remain seated and come to order.

17  This United States Bankruptcy Court is now in session.

18          **THE COURT:**  Okay, Mr. Orantes are you on the phone?

19          **MR. ORANTES:**  I am, Your Honor.  Thank you very much.

20          **THE COURT:**  Okay.  We're waiting for folks to return

21  to their seats.

22          **UNIDENTIFIED SPEAKER:**  I apologize, Your Honor.

23          **THE COURT:**  It's okay.  I have a bad habit of being

24  timely.

25      **(Pause)**

1          Okay, I think everyone is back.

2          So, why don't you tell me please, Mr. Orantes, the

3    names of the bidders that you have qualified.  All the bidders.

4          **MR. ORANTES:**  Your Honor, if I may, we still have not

5    qualified any of the bidders.  We emailed all of them last

6    night requiring that they make certain statements on the record

7    to achieve parody among the bidders before we would qualify

8    them.  They haven't actually replied to my email confirming

9    that they would, that they would make those statements, except

10   for WM Capital, which said that verbally, so we first would

11   want them to confirm those statements, if the Court would allow

12   me to.

13         **THE COURT:**  So are you asking for more time?  Are you

14   asking to do this on the record?

15         **MR. ORANTES:**  I'm asking to do this on the record,

16   Your Honor.

17         **THE COURT:**  Okay.  So, at the very least we have

18   Thor, correct?

19         **MR. ORANTES:**  Correct.  Yes, so in terms of their

20   identities, we have Thor, Thor, then we have ACI VI Santa Fe,

21   LLC, whose initial bid was $31,825,000.

22         **THE COURT:**  So you have qualified ACI --

23         **MR. ORANTES:**  We also have --

24         **THE COURT:**  Wait, wait, wait.  You have qualified

25   ACI?

68

1          **MR. ORANTES:**  Not yet, Your Honor.  It's subject to

2   their making the statements that we need them to make --

3          **THE COURT:**  Okay, let's do that one at a time.

4          **MR. ORANTES:**  -- to --

5          **THE COURT:**  So let's do ACI.  So we have Ms. James?

6   Is that correct?

7          **MS. JAMES:**  Yes, Your Honor.

8          **THE COURT:**  Thank you.

9          **MS. JAMES:**  Yes, Your Honor, Jacqueline James.

10          **THE COURT:**  Okay, Ms. James is at the lectern.

11          Go ahead, Ms. James.

12          **MR. ORANTES:**  Thank you, Your Honor.

13          If I could say, Your Honor, consistent with the email

14   that I sent you last night, we need -- would your client

15   confirm that notwithstanding anything in your client's written

16   materials that all conditions to their bid other than the Sale

17   Order are waived?

18          **MS. JAMES:**  Your Honor, we just have one issue, which

19   I think is global to all of the over bidders, and that is that

20   there has been -- as Your Honor probably knows, there's been an

21   overwhelming amount of real estate financing deals going on

22   lately and many delays with respect to title companies.

23          **THE COURT:**  I am aware.

24          **MS. JAMES:**  Yes.  And as a result of that, it's been

25   very slow to get title companies to provide information.  One

1  piece of information that we were provided with just literally

2  20 minutes ago is that apparently the Debtor's wife or ex-wife

3  is on the title with respect to Parcels 5 and 6 in connection

4  with this property, and Title has indicated that

5  notwithstanding a free and clear order that they would require

6  the wife or ex-wife to sign a quitclaim deed in order to

7  essentially issue a title policy with respect to this property.

8          **THE COURT:**  Okay.

9          **MS. JAMES:**  So, although my -- and, you know, our

10 client's PSA provided for that contingency and required that as

11 a condition to closing, yesterday Mr. Orantes sent around an

12 email and essentially indicated, as he indicated to you, Your

13 Honor, that he wanted all of the bidders to waive their

14 contingencies.  What I would say is that on behalf of my client

15 our client is willing to waive contingencies and just of course

16 have the covenants under its PSA required to continue to be

17 abided by, but we would like the Debtor to be required to

18 produce the quitclaim deed.

19          Which, by the way, someone in the Debtor's camp

20 indicated to me a few moments ago that they believe that the

21 wife has already signed, the wife or ex-wife has already signed

22 the quitclaim deed but it hasn't been recorded.  We have never

23 seen it.  I don't know if Mr. Orantes has seen it or anyone

24 else.  But although we're almost ready to waive all of the

25 conditions except for the covenants under the agreement, that

1    is one sticking point that I think Your Honor is going -- will

2    probably find is going to be common to all the bidders.

3           So with the exception of that issue, and obviously

4    receiving the free and clear order of this Court, that we would

5    waive all other conditions.

6           **THE COURT:**  Okay.

7           **MS. JAMES:**  There is no financing contingency or

8    anything like that.

9           **THE COURT:**  Okay.  So let me hear -- maybe what we do

10   need, so that would be -- that's your sticking point,

11   Ms. James.

12          **MS. JAMES:**  Yes, Your Honor.

13          **THE COURT:**  Let me hear from the other potential

14   bidders to find out what other objections you have.

15          **MS. JAMES:**  Oh, Your Honor, I'm sorry.  And one more

16   thing just raised in Mr. Orantes' email which I think was

17   directed to my client, he had some question about the language

18   and the timing that we put in our PSA with respect to the

19   Court's bidding procedures and deadlines.  I will represent to

20   the Court that the language in our PSA is consistent with the

21   Court's Bidding Procedures Order.  And even to the extent that

22   for any reason the conditions of the Bidding Procedures Order

23   should be different than that of the PSA, the Bidding

24   Procedures Order would govern.

25          **THE COURT:**  Okay.

1          **MS. JAMES:**  Thank you.

2          **THE COURT:**  Thank you very much.

3          Let me hear from 8201.

4          **MR. JONES:**  Your Honor, I apologize.  I think

5    Mr. Orantes had -- I'm sorry, Evan Jones on behalf of Hyundai.

6    If I could step back for a moment?  The procedures require the

7    bidders to be substantially the same terms as Thor.

8          **THE COURT:**  Right.

9          **MR. JONES:**  As Mr. Orantes mentioned, one of the

10   critical elements of the Thor bid is yesterday by 11:00 a.m.

11   they had to send a notice that a condition had failed or they

12   were conclusively deemed to waive all conditions other than

13   entry of this Court's Order.  That is the first point that we

14   want to make sure, because all of the bids we got still have

15   conditions.  And frankly, given the time, we haven't been able

16   to say to them go off and revise your documents.  So we're

17   trying to clean them up here.

18         **THE COURT:**  Okay.  So let me stop you there.

19         **MR. JONES:**  Yes, Your Honor.

20         **THE COURT:**  Okay.  Mr. Orantes?

21         **MR. ORANTES:**  Yes, Your Honor.

22         **THE COURT:**  It's your job to, pursuant to the Order

23   establishing the sale procedures, to know and be able to tell

24   me definitively who the qualified bidders are, and it sounds

25   like you're not able to do that.

1          **MR. ORANTES:**  Not without achieving parody with Thor

2    first, Your Honor.

3          **THE COURT:**  Okay, this is what I'm going to do.

4          **MR. ORANTES:**  And --

5          **THE COURT:**  Well, let me finish.  I'm going to give

6    you another half hour.  When you come back at 1:30 p.m. I need

7    to know who's qualified as a bidder pursuant to the Order

8    establishing sales procedures.  That can't be changed now.

9          **MS. JAMES:**  Your Honor, may I make one point?

10         **THE COURT:**  Not yet.

11         Do you understand, Mr. Orantes?

12         **MR. ORANTES:**  I understand, Your Honor.

13         **THE COURT:**  And I know it's difficult that you're not

14   here and you have a good reason why you're not here, but

15   everybody has phones and laptops and tablets.  So you need to

16   get this straight by 1:30.

17         All right, so before we go, what would you like to

18   say, Ms. James?

19         **MS. JAMES:**  Your Honor, I just wanted to say that my

20   client's bid conforms with the Bidding Procedures Order.  We

21   did not have financing contingencies or the other type of

22   contingencies that the Bidding Procedures Order indicated that

23   we could not have.

24         **THE COURT:**  Okay.

25         **MS. JAMES:**  And --

1          **THE COURT:**  I'll address it at 1:30.

2          **MS. JAMES:**  Okay.

3          **THE COURT:**  Okay?

4          **MS. JAMES:**  Thank you, Your Honor.

5          **MR. JONES:**  Your Honor, just to make sure, we

6    disagree with counsel's statement, but I want to make sure if

7    bidders make this concession on the record that notwithstanding

8    various provisions in their agreement they will be bound by

9    that statement -- by the way, Your Honor, one of the most

10   important ones is we're going to ask each bidder to confirm

11   that as to the leases and the free and clear language they will

12   accept an order, as Your Honor has indicated you are prepared

13   to enter.  Because we do have some of these bids that have the

14   word extinguish in them.

15         **THE COURT:**  I understand.

16         **MR. JONES:**  I gather the Court is saying we can come

17   back at 1:30 and we just need to be crisp about what we are

18   asking bidders to agree to.  Because Your Honor doesn't want us

19   to go out and have oral conversations and then come back and

20   have litigation over what was said or wasn't.  If we get it on

21   the record, it's binding under the Local Rules.

22         **THE COURT:**  After I have now -- since I granted the

23   motion and I previously granted the sales procedure motion, the

24   sales procedure motion establishes what people need to do to

25   qualify.  I'm not going to change that.  If people -- if

1  everybody comes in and says that we have all agreed to this

2  minor little fillet as to the sales procedure motion, fine.  If

3  not, the Debtor is bound by the Order establishing the sales

4  procedures and whoever is qualified will go forward.  If you

5  can come to that conclusion before 1:30, great.  But this isn't

6  the time to be changing the Sales Procedures Order.

7         **MR. JONES:**  Your Honor, to be very clear, we're not

8  trying to change the Sales Procedure Order.  The Sales

9  Procedure Order says that the bids have to be comparable.

10        **THE COURT:**  Right.

11        **MR. JONES:**  And by the way, Your Honor, the Sales

12  Procedure Order is very clear that it has to be in the judgment

13  of the Debtor and Hyundai --

14        **THE COURT:**  Exactly.

15        **MR. JONES:**  -- that they are comparable.

16        **THE COURT:**  That's what I'm saying.  I'm not going to

17  adjudicate the parody of qualifications.  All my job -- the

18  only job that I have left at this point is to take bids and

19  when it's done I'm going to bang the gavel and say you win and

20  you're the backup bidder.  That's the only thing left for me to

21  do.  I'm not going to adjudicate parody of qualifications.

22        **MR. JONES:**  Your Honor, we're certainly not asking

23  the Court to adjudicate parody, but we --

24        **THE COURT:**  I don't think you are, but somebody else

25  may be thinking about it.

1          **MR. JONES:**  We would like to ask the Court to allow

2    us to use your courtroom to confirm --

3          **THE COURT:**  Oh, yes.

4          **MR. JONES:**  -- what the bids are so that we can

5    determine whether to qualify people.

6          **THE COURT:**  Okay.

7          **MR. JONES:**  That's all I'm saying.

8          **THE COURT:**  Sure.

9          **MR. JONES:**  Thank you, Your Honor.

10         **THE COURT:**  Okay, do you want another half an hour?

11         **MR. JONES:**  Your Honor, I think it would probably be

12   helpful so we can --

13         **THE COURT:**  Okay.

14         **MR. JONES:**  -- perhaps be a bit more crisp.

15         **THE COURT:**  Okay.

16         **MR. JONES:**  And Your Honor, if I may, what I will

17   suggest we do is we come back and Mr. Orantes reads a very

18   clear set of acknowledgments we'd ask all of the bidders to

19   make and then we ask each bidder to indicate if they agree to

20   those or not.  I'm concerned, Your Honor, that if we do it

21   Mr. Orantes reads to each bidder he may not get it exactly the

22   same each time.  And so the point is we're going to ask all of

23   them to agree to certain points.

24         **THE COURT:**  Frankly, this should have been done

25   yesterday.

76

1          **MR. JONES:**  Your Honor, we didn't get the bids until

2   11:59 and --

3          **THE COURT:**  Okay.

4          **MR. JONES:**  -- we've been working around the clock.

5          **THE COURT:**  But in any event, you have a half an hour

6   to get it done.

7          **MR. JONES:**  Thank you, Your Honor.

8          **THE COURT:**  Okay?  All right, Court's in recess until

9   then.

10      **(A recess was taken from 1:02 p.m. to 1:40 p.m.; parties**

11   **present)**

12          **THE CLERK:**  Please remain seated and come to order,

13   this court is now in session.

14          **THE COURT:**  Okay, let's see, Mr. Orantes, please be

15   seated.

16          **MR. ORANTES:**  Yes Your Honor, thank you very much.

17          **THE COURT:**  Are you ready to proceed -- are you ready

18   to proceed with the auction?

19          **MR. ORANTES:**  Your Honor, I still need the parties to

20   make -- to confirm certain things on the record.  I have spoken

21   with them about them and I think they're ready to talk about

22   them, Your Honor.

23          **THE COURT:**  Okay, so we're going to have the bidders

24   come and confirm their understanding of the prerequisites.

25          **MR. ORANTES:**  Correct, Your Honor.  Yeah.  So

1    basically we're not going to qualify the WM Capital Partners,

2    LLC.  I understand that Roye Zur, its attorney, would like to

3    argue to the Court, but with respect to the WM Capital

4    Partners, LLC we would not -- we did not agree to qualify them

5    at this point, Your Honor, neither the Debtor nor Hyundai in

6    consultation with our financial broker (indisc.) Pack

7    (phonetic).

8            THE COURT:  Okay, Mr. Orantes -- Mr. Orantes, I want

9    to be clear, it's unclear what you said.  Is it WM Capital of

10   which you speak?

11           MR. ORANTES:  Correct, Your Honor, WM Capital

12   Partners, LLC we will not qualify.

13           THE COURT:  Okay, who is qualified?

14           MR. ORANTES:  Subject to the making of an affirmative

15   confirmation of the statements we're dealing with Thor, which

16   is the original bidder, ACI VI Santa Fe, LLC and 8201 Santa Fe

17   (CA), LLC and we want each bidder to confirm, notwithstanding

18   anything in their written bid, four points, and if they do they

19   will qualify -- we will qualify them, Your Honor.

20           THE COURT:  Okay, so just -- let's make sure the

21   record is clear because of telephonic transmission.

22           Thor, ACI and 8201 are the three qualified bidders.

23   We're going to have them come and say they agree and accept the

24   requirements, those three.  Correct, Mr. Orantes?

25           MR. ORANTES:  Yes, Your Honor.

1          **THE COURT:**  Okay, let's start with Thor.

2          **MR. GREGER:**  Your Honor --

3          **MR. ORANTES:**  Thank you.  If I could read all of the

4     requirements, and maybe all of them can --

5          **(Talkovers)**

6          **THE COURT:**  Okay, read all of the requirements and

7     then they can state -- I thought they would have been

8     acknowledged some already, but go ahead and state them on the

9     record.

10          **MR. ORANTES:**  Thank you, Your Honor.

11          So Number 1, other than delivery of a quit claim deed

12     by Mrs. Byun, or the former Mrs. Byun, with regard to the

13     property at issue, their bid is not subject to any contingency

14     other than entry of the Order approving the Motion for Sale to

15     closing of their purchase.

16          Number 2, with regard to leases, including the

17     sublease with Fleet Yards, Inc., an Order as described on the

18     record by the Court is satisfactory.

19          Number 3, you will not require that the Order

20     provides sales free and clear of substantial liability.

21          And Number 4, notwithstanding anything in the written

22     bid, everyone agrees to be a backup bidder as described in the

23     procedures approved by the Court.

24          If the --

25          **THE COURT:**  Okay, so -- is there more, Mr. Orantes?

1          **MR. ORANTES:**  No, Your Honor.

2          **THE COURT:**  Okay.  Which representative of Thor will

3   acknowledge on the record that those are acceptable?

4          **MR. GREGER:**  Your Honor, Michael Greger of Allen

5   Matkins Leck Gamble Mallory and Natsis.

6          I'm still trying to get my co-counsel on the line.

7          **THE COURT:**  Okay.

8          **MR. GREGER:**  I can't say at this point, I think we

9   need a bit of additional time.

10         **THE COURT:**  Is it just a technical inability?

11         **MR. GREGER:**  Well, no.  I mean, for example, the

12  statement was made that the bid will be subject to no

13  contingencies, other than the delivery of a quit claim deed of

14  Ms. Byun.

15         We have a Purchase and Sale Agreement, there's a

16  whole bunch of provisions that are applicable.  If they're

17  asking us to waive the provisions of the Purchase and Sale

18  Agreement, I have no authority to do that, I need --

19         **THE COURT:**  Okay, so you do not accept those?

20         **MR. GREGER:**  Well, I don't know that I do or don't.

21  I need to get the consent of my client.  This just was sprung

22  on us at the last minute.

23         **THE COURT:**  All right, let's put you to the side for

24  the moment.

25         Let's turn to -- let's see, we have ACI?

1          **MS. JAMES:**  Your Honor, Jacqueline James for ACI VI

2     Santa Fe, LLC.

3          Your Honor, the language that Mr. Giovanni -- I'm

4     sorry, that Mr. Orantes is quoting is a little bit different

5     than what Mr. Jones and I discussed a few moments ago, but what

6     I will say is that I think we're very close.

7          The Debtor was supposed to confirm that the seller

8     held fee simple title to all of the real property and that no

9     one else had an interest in the property.  And it -- our

10    agreement indicated that the title company would receive from

11    the seller any sort of affidavits or other documentation

12    required by the title company in order to provide such

13    confirmation and in order to issue title so --

14          **THE COURT:**  I apologize for the interruption.

15          **MS. JAMES:**  Yes.

16          **THE COURT:**  So you're not prepared to accept the

17    statement.

18          **MS. JAMES:**  I -- we are --

19          **THE COURT:**  Just say that and then we can move on.

20          **MS. JAMES:**  We are prepared to accept it just in a

21    slightly modified way that I think Mr. --

22          **THE COURT:**  Ma'am, you're not going to negotiate

23    language at the lectern, it's not going to happen.

24          **MS. JAMES:**  All right.  But, Your Honor, my

25    understanding with Mr. Jones was that we did have an agreement

1   with respect to this.

2         **THE COURT:**  Apparently, as -- Mr. Orantes represents

3   the debtor-in-possession.

4         **MS. JAMES:**  I understand.

5         **THE COURT:**  So pursuant to the Sales Procedure Order,

6   the debtor-in-possession and Hyundai have been given the

7   delegation of the ability to qualify bidders.

8         **MS. JAMES:**  I understand.

9         **THE COURT:**  If you -- again, they have stated --

10         **MS. JAMES:**  May I --

11         **THE COURT:**  -- excuse me.

12         **MS. JAMES:**  Yes.

13         **THE COURT:**  They stated what the accepted conditions

14   or set asides are.  If you can't say yes, that's okay.

15         **MR. SPEAKER:**  These are hearings that --

16         **THE COURT:**  Okay, excuse me, we can't have

17   conversations in the courtroom right now.

18         **MS. JAMES:**  Your Honor --

19         **THE COURT:**  So, ma'am, if you can't, it's okay, step

20   aside.

21         **MS. JAMES:**  Your Honor, yes.  May I be heard once we

22   get through the rest of the bidders?

23         **THE COURT:**  I don't know.  We're going to find out

24   who the qualified bidders are.  There may not be any other

25   qualified bidders at this point.

82

1          **MS. JAMES:**  All right, Your Honor.  Yes, Your Honor.

2          **THE COURT:**  Is someone representing 8201?

3          **MR. SCOTT COHEN:**  Your Honor, Scott Cohen appearing

4   on behalf of 8201 Santa Fe (CA), LLC.

5          We can agree to those requests by Debtor's counsel.

6          The comment was or representation was a quit claim as

7   to property at issue.  We'd like a little clarification on the

8   record as to "property at issue."

9          **THE COURT:**  I presume it's the property subject to

10  the Sales Motion.

11         **MR. SCOTT COHEN:**  Subject to the PSA?

12         **THE COURT:**  Is that correct, Mr. Orantes?

13         **MR. ORANTES:**  Correct, Your Honor.

14         **MR. SCOTT COHEN:**  Yeah.  So as long as it's --

15  incorporates all the property --

16         **THE COURT:**  Yeah.  So that's what it means.

17         **MR. SCOTT COHEN:**  -- of the PSA, then we're good and

18  we hereby make the representations Debtor's counsel has

19  requested, and we would ask that we be qualified.  We met the

20  qualifications in the -- previously and we jumped through the

21  new hoops as well, Your Honor.

22         **THE COURT:**  Okay, thank you.

23         So since there are two parties who are delegated the

24  responsibility of qualifying bidders, Mr. Orantes, in your mind

25  does that -- does Debtor -- does the debtor-in-possession see

1   8201 as a qualified bidder?

2         **MR. ORANTES:**  Yes, Your Honor.

3         **THE COURT:**  Mr. Jones?

4         **MR. JONES:**  Yes, Your Honor, we do.

5         And, Your Honor, just for the record, Hyundai

6   completely agrees with the conditions as stated by Mr. Orantes.

7   If Atlas can agree to them, we would qualify them; if they

8   would not, I think we are in agreement they're not qualified.

9         **THE COURT:**  Okay.  So what we have left in our -- we

10  only have 8201 who is willing to accept the conditions stated

11  by the debtor-in-possession and Hyundai.

12        This is what I will do because it's December.  I will

13  give you five minutes.  Again, I am not going to negotiate

14  language at the lectern, understood?  So I know you need to

15  talk to clients and they need to talk to co-counsel.  Again,

16  this is the fun part of the 21st Century relying on

17  telecommunications to make these kinds of decisions.  Sometimes

18  it works, sometimes it doesn't.

19        It's 1:49, I'll come back at 2:00 o'clock and at that

20  point we're going forward.

21        **MR. STEVEN COHEN:**  Your Honor --

22        **THE COURT:**  Yes, Mr. Orantes?

23        **MR. STEVEN COHEN:**  Cohen, Mr. Cohen, Your Honor.

24        **THE COURT:**  Ah, Mr. Cohen.

25        **MR. STEVEN COHEN:**  For Thor.

84

1          We -- Thor is a qualified bidder pursuant to the Sale

2    Motion.  So the suggestion that we have to satisfy additional

3    conditions to become a qualified bidder befuddles me and I

4    think it's contrary to the terms of the Motion and the

5    Order -- and the motion which Your Honor granted earlier today.

6          **THE COURT:**  I'll be happy -- I'll be happy to hear

7    about that in 10 minutes.  If you think that you're already

8    qualified and these conditions change that qualification or

9    attempt to change it, I'll be happy to hear from you and

10   Mr. Jones and Mr. Orantes.

11         **MR. STEVEN COHEN:**  Okay, thank you.

12         **MR. JONES:**  Your Honor, if I may?

13         Whether Thor is qualified or not, we need to know

14   whether they accept these conditions so that we can weigh their

15   bid.  The goal here obviously is --

16     **(Talkovers)**

17         **MR. ORANTES:**  (indisc.) different calculus, I

18   understand.

19         **MR. JONES:**  -- the highest and best bid.  And we need

20   to know whether they agree to these.

21         **THE COURT:**  I'm going to give you another 10

22   minutes --

23         **MR. JONES:**  Thank you, Your Honor --

24         **THE COURT:**  -- to get your minds on the same plain if

25   possible.

1              **MR. JONES:**  Thank you, Your Honor.

2              **THE COURT:**  Including Ms. James' mind for ACI, okay?

3              **MS. JAMES:**  We're very close, Your Honor.

4              **THE COURT:**  Because that's in the best interests of

5      the estate.

6              **MR. JONES:**  Thank you, Your Honor.

7              **MR. ZUR:**  Your Honor, at the risk of upsetting the

8      Court --

9              **THE COURT:**  Do you want to identify yourself for the

10     record?

11             **MR. ZUR:**  Yes, yes, excuse me.  Roye Zur of Elkins

12     Kalt on behalf of WM Capital.

13             **THE COURT:**  On behalf of WM?

14             **MR. ZUR:**  WM Capital.

15             **THE COURT:**  Got you, okay.

16             **MR. ZUR:**  Your Honor, at the risk of upsetting other

17     parties and the Court, I really just would like just a few

18     minutes to address the Court on the issue of the qualified

19     bidding.

20             **THE COURT:**  No.

21             **MR. ZUR:**  I will preface --

22             **THE COURT:**  No, no, thanks.  Okay, see you at

23     2:00 p.m.

24             **MR. ORANTES:**  Thank you, Your Honor.

25         **(Recess taken from 1:51 to 2:00 p.m.)**

1          **THE CLERK:**  Please remain seated and come to order.

2    This court is now in session.

3          **THE COURT:**  Okay, Mr. Orantes?

4          **MR. ORANTES:**  Thank you, Your Honor.  During the

5    recess I had an opportunity to speak or to otherwise

6    communicate with the other two representatives of the other

7    bidders.

8          And with respect to Item Number 1, I was asked and we

9    agreed to change the language of that item.  And if would

10   confirm if the language is as we agreed.

11         May I state that on the record, Your Honor?

12         **THE COURT:**  Please.

13         **MR. ORANTES:**  Okay, thank you.

14         So other than delivery of a quit claim deed or any

15   other documentation required by the title company solely with

16   regard to Mrs. Byun with regards to the property subject to the

17   Sale Motion, their bid is not subject to any contingency to

18   closing of their purchase other than entry of the Order

19   approving the Motion for Sale.

20         **THE COURT:**  Okay.

21         **MR. ORANTES:**  I believe that that's -- yeah, that's

22   the change in the language, Your Honor.

23         **THE COURT:**  Okay.

24         **MR. ORANTES:**  I believe with that, that ACI might be

25   able to assent to the whole four points.

1          **THE COURT:**  Okay, so let's go back to our list.

2      Thor?

3          **MR. STEVEN COHEN:**  Yes, Your Honor, it's Steven Cohen

4  for Thor.

5          Subject to the confirmation by Mr. Orantes that the

6  quit claim deed will be delivered by Mrs. Byun, that's no

7  longer an issue.

8          We -- the only conditions we have are -- they're not

9  conditions at all, that our contract is adhered to.  And our

10 contract provides, in Section 14, that we get vacant possession

11 of the property at the closing.  We'll stand on that.  No --

12 we're not required to change the terms of our contract to

13 become a qualified bidder, Your Honor, and we won't.

14          **THE COURT:**  Okay.  ACI?

15          **MR. ORANTES:**  Your Honor, with that -- okay.

16          **THE COURT:**  No, I'll hear from Mr. Orantes at the

17 end.

18      ACI?

19          **MS. JAMES:**  Your Honor, Mr. Orantes incorporated the

20 additional words that we had requested and so ACI --

21          **THE COURT:**  I apologize, but I can't hear you.

22          **MS. JAMES:**  I'm so sorry, Your Honor, it's been some

23 time since I've had to take it off.

24          **THE COURT:**  I know.

25          **MS. JAMES:**  Yes.  ACI agrees to the additional

1   language that Mr. Orantes just wrote.

2           **THE COURT:**  Just stated.

3           **MS. JAMES:**  Yes.

4           **THE COURT:**  Okay, thank you.

5           **MS. JAMES:**  Thank you.

6           **THE COURT:**  8201?

7           **MR. ORANTES:**  Your Honor, 8201 already was qualified.

8   Although the language of just the one, the first point is

9   slightly different.

10          **THE COURT:**  It never hurts to have another

11  confirmation after what we've been through today, okay?

12      **(Talkovers)**

13          **MR. ORANTES:**  Absolutely.

14          **MR. SCOTT COHEN:**  Scott Cohen on behalf of 8201 Santa

15  Fe still confirms.  Thank you, Your Honor.

16          **THE COURT:**  Okay, thank you.

17          So do -- so there are two issues, right?

18          One is qualifying bidders, the other issue is whether

19  -- what is the value of the bid, right?  And it isn't

20  necessarily a dollar amount that tells you the value.

21          So just to be clearer, the decision to qualify rests

22  with the Debtor and Hyundai based upon the Order establishing

23  sales procedures, and the determination of the winning bid

24  does, too, based upon the Sales Order.  I'm just conducting an

25  auction, right?  So I want everyone to understand that, that's

1  how we are proceeding right now.

2         MR. ORANTES:  And, Your Honor, to be clear, with

3  respect to Thor, the Debtor agrees that Thor is a qualified

4  bidder but obviously with respect to the value of the bid, we

5  will take into consideration.

6         THE COURT:  Okay, so all three bidders are

7  qualified --

8         MR. ORANTES:  Yes, Your Honor.

9         THE COURT:  So I would like to have a representative,

10 whoever is going to make the bid, please come to -- once you

11 come to the table over here, as I indicated before, please do

12 so now.  I guess it can be ACI?  That would be -- thank you

13 very much, Ms. James.

14        And we have Thor already established at this table.

15        And 8201, you're going to be right there.  Okay.

16        So we have Thor --

17        MR. CROCKER:  Your Honor, Thor is on the phone --

18        THE COURT:  Mr. Cohen, are you going to be doing the

19 bidding?

20        MR. STEVEN COHEN:  Yes, Your Honor.

21        THE COURT:  Mr. Cohen -- okay, all right.

22        MS. JAMES:  Your Honor, is it okay if I have Mr. --

23        THE COURT:  Please take -- yeah, yeah.  Come sit here

24 at a table, you'll be distanced.  Yeah, you can have your -- of

25 course.

1          **MR. SPEAKER:**  Okay, thank you.

2          **THE COURT:**  The one with the money, yeah, they get to

3   sit there, that's right.

4      **(Laughter heard)**

5          **MS. JAMES:**  I wanted to be sure.

6          **THE COURT:**  Oh, absolutely.

7      **(Talkovers)**

8          **MS. JAMES:**  It's a little hard to communicate --

9          **THE COURT:**  I don't want anybody to say, No, we're

10  pulling out because she didn't understand what I said.

11         **MS. JAMES:**  Okay.

12         **THE COURT:**  Okay.  Okay, is everyone ready to begin

13  the bidding?

14         This is how I'm going to conduct the auction.

15         We have the opening bid by Thor, and there is an

16  amount that has to be met above it.  So my understanding is

17  that the very first bid has to be at least $31,775,000,

18  correct?

19         **MR. CROCKER:**  Correct, Your Honor.

20         **THE COURT:**  Correct.  So what I'm going to do is

21  we're going to do it -- it's a little funny to think about with

22  a telephonic bidder, but I'm going to start with 8201 and then

23  go to ACI and then go to Thor so it's going to go around --

24  it's going to be a round robin auction, it's just much more

25  orderly that way, okay?

1          So I'll call 8201, please state 8201 bids.

2          I'll call ACI, they'll state ACI bids.

3          And then Thor says Thor bids and that way we know who

4    it is on the record, okay?

5          Okay, 8201, do you wish to overbid?

6          **MR. CROCKER:**  Eric Crocker on behalf of 8201, LLC.

7          **THE COURT:**  I'm going to ask you to please take your

8    mask off.  I apologize, sir, but --

9          **MR. CROCKER:**  No problem.  Eric Crocker on behalf of

10   8201 Santa Fe Avenue, LLC.  The bid's 32 million.

11         **THE COURT:**  Sorry?

12         **MR. CROCKER:**  Thirty-two million.

13         **THE COURT:**  Thirty-two million.  Thank you very much.

14         Okay, now I will go to ACI.

15         **MR. GOLDBERGER:**  Thank you, Your Honor.  Are there

16   increments to bid by?

17         **THE COURT:**  Minimum increment is $50,000 I believe.

18   Is that correct?  Yes.

19         **MR. SPEAKER:**  Yes, Your Honor.

20         **MR. SPEAKER:**  Yes, Your Honor.

21         **THE COURT:**  $50,000 is the minimum increment.

22         **MR. GOLDBERGER:**  ACI bids 32,100,000.

23         **THE COURT:**  Thank you very much.

24         **ECRO:**  May I have your name please?

25         **MR. GOLDBERGER:**  Jeffrey Goldberger.

1          **ECRO:**  Thank you.

2          **THE COURT:**  Okay, now we turn to Thor.

3          Do you wish to overbid?

4          **MR. STEVEN COHEN:**  Your Honor, if I could have

5    60 seconds, please?

6          **MR. SPEAKER:**  This is Jackson and Greg Berman from --

7          **MR. BERMAN:**  Yeah, this is Greg Berman from Thor.

8          Yeah, we wish to bid 32,150,000.

9          **THE COURT:**  Thank you very much.

10         8201, do you wish to bid?

11         **MR. CROCKER:**  Yes, Your Honor, Eric Crocker on behalf

12   of 8201, LLC.  I'd like to bid 32-5.

13         **THE COURT:**  Thank you very much, 32,500,000.

14         Okay, ACI?

15         **MR. GOLDBERGER:**  32,600,000.

16         **THE COURT:**  32,600,000?  Okay, thank you very much.

17         Thor?

18         **MR. BERMAN:**  We bid 32,650,000.

19         **THE COURT:**  Thank you very much.

20         8201?

21         **MR. CROCKER:**  Your Honor, Eric Crocker on behalf of

22   8201.  32,750,000.

23         **THE COURT:**  Thank you very much.

24         ACI?

25         **MR. GOLDBERGER:**  32,850,000.

93

1      **THE COURT:**  Okay, thank you very much.

2      Thor?

3      **MR. BERMAN:**  32,900,000.

4      **THE COURT:**  Thank you very much.

5      8201?

6      **MR. CROCKER:**  33,000,000, Your Honor.

7      **THE COURT:**  Thank you very much, 33,000,000.

8      Okay, ACI?

9      **MR. GOLDBERGER:**  33,100,000.

10     **THE COURT:**  Thank you very much.

11     Thor?

12     **MR. BERMAN:**  33,150,000.

13     **THE COURT:**  $33,150,000.  Okay.

14     8201?

15     **MR. CROCKER:**  33,500,000, sir.

16     **THE COURT:**  33,500,000 is the bid.  Thank you very

17 much.

18     ACI?

19     **MR. GOLDBERGER:**  33,600,000.

20     **THE COURT:**  33,600,000 is the bid for ACI.  Thank you

21 very much.

22     Thor?

23     **MR. BERMAN:**  33,650,000.

24     **THE COURT:**  So confirming, 33,650,000.  Thank you

25 very much.

94

1          **MR. BERMAN:**  Correct.

2          **THE COURT:**  82 -- is that correct?

3          **MR. BERMAN:**  Correct.

4          **THE COURT:**  Thank you.  Okay.

5          8201?

6          **MR. CROCKER:**  34,000,000, Your Honor.

7          **THE COURT:**  $34,000,000 is the bid.  Thank you very

8  much.

9          ACI?  34,000,000 is the last bid.

10          **MR. GOLDBERGER:**  Thank you.

11          **THE COURT:**  Sure.

12          **MR. GOLDBERGER:**  34,100,000.

13          **THE COURT:**  Okay, thank you very much.

14          Thor?

15          **MR. BERMAN:**  Your Honor, are we able to skip this

16  round and still stay in for future?  We're just trying to make

17  some decisions here?

18          **THE COURT:**  No, that's not how a round robin works.

19  You will make a bid --

20          **MR. BERMAN:**  Okay.

21          **THE COURT:**  -- or you're out.

22          **MR. BERMAN:**  The last bid was 34.1 million?

23          **THE COURT:**  34,100,000 US dollars.

24          **MR. BERMAN:**  Okay, we'll do 34,150,000.

25          **THE COURT:**  No Bitcoin yet.  Okay, 34 million, 150 is

1  the last bid.

2          8201?

3          **MR. CROCKER:**  34 million, 500, Your Honor.

4          **THE COURT:**  34 million --

5          **MR. CROCKER:**  Five hundred thousand.

6          **THE COURT:**  -- 500,000.  Thank you very much.

7          ACI?

8          **MR. GOLDBERGER:**  No bid.

9          **THE COURT:**  You are done?

10         **MR. GOLDBERGER:**  Yes.

11         **THE COURT:**  Okay.  Turning to Thor.

12         34,500,000 is the highest bid made by 8201.  Do you

13 wish to overbid?

14         **MR. BERMAN:**  Give us -- yes, 34,550,000.

15         **THE COURT:**  Okay, $34,550,000 is the highest bid by

16 Thor.  Thank you very much.

17         So 8201?

18         **MR. CROCKER:**  34,750,000.

19         **THE COURT:**  $34,750,000 is 8201's bid.  Thank you

20 very much.

21         Thor?

22         **MR. BERMAN:**  34,850,000.

23         **THE COURT:**  Okay, so to be clear,

24 $34,850,000.  Okay, that is Thor's last bid.

25         8201?

1          **MR. CROCKER:** 35,000,000.

2          **THE COURT:** 35,000,000 is 8201's bid.

3          Thor, do you wish to overbid?

4      **(Audio malfunction)**

5          **MR. BERMAN:** Your Honor, can you give us 30 seconds?

6          **THE COURT:** I will give you 30 seconds. I'll give

7      every -- the remaining bidders 30 seconds to make their

8      decisions.

9          **MR. BERMAN:** Thank you.

10     **(Pause)**

11         **MR. BERMAN:** Your Honor, we'll 35,050,000.

12         **THE COURT:** So we have 35,000,050 [sic] is the bid.

13         8201, do you wish to bid?

14         **MR. CROCKER:** I apologize, Your Honor, could you

15     repeat that last bid?

16         **THE COURT:** I can. 35,050,000, so 35,000,050

17     [sic] --

18         **MR. CROCKER:** Got it.

19         **THE COURT:** -- I think that's right.

20         **MR. CROCKER:** So, Your Honor, 35,150,000.

21         **THE COURT:** Okay. 35,150,000. So I take that back.

22     It was 35 million, 050,000. I was a philosophy major. Okay.

23         (Chuckles)

24         So the last bid is $35,150,000.

25         Thor, do you wish to overbid?

97

1      **MR. BERMAN:**  Your Honor, would you be willing to give

2   us three minutes to discuss this?

3      **THE COURT:**  No.  No, this is it, 30 seconds.

4      **(Pause)**

5      **MR. BERMAN:**  Your Honor, we're not going to overbid.

6      **THE COURT:**  Do you wish to be the backup bidder at

7   35,050,000?

8      **(Counsel confers)**

9      **MR. BERMAN:**  Your Honor, give us --

10     **(Counsel confers)**

11     **THE COURT:**  Well, you were the winning -- 8201 is the

12   winning bidder, I'll make that clearer.  All I'm now trying to

13   establish is the backup bidder.  If Thor is unwilling to do

14   that, then I will ask ACI if it wishes to be the backup bidder

15   on its last bid?

16     **(Counsel confers)**

17     **MR. BERMAN:**  We are willing to be the backup bidder.

18     **THE COURT:**  They are willing?  Okay.

19     Going once, going twice, **(bangs gavel)**, sold for

20   35 million, 150.

21     **MR. JONES:**  Your Honor, may I --

22     **THE COURT:**  Yes, Mr. Jones?

23     **MR. JONES:**  Your Honor, just as a matter of

24   formality, I think that we need to consult with the Debtor's

25   representative to determine what the highest and best is, but I

1  don't think you'll be surprised after we --

2         **THE COURT:**  I didn't hear any other items of value

3  added to the bids besides dollars, so I don't know what would

4  change.

5         **MR. JONES:**  Your Honor, as I say, I stand on

6  unnecessary ceremony.  We agreed --

7      **(Talkovers)**

8         **THE COURT:**  Well, the next time do the auction in

9  your office instead of in the court.

10         **MR. JONES:**  Yes, Your Honor, we agreed that that

11  is -- we certainly agree that that is the highest and best bid,

12  and we assume the Debtor does also.

13         **THE COURT:**  Okay, Mr. Orantes?

14         **MR. ORANTES:**  The Debtor agrees with that, as well,

15  Your Honor.

16         **THE COURT:**  Okay, so the winning bidder 8201 --

17      **(Audio malfunction)**

18         **THE COURT:**  -- at $35,150,000.

19         Thor, speaking from (indisc.), 35,050,000.

20         Mr. Orantes, please submit --

21      **(Audio malfunction)**

22         **MR. ORANTES:**  Yes, Your Honor.

23         **THE COURT:**  -- an accurate Order reflecting my ruling

24  today, share it with all the parties who were involved before

25  you submit it, and submit it timely.  So you all are going to

1  have to maybe work a little quicker than we did today.

2          Thank you all very much.

3          **MR. JONES:**  Thank you, Your Honor.

4          **THE COURT:**  Court is adjourned.

5          **MS. JAMES:**  Thank you, Your Honor.

6      **(This proceeding was adjourned at 2:16 p.m.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          **December 14, 2021**

**Signed**                                    **Dated**


*TONI HUDSON, TRANSCRIBER*